SHARON R. VINICK (SBN# 129914)
DARCI E. BURRELL (SBH# 180467)
LEVY VINICK BURRELL HYAMS LLP
180 Grand Avenue, Suite 1300
Oakland, California 94612
Direct: 510-318-7702
Main: 510-318-7700
Fax: 510-318-7701
sharon@levyvinick.com

LINDA D. FRIEDMAN
    (*Pro hac vice in related case, Jaffe v. Morgan Stanley, No. 3:06-cv-03903-TEH*)
SUZANNE E. BISH
    (*Pro hac vice in related case, Jaffe v. Morgan Stanley, No. 3:06-cv-03903-TEH*)
STOWELL & FRIEDMAN LTD.
303 W. Madison St., Suite 2600
Chicago, Illinois 60606
(312) 431-0888
Lfriedman@sfltd.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Kathy Frazier, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br>  v.<br><br>Morgan Stanley & Co. LLC, Morgan Stanley Smith Barney LLC, and Morgan Stanley,<br><br>       Defendants. | Case No. |

**CLASS ACTION COMPLAINT**

Plaintiff Kathy Frazier ("Plaintiff" or "Frazier"), on behalf of herself and all others similarly situated, by and through her attorneys, Levy Vinick Burrell Hyams LLP and Stowell & Friedman, Ltd., hereby files this Complaint of race discrimination against Defendants Morgan Stanley & Co. LLC, Morgan Stanley Smith Barney LLC, and Morgan Stanley (collectively "Defendant," "Morgan Stanley" or "the Firm"), and states as follows:

CLASS ACTION COMPLAINT

## I. OVERVIEW

1.      Morgan Stanley is one of the world's largest providers of financial services. The Firm employs over 16,000 registered brokers, called Financial Advisors[1] ("FAs"), who provide wealth management services and serve as the face of Morgan Stanley to its individual and institutional clients. Compensation and advancement opportunities available to Morgan Stanley FAs, however, vary widely depending on their race, as African Americans are systemically denied equal employment opportunities.

2.      African Americans are underrepresented as FAs and in management at Morgan Stanley and are paid substantially less than their counterparts who are not African American. These disparities result from Morgan Stanley's systemic, intentional race discrimination and from policies and practices that serve no reasonable business purpose yet have a disparate impact on African Americans and segregate Morgan Stanley's workforce by race.

3.      Rather than change its entrenched discrimination, Morgan Stanley has sought to quietly institute mandatory arbitration and a class action waiver. This end-run around the civil rights laws would deny all Morgan Stanley employees access to court and the ability to join together to challenge the Firm's unlawful conduct.

4.      Plaintiff files this lawsuit to hold Morgan Stanley accountable, finally, for its unabated, unlawful treatment of African Americans and to achieve meaningful reform. This lawsuit is brought by Plaintiff on behalf of herself and other African American Morgan Stanley FAs who work or worked for the Firm and have been harmed by its company-wide pattern or practice of race discrimination and discriminatory policies and practices. This action seeks to

---

[1] As used herein, the term Financial Advisors includes Financial Advisor Trainees and "producing" managers, *i.e.*, those given manager titles or responsibilities but who also maintain a retail brokerage book of business.

CLASS ACTION COMPLAINT

make class members whole and to provide class-wide injunctive relief to end to Morgan Stanley's discriminatory practices.

## II. JURISDICTION AND VENUE

5. Plaintiff's claims arise under 42 U.S.C. § 1981, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.[2]

6. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(b). Defendant is licensed to do business and maintains a number of branch offices in this District and services clients who are residents of this District. The unlawful conduct alleged in this Complaint occurred in this District and across the United States. Members of the putative class who worked for Morgan Stanley and reside in this District have been harmed by the policies and practices discussed herein. This case is related to the class action race discrimination case, *Jaffe v. Morgan Stanley*, No. 3:06-cv-03903-TEH, over which this District maintains jurisdiction. *See* Dkt. 300 at 8 (N.D. Cal. Sept. 29, 2015).

## III. PARTIES

7. Morgan Stanley is a publicly traded, global financial services firm and Fortune 500 corporation incorporated in Delaware and headquartered in New York. As part of its wealth management services, Morgan Stanley employs more than 16,000 persons nationwide as FAs to service clients across the United States. Morgan Stanley is registered with the Securities and Exchange Commission ("SEC") as a broker-dealer and with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant. In 2014, Morgan Stanley's wealth management business managed $2 trillion in client assets, and achieved a 20% profit margin.

---

[2] Plaintiff Frazier has filed a representative Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and intends to amend her complaint to add individual and class claims of discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, after she has exhausted her administrative remedies.

8. Plaintiff Kathy Frazier is an African American woman who currently resides in California. Plaintiff was employed by Morgan Stanley as an FA in the Honolulu, Hawaii branch office from 2007 until she was constructively discharged in November 2013 because of her race.

## IV. FACTUAL BACKGROUND

9. Morgan Stanley has a long history of discrimination against its brokerage workforce. In the 1970s, the Equal Employment Opportunity Commission ("EEOC") sued Morgan Stanley's predecessor, Dean Witter, for engaging in a class-wide pattern and practice of race and sex discrimination with respect to recruitment, hiring, assignment, training, promotion, and other terms and conditions of broker employment. *See EEOC v. Dean Witter & Co, Inc.*, Case No. 78-839 (E.D. Pa.).[3]

10. After decades of no progress, in June 2006, female Morgan Stanley FAs challenged unequal pay and account distributions in the class action sex discrimination lawsuit *Augst-Johnson v. Morgan Stanley & Co.*, No. 06-cv-1142 (D.D.C.). In April 2007, Morgan Stanley agreed to settle the *Augst-Johnson* case for $46 million.

11. Around the same time, a group of 14 current and former African American Morgan Stanley FAs had notified Morgan Stanley of the pattern and practice of discrimination they had suffered at the Firm. Morgan Stanley pretended to negotiate in good faith with this group of committed employees for meaningful policy reforms. In reality, however, the Firm secretly negotiated to transform a dormant putative gender discrimination class action into a race, color and national origin class action settlement, *Jaffe v. Morgan Stanley & Co.*, No. 3:06-cv-03903-TEH (N.D. Cal.). The only class representative at the time was excluded from

---

[3] In 2001, the EEOC again sued Morgan Stanley on behalf of a class of female officers and women eligible for promotion. Morgan Stanley resolved the case in July 2004 by agreeing to a consent decree that required the Firm to pay $54 million. *EEOC/Schieffelin v. Morgan Stanley & Co.*, 01-CIV-8421 (S.D.N.Y.).

negotiations, rejected the settlement and was replaced by another African American former employee who received $125,000 to resolve her time-barred individual claims and support the class action settlement.  Latinos were added to the *Jaffe* settlement as an afterthought and without the presence or participation of a Latino class representative.  In October 2007, Morgan Stanley announced it would settle the transformed *Jaffe* case for $16 million, to be distributed among a class of 1,331 African American and Latino employees.  Over substantial opposition and after numerous hearings, the Court ultimately approved the settlement, acknowledging that the monetary relief was "low" but relying on the programmatic relief that the parties represented would improve opportunities for African American (and Latino) FAs.[4]  The programmatic relief in both the *Augst-Johnson* and *Jaffe* settlements was to expire on September 30, 2015.

12. The reforms in the *Jaffe* and *Augst-Johnson* settlements have utterly failed, and Morgan Stanley's discriminatory policies and practices continue in full force.  Indeed, Morgan Stanley has not complied with the consent decrees and programmatic relief to which it agreed in two nationwide class action settlements, the race and color *Jaffe* settlement or the sex discrimination *August-Johnson* settlement.  African American FAs remain excluded from the Firm's racially segregated partnerships or teams (hereinafter referred to as "teams") and continue to have substantially lower earnings and higher attrition than white FAs.  Morgan Stanley's performance is so abysmal that it has agreed to extend certain aspects of the programmatic relief and consent decrees in the *Jaffe* and *Augst-Johnson* cases for an additional two years.  *Jaffe*, No. 3:06-cv-03903, Dkt. 300; *Augst-Johnson*, No. 06-cv-1142, Dkt. 77.  *See also Yatvin v. Madison*

---

[4] That the *Jaffe* settlement undervalued the claims was plain after the settlement, when a nearly identical class action lawsuit against Morgan Stanley's competitor Merrill Lynch was settled for $160 million, ten times the $16 million *Jaffe* settlement, for the same number of class members. *See McReynolds v. Merrill Lynch*, Case No. 05-cv-6583, Dkt. 585-1, VIII.A.; 616 (N.D. Ill.).

*Metropolitan School District*, 840 F.2d 412, 415-16 (7th Cir. 1988) (violation of agreement settling discrimination case could create inference of discrimination).

13. Morgan Stanley has no genuine intent to reform, to provide equal opportunities to African Americans, or to abide by the spirit of its agreements in the *Jaffe* and *Augst-Johnson* cases. To the contrary, at the same time that Morgan Stanley agreed to extend the consent decrees, in an effort to preclude further legal action, it embarked on a plan to deny its employees access to court for civil rights violations and to deny its employees any ability to join together in any forum to challenge firm-wide discrimination or achieve injunctive relief.

14. In September 2015, Morgan Stanley Human Resources sent a misleading and incomplete e-mail to its FA workforce titled "Expansion of CARE Arbitration Program." By failing to notice or doing nothing in response to this e-mail, employees lose their right to sue Morgan Stanley in court or ever prosecute or participate in a class or collective action in any forum. However, Morgan Stanley's e-mail does not inform employees that they will lose their right to pursue claims of discrimination in court, or even mention discrimination or civil rights claims. The e-mail only mentions arbitration of certain unspecified claims. Nor does the e-mail inform employees that they are being forced – without compensation or consideration – to waive and forego forever their right to join with other employees or participate in any class action, in arbitration or court, challenging Morgan Stanley's policies and practices. That information can be gleaned only by clicking on a link and then making it to page 19 of the Firm's 22-page "CARE Guidebook."

15. As designed, the e-mail was unnoticed by most employees and understood by even fewer of those who waded through the Firm's misleading disclosures.

16. The timing on the extension of the consent decrees and the implementation of mandatory arbitration and class action bans is not coincidental but a calculated attempt by

6
CLASS ACTION COMPLAINT

Morgan Stanley to continue its rampant discrimination in private and without challenge or accountability in the Court or notice by the investing public. If allowed, mandatory arbitration and class action waivers will serve to ensure that no other court will have the authority or jurisdiction to enter or oversee programmatic or class-wide injunctive relief.

17. On September 30, 2015, Judge Henderson entered an order to continue the *Jaffe* Settlement's Programmatic Relief and to maintain jurisdiction to enforce the Settlement. At no time in presenting this Motion did Morgan Stanley inform the Court that it had interfered with class members' civil rights or access to court. The parties' stipulation also ended the Diversity Monitor's review and oversight of individual complaints of discrimination.

## V. DISCRIMINATORY EMPLOYMENT PRACTICES

18. Morgan Stanley maintains strict, centralized control over its wealth management business from its company headquarters, where an all-white team of senior executives issues mandatory company policies that apply to all members of the Morgan Stanley FA and FA Trainee workforce. These include uniform, Firm-wide policies and practices that govern the Morgan Stanley FA training program, compensation plans, the formation and treatment of FA teams and pools, and the transfer, distribution, and re-distribution of client accounts.

19. The FAs who work at Morgan Stanley's branch offices across the country advise and service the Firm's clients. Morgan Stanley compensates its FAs pursuant to uniform, nationwide compensation plans centrally issued every year. Due to the commission-based and cumulative advantage systems under which FAs and FA Trainees are evaluated and compensated, a level playing field and fair distribution of resources and business opportunities is essential. Morgan Stanley's policies and practices, however, do not create a level playing field for African Americans but result in significant racial disparities in compensation and attrition. These racial disparities are driven in large part by Morgan Stanley's discriminatory policies and practices with

regard to the transfer, distribution, and re-distribution of client accounts and treatment of FA teams or pools, *i.e.*, shared accounts and books of business between FAs.

20. Morgan Stanley has designed, implemented and maintains uniform, company-wide teaming, pooling and account transfer and re-distribution policies and practices that segregate its workforce and discriminate against African Americans. These policies and practices have a disparate impact on African Americans that is not justified by business necessity.

21. Morgan Stanley maintains stereotypical views about the skills, abilities and potential of African Americans that form the basis of the policies and practices challenged by this lawsuit, which result in the segregation and differential treatment of African American FAs. Morgan Stanley maintains race-based attitudes about its clients as well as its FAs.

22. Under Morgan Stanley's teaming and pooling policies and practices, FAs are permitted to form teams with FAs of their choosing and combine their client accounts and books of business, subject to management approval. Morgan Stanley encourages the formation of teams and confers special policy advantages, resources, and benefits on teams and FAs on teams. Team members can receive credit for client accounts and production credits they did not generate, and teams and pools steer client assets and business opportunities to FAs and FA Trainees who would not otherwise receive these assets and opportunities. African American FAs are almost entirely excluded from favorable teams and pools. As a result of racial stereotypes and discrimination, the skills and contributions of African American FAs are not valued, and they are not selected or permitted to join teams and pools as equal partners, to their distinct disadvantage under the Firm's policies.

23. Morgan Stanley employs account transfer, distribution, and re-distribution policies, including its Account Redistribution Policy and Power Rankings, that disproportionately steer lucrative business opportunities to FAs and FA Trainees who are not African American.

8
CLASS ACTION COMPLAINT

The Morgan Stanley account re-distribution policy discriminates against African American FAs and FA Trainees, including by (1) distributing lucrative client accounts to FAs based on membership in teams and pools, from which African Americans are largely excluded, and (2) relying on factors that have a disparate impact on African Americans and disproportionately benefit white FAs, including "by prescribing criteria that favor the already successful – those who may owe their success to having been invited to join a successful or promising team." *McReynolds v. Merrill Lynch*, 672 F.3d 482, 490 (7th Cir. 2012).

24. In sum, Morgan Stanley has and is engaged in an ongoing nationwide pattern and practice of race discrimination and knowingly employs company-wide policies and practices that have a disparate impact on African Americans. The Firm's systemic discrimination against African Americans includes, but is not limited to, the following practices:

a) Employing firm-wide teaming and pooling policies and practices that disproportionately exclude African Americans from favorable participation in lucrative teams and pools and result in a segregated workforce and substantial racial disparities in earnings and attrition rates;

b) Employing firm-wide account transfer, distribution, and re-distribution policies and practices that disproportionately steer lucrative client accounts and other business opportunities to FAs and FA Trainees who are not African American;

c) Employing firm-wide training policies and practices that discriminate against African Americans and rely on factors that disproportionately harm African American FA Trainees; and

d) Employing firm-wide compensation policies and practices that disadvantage African Americans.

25. The intentional and disparate impact discrimination described above is ongoing and constitutes a continuing violation of the civil rights laws.

26. The racially discriminatory policies and practices at Morgan Stanley are uniform and national in scope. Class members relying on Plaintiff to protect their rights work or worked

at Morgan Stanley offices across the country and were harmed by these same policies and practices.

**Plaintiff and the Class Members Have Been Subjected To And Harmed By Morgan Stanley's Unlawful Conduct**

27. Like other African American FAs and FA Trainees, Plaintiff was subjected to Morgan Stanley's systemic race discrimination and suffered substantial harm.

28. Plaintiff was well-qualified to succeed at Morgan Stanley. Plaintiff earned a BA in Economics from Amherst College and a Master's degree in Business Administration ("MBA") from University of Pennsylvania's Wharton School of Business and had substantial financial services experience, having worked at Goldman Sachs and Merrill Lynch. Indeed, Plaintiff was a successful FA at Merrill Lynch when Morgan Stanley recruited her to join the Firm in 2007.

29. Despite her outstanding credentials and performance, Plaintiff was subjected to and harmed by Morgan Stanley's discriminatory policies and practices. Throughout her employment at Morgan Stanley, and pursuant to the Firm's pattern or practice of discrimination and company-wide discriminatory policies, Plaintiff was denied resources and business opportunities and treated worse than similarly situated employees who are not African American. Among other things, Plaintiff was excluded from favorable pooling and teaming opportunities and denied lucrative account transfers and distributions when FAs with substantial books of business retired or left the Firm. FAs who were not African American were allowed to participate in account distributions and received substantial client accounts. When Plaintiff complained about her treatment and exclusion, she suffered retaliation.

30. Due to ongoing and escalating discrimination and retaliation, Plaintiff had no choice but to leave Morgan Stanley in 2013. Plaintiff again tried to address the discrimination she had faced and complained to the Diversity Monitor assigned by the Court under the *Jaffe v. Morgan Stanley* race discrimination class settlement, Mr. Fred Alvarez. Plaintiff does not believe

any investigation was conducted, and she received no meaningful response or relief from her efforts to seek assistance and reform. Plaintiff also reached out to the Diversity Monitor assigned pursuant to the *Augst-Johnson* settlement, who confirmed the disparity in account distributions but took no corrective action.

31.  Plaintiff was a class member in the *Jaffe* race discrimination class action and the *Augst-Johnson* sex discrimination class action, and was a current FA for Morgan Stanley at the time of those settlements who was entitled to and should have benefitted from the programmatic relief. Plaintiff seeks reinstatement and so has a continuing interest in the *Jaffe* Settlement. Not only did Plaintiff receive no benefit from the settlements, she was affirmatively harmed by the Firm's flouting its obligations and its refusal to comply with the Court-ordered programmatic relief. As just one example, Plaintiff's requests of management to see actual account redistributions were flatly denied, in contravention of the *Jaffe* Settlement's terms. *Jaffe v. Morgan Stanley*, No. 3:06-cv-03903-TEH (N.D. Cal.), Dkt. 281-1, VII.D.2.c., at 21 ("The actual re-distribution of a departing Financial Advisor's book will be made available to a Financial Advisor in the Branch confidentially upon request…."). Predictably, she suffered retaliation by virtue of this request.

32.  Plaintiff lost substantial clients and earnings due to Morgan Stanley's conduct and her career has been irreparably damaged. Plaintiff, and other African American FAs and FA Trainees, lost wages and other benefits, suffered emotional distress and other nonpecuniary losses, and her career was irreparably injured as a result of Morgan Stanley's conduct. Morgan Stanley's actions have caused and continue to cause Plaintiff and the putative class members substantial losses in earnings and other employment benefits, in an amount to be determined by a jury.

11
CLASS ACTION COMPLAINT

## VI. CLASS ALLEGATIONS

33. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of African Americans who worked for Morgan Stanley as FA Trainees or FAs and who were subjected to discrimination by Morgan Stanley due to their race. All requirements of class certification are met by the proposed class.

34. The class of African American employees and former employees is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

35. There are questions of law and fact common to the class, and those questions can and should be resolved in a single proceeding that furthers this litigation. Fed. R. Civ. P. 23(a)(2).

36. The claims alleged by Plaintiff are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3).

37. Plaintiff will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

38. The issues of determining liability and equitable relief, among other issues, are appropriate for issue certification under Rule 23(c)(4), as are other common issues.

39. The proposed class also meets the requirements for certification under Rule 23(b)(2) and/or Rule 23(b)(3). The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

# COUNT I

## RACE DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. SECTION 1981

40.     Plaintiff, on behalf of herself and those similarly situated, realleges paragraphs 1 through 39 and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

41.     Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race.  The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42.     Morgan Stanley maintained a nationwide set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against African Americans that constitutes illegal intentional race discrimination in violation of 42 U.S.C. § 1981.

43.     Plaintiff and all those similarly situated were subjected to and harmed by Morgan Stanley's systemic and individual discrimination.

# COUNT II

## RETALIATION IN VIOLATION OF
## 42 U.S.C. SECTION 1981

44.     Plaintiff realleges paragraphs 1 through 39 and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

45.     Plaintiff alleges that she suffered retaliation and harm because of her protected activity, in violation of 42 U.S.C. § 1981.

CLASS ACTION COMPLAINT

## COUNT III

## BREACH OF CONTRACT

46. Plaintiff, on behalf of herself and those similarly situated, realleges paragraphs 1 through 39 and incorporates them by reference as though fully stated herein as part of Count III of this Complaint.

47. Plaintiff is a class member in the *Jaffe v. Morgan Stanley* settlement class approved by this Court, which constitutes a binding contract between Defendant and the *Jaffe* class. As such, Plaintiff is a party to and beneficiary of the *Jaffe* Settlement.

48. By failing to abide by the terms of the Programmatic Relief in the *Jaffe* Settlement, Defendant breached the terms of the Settlement Agreement.

49. Plaintiff was harmed by Defendant's breach of the terms of the *Jaffe* Settlement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court find against Defendant as follows:

a. Certify this case as a class action;

b. Designate Plaintiff as Class Representative and designate Plaintiff's counsel of record as Class Counsel;

c. Declare that Morgan Stanley's acts, conduct, policies and practices are unlawful and violate 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.*;

d. Declare that Morgan Stanley engages in a pattern and practice of racial discrimination against African Americans and employs policies and practices that have an unlawful disparate impact on African Americans;

e. As part of this Court's ongoing supervision of the *Jaffe* Settlement and Consent Decree, enjoin Morgan Stanley from implementing mandatory arbitration and class action waivers of civil rights and discrimination claims;

f. Order Plaintiff and all others similarly situated reinstated to their appropriate positions, promotions and seniority, and otherwise make Plaintiff whole;

g. Award Plaintiff and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Morgan Stanley's unlawful conduct;

h. Award Plaintiff and all others similarly situated compensatory and punitive damages;

i. Award Plaintiff and all others similarly situated prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

j. Award Plaintiff and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiff;

k. Award Plaintiff and all others similarly situated such other relief as this Court deems just and proper.

CLASS ACTION COMPLAINT

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted on behalf of Plaintiff and those similarly situated,

By: /s/ Sharon R. Vinick

Sharon R. Vinick

SHARON R. VINICK (SBN# 129914) (LOCAL COUNSEL)
DARCI E. BURRELL (SBH# 180467) (LOCAL COUNSEL)
LEVY VINICK BURRELL HYAMS LLP
180 Grand Avenue, Suite 1300
Oakland, California 94612
Direct:  510-318-7702
Main:  510-318-7700
Fax:  510-318-7701
sharon@levyvinick.com

By: /s/ Suzanne E. Bish

Suzanne E. Bish

LINDA D. FRIEDMAN
    (*Pro hac vice in related case, Jaffe v. Morgan Stanley, No. 3:06-cv-03903-TEH*)
SUZANNE E. BISH
    (*Pro hac vice in related case, Jaffe v. Morgan Stanley, No. 3:06-cv-03903-TEH*)
STOWELL & FRIEDMAN LTD.
303 W. Madison, Suite 2600
Chicago, Illinois  60606
Phone: (312) 431-0888

16

CLASS ACTION COMPLAINT