UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KATHY FRAZIER,

    Plaintiff,

    v.

MORGAN STANLEY, et al.,

    Defendants.

Case No. 15-cv-4512-PJH

**ORDER GRANTING MOTION TO TRANSFER VENUE**

On January 6, 2016, plaintiff's motion to transfer venue came on for hearing before this court. Plaintiff Kathy Frazier ("plaintiff") appeared through her counsel, Linda Friedman. Defendants Morgan Stanley & Co. LLC, Morgan Stanley Smith Barney LLC, and Morgan Stanley (referred to collectively as "defendants" or "Morgan Stanley") appeared through their counsel, Mark Dichter. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

This is an employment discrimination case brought by a former financial advisor for Morgan Stanley. She brings the action both as an individual and on behalf of a putative class. At a general level, plaintiff alleges that defendants have policies and practices that result in racial disparities. In particular, plaintiff challenges defendants' "teaming and pooling" policy and practice, under which financial advisors form "teams" with other financial advisors of their choosing, each member of the team sharing their client account and books of business with the rest of the team. Plaintiff claims that

1  African-American financial advisors are almost entirely excluded from favorable teams
2  and pools.  Overall, plaintiff claims that Morgan Stanley is engaged in a pattern and
3  practice of racial discrimination and knowingly employs policies and practices that have a
4  disparate impact on African Americans.

5  Plaintiff filed suit in this court on September 30, 2015, and then filed a motion to
6  relate this case to an earlier case filed in this district, Jaffe v. Morgan Stanley & Co., Inc.,
7  Case No. C 06-3903.  Jaffe was also a class action challenging racial discrimination at
8  Morgan Stanley, and resulted in a settlement that was approved by the court in 2008.
9  The motion to relate was denied, as the judge presiding over Jaffe found that the two
10 cases did not meet the relevant standard to relate cases under Civil Local Rule 3-12.

11 After the motion to relate was denied, plaintiff filed this motion to transfer the case
12 to the Southern District of New York.

## DISCUSSION

A.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted).  Thus, in considering whether to grant a motion to transfer, the district court may consider any of a number of "case-specific factors."  See id.

Although § 1404(a) lists three factors - convenience of parties, convenience of witnesses, and the interest of justice - rulings in motions brought under § 1404(a) can involve a number of other considerations. For example, the court can consider:

(1) the location where the relevant documents were negotiated and executed;
(2) the state most familiar with the governing law (in order to avoid confusion with application of foreign law);

|   |   |
|---|---|
| 1 | (3) plaintiff's choice of forum; |
| 2 | (4) the parties' contacts with the forum and the connection between plaintiff's |
| 3 | cause of action and the chosen forum; |
| 4 | (5) the differences in the costs of litigation in the two forums and congestion of the |
| 5 | courts; |
| 6 | (6) the ability to compel attendance of unwilling non-party witnesses; |
| 7 | (7) the ease of access to sources of proof and the convenience of the witnesses; |
| 8 | (8) the relevant public policy of the forum state and whether there is a local interest |
| 9 | in having localized controversies decided at home; and |
| 10 | (9) the unfairness of imposing jury duty on citizens in a forum unrelated to the |
| 11 | action. |

Jones, 211 F.3d at 498-99; see also Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2006) § 4:269, et seq. (relevant factors may include relative ease of access to proof; reach of subpoena power to secure witness attendance; the feasibility of consolidation with action pending elsewhere; state that is most familiar with governing state law; relative means of parties; relative docket congestion; plaintiff's choice of forum; each party's contacts with forum; contacts relating to plaintiff's cause of action in chosen forum; and differences in cost of litigation in two forums).

B.    Legal Analysis

As a threshold matter, the court will consider whether this district's connection to Jaffe warrants a finding that the interest of justice is better served by allowing this case to proceed in this district. In their opposition to plaintiff's motion to transfer, defendants argue that this suit "challenges several of Morgan Stanley's policies [], the same policies that are encompassed within the Jaffe settlement agreement." Defendants further argue that plaintiff's first claim, for breach of contract, "is based entirely on plaintiff's allegation that defendants failed to abide by the terms of the Jaffe settlement agreement, an agreement that was entered into, approved, and being overseen literally in the United States District Court for the Northern District of California."

However, earlier in this case, defendants held a decidedly different view. In opposing plaintiff's motion to relate this case to Jaffe, defendants argued that this case had no connection to Jaffe, as "the two actions involve substantially different facts and legal claims." Defendants further pointed out that, while this court technically retained jurisdiction over the Jaffe settlement agreement, such retention of jurisdiction was "solely for the purpose of entering all orders and judgments authorized that may be necessary to implement and enforce the relief provided" in the settlement agreement. Dkt. 303 at 1 (internal citation and bracketed language omitted). Defendants then directly challenged the merits of plaintiff's breach of contract claim – the same claim that defendants now invoke to argue against transfer – arguing that the Jaffe settlement agreement "preclude[s] Frazier's breach of contract claim," because it "explicitly states that '[e]nforcement of this Modified Settlement Agreement shall be prosecuted by Lead Class Counsel or counsel for [Morgan Stanley] only, not third parties." Dkt. 303 at 3 (internal citation omitted) (emphasis added by defendants).

While the court will not address the merits of plaintiff's breach of contract claim in connection with this motion, it does take the Jaffe settlement's terms into account when evaluating whether the existence of the settlement weighs against transferring this case out of this district. And because the court retained jurisdiction over the agreement only for the limited purpose discussed above, a purpose which is not relevant to this case, the court finds that there is no relevant "nexus" between the agreement and this district. To the extent that plaintiff claims a breach of that agreement, this court is no better equipped than any other court to interpret the contract and rule on the merits of plaintiff's claim. Accordingly, the court will conduct the section 1404 analysis without reference to the Jaffe settlement agreement.

With Jaffe off the table, the court must look only at plaintiff's suit to determine whether the convenience of parties and witnesses and the interest of justice warrant transfer to the Southern District of New York. Plaintiff argues that she is challenging firmwide policies that were designed and implemented by defendants' senior executives

4

1  in New York, making New York the most convenient venue for the parties and witnesses.
2  Defendants, on the other hand, argue that plaintiff worked in Morgan Stanley's Honolulu,
3  Hawaii branch office, which is closer to California than to New York, and further argue
4  that the Honolulu office is "part of the Palo Alto/Hawaii Complex based in Palo Alto,
5  California." Defendants explain that a "Complex" is a group of branches composed of
6  one lead branch (in this instance, the Palo Alto branch) and other, smaller branches
7  (such as the Honolulu branch) overseen by the Complex branch.

However, defendants provide an incomplete picture of the connection between the Honolulu branch and the Palo Alto branch. In their opposition, defendants argue that "[s]ince October 2012, the Palo Alto/Hawaii Complex, of which the Honolulu branch is a part, has been headquartered at the Complex branch in Palo Alto." Dkt. 19 at 1. Defendants further argue that "[a]s of October 2012, and at the time of plaintiff's resignation and today, Cira Nickerson, the Complex Manager, managed this Complex," and that "Ms. Nickerson works in Palo Alto." Id.

Based on the above, defendants have established a connection between the Honolulu branch and the Palo Alto branch from October 2012 to the present. However, plaintiff's employment with Morgan Stanley began much earlier – in 2007 – and ended in November 2013. For the time period from 2007 to October 2012 (i.e., the majority of the time that plaintiff was employed by Morgan Stanley), defendants have provided no indication that plaintiff's employment was connected to this district.

Moreover, while plaintiff's individual claims may involve witnesses from this district, there is no indication that the same is true of her class claims. As mentioned above, plaintiff challenges company-wide policies, and defendants' headquarters are located in New York. Defendants do not dispute that point, nor do they argue that any challenged policies were designed or implemented in this district. The court finds that the gravamen of this suit arises out of plaintiff's challenges to defendants' policies on behalf of a putative class, not out of her individualized claims. Accordingly, the court finds that transfer to the Southern District of New York would be more convenient to the parties and

5

1  witnesses, and in the interest of justice, and therefore, plaintiff's motion to transfer venue
2  is GRANTED.

    **IT IS SO ORDERED.**

Dated:  January 29, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge