## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHY FRAZIER, YARED ABRAHAM, O. EMMANUEL ADEPOJU-GRACE, ANDREW CLARK, KWESI COLEMAN, JEANNA PRYOR, and AISHA RADA, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MORGAN STANLEY & CO., LLC, MORGAN STANLEY SMITH BARNEY LLC, AND MORGAN STANLEY,<br><br>　　　　　　Defendants. | Case Action No. 16-cv-00804 (RJS) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL, DISMISS, AND/OR STRIKE PORTIONS OF PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 3

    A.    The Jaffe v. Morgan Stanley Action and Its Modified Settlement
Agreement. ............................................................................................... 3

    B.    Frazier's EEOC Charge Alleges Only That Her Branch Managers
Discriminated Against Her With Respect To Account Redistributions. .............. 5

    C.    Clark's EEOC Charge Contains No Factual Allegations Of Disparate
Impact. ..................................................................................................... 5

    D.    Coleman, Pryor And Rada Entered Into Binding Arbitration Agreements
Covering The Claims They Allege And That Include Class Action
Waivers. ................................................................................................... 6

III.  ARGUMENT .................................................................................................... 8

    A.    The Court Should Compel Arbitration of Coleman, Pryor and Rada's
Individual Claims, Exclude Them From Participating in this Action as
Class Members or Representatives and Stay Court Litigation of Their
Claims. ..................................................................................................... 8

        1.    Coleman, Pryor and Rada Entered Into Valid Arbitration
Agreements by Continuing Their Employment Without Opting
Out.   ....................................................................................... 8

        2.    Plaintiffs' Claims Are Covered by the Agreements and Are
Arbitrable. ............................................................................. 11

        3.    Coleman, Pryor and Rada Should be Excluded from Serving or
Participating in this Action as Class Members or Representatives.......... 12

    B.    Plaintiffs' Claims for Class-Wide Injunctive Relief Should Be Dismissed
or Stricken Because the Jaffe Court is Already Overseeing Injunctive
Relief Covering the Same Class and the Same Policies Plaintiffs
Challenge. ............................................................................................... 13

    C.    Frazier and Clark's Title VII Disparate Impact Claims Should Be
Dismissed Because They Are Not Within the Scope of  a Timely Charge. ........ 15

    D.    Plaintiffs Failed to State a Pattern or Practice Claim of Intentional
Discrimination.......................................................................................... 18

    E.    Clark Fails to State an Individual Claim of Title VII Race Discrimination
Because His Charge Did Not Contain Any Timely Claims................................ 21

    F.    Frazier Failed to State an Individual Claim of Title VII Sex
Discrimination.......................................................................................... 22

**TABLE OF CONTENTS**
(continued)

**Page**

G.  Frazier Failed to State an Individual § 1981 Retaliation Claim Because She Fails to Allege Sufficient Facts to State a Claim. ........................................ 23

IV.  CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert v. Carovano,*
    851 F.2d 561 (2d Cir. 1988)....................................................................................22

*Alexander v. Raymours Furniture Co.,*
    No. CIV.A. 13-5387, 2014 WL 3952944 (E.D. Pa. Aug. 13, 2014) .......................10

*Allen v. Grenada Mun. Separate Sch. Dist.,*
    575 F.2d 486 (5th Cir. 1978) ..................................................................................14

*American Express Co. v. Italian Colors Restaurant,*
    133 S. Ct. 2304 (2013).............................................................................................12

*Aquino v. Toyota Motor Sales USA, Inc.,*
    Case No. 15-cv-05281, 2016 WL 3055897 (N.D. Cal. May 31, 2016)...................10

*Arciniaga v. Gen. Motors Corp.,*
    460 F.3d 231 (2d Cir. 2006)....................................................................................11

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011).................................................................................................12

*Blair v. Scott Specialty Gases,*
    283 F.3d 595 (3d Cir. 2002)....................................................................................11

*Boule v. Credit One Bank,*
    No. 15-cv-8562 (RJS), 2016 WL 3015251 (S.D.N.Y. May 11, 2016) ...............8, 10

*Boyle v. Lynch,*
    5 F. Supp. 3d 425, 434 (W.D.N.Y. 2014) ...............................................................17

*Buchman v. Weiss,*
    No. 08-cv-5453 (RJS), 2009 WL 2044615 (S.D.N.Y. July 15, 2009)..................8, 9

*Burgis v. Dep't of Sanitation City of New York,*
    No. 13-cv-1011, 2014 WL 1303447 (S.D.N.Y. Mar. 31, 2014)..............................21

*Burgis v. New York City Dep't of Sanitation,*
    798 F.3d 63 (2d Cir. 2015)...........................................................................16, 19, 21

*Butera v. Mountain States Tel. & Tel. Co.,*
    Nos. 76-F-261, 76-F-896, 1977 WL 15455 (D. Colo. July 26, 1977) ....................14

*Butts v. City of New York Dep't of Hous. Pres. & Dev.*,
    990 F.2d 1397 (2d Cir. 1993), *superseded by statute on other grounds*................................15

*Callahan v. Consol. Edison Co. New York*,
    187 F. Supp. 2d 132 (S.D.N.Y. 2002)....................................................................25

*Cerni v. J.P. Morgan Securities LLC*,
    15-CV-5389 (AJN), 2016 WL 5805300 (S.D.N.Y. Sept. 20, 2016) ................................16, 17

*Cohen v. UBS Fin. Servs., Inc.*,
    799 F.3d 174 (2d Cir. 2015)........................................................................12, 13

*Cooper v. Fed. Reserve Bank of Richmond*,
    467 U.S. 867 (1984)................................................................................18, 20

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)................................................................................5

*Davis v. Bombardier Transp. Holdings (USA) Inc.*,
    794 F.3d 266 (2d Cir. 2015)............................................................................17

*DeBose v. Fedex Corp.*,
    No. 08 CIV. 07042 (AKH), 2009 WL 1542572 (S.D.N.Y. June 2, 2009) ............................16

*DuBois v. Macy's East Inc.*,
    338 F. App'x 32 (2d Cir. 2009) ..........................................................................9

*Farren v. Shaw Envtl., Inc.*,
    510 F. App'x 44 (2d Cir. 2013) ........................................................................15

*Fincher v. Depository Trust & Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010)........................................................................23, 24

*Garnett v. Mountain States Tel. & Tel. Co.*,
    No. 76-w-628, 1977 WL 15452 (D. Colo. Jan. 28, 1977) ........................................14

*Garrigan v. Ruby Tuesday, Inc.*,
    No. 13 CIV. 1196 GBD, 2013 WL 3946223 (S.D.N.Y. July 30, 2013)..............................24

*Gomez v. City of New York*,
    No. 12-CV-6409 RJS, 2014 WL 4058700 (S.D.N.Y. Aug. 14, 2014) ..................................25

*Grady v. DIRECTV Customer Servs. Inc.*,
    No. 14-cv-03474-CMA-NYW, 2015 WL 3619337 (D. Colo. June 10, 2015) ........................11

*Holmes v. Fresh Direct*,
    No. 13-cv-4657, 2015 WL 4885216 (E.D.N.Y. Aug. 5, 2015) ................................5

*In re Friedman's, Inc.*,
    363 B.R. 629 (S.D. Ga. 2007) ................................................................14

*Jaffe v. Morgan Stanley*,
    N.D. Cal., Case No. C 06-03903-TEH ...................................................... passim

*Johnson v. Circuit City Stores*,
    148 F.3d 373 (4th Cir. 1998) ................................................................11

*Katz v. Cellco Partnership*,
    794 F.3d 341 (2d Cir. 2015) .................................................................13

*Kopple v. Stonebrook Fund Mgmt., LLC*,
    18 A.D.3d 329 (1st Dep't 2005) ...........................................................11

*Krish v. Connecticut Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*,
    607 F. Supp. 2d 324 (D. Conn. 2009) ...................................................20

*Kronemberg v. Winthrop Univ. Hosp.*,
    No. 15-cv-3235, 2016 WL 2939153 (E.D.N.Y. May 19, 2016) ...............22

*Manigault v. Macy's East, LLC*,
    318 F. App'x 6 (2d Cir. 2009) ...............................................................9

*Mirasol v. Gutierrez*,
    No. 06 CIV ............................................................................................18

*Mitchell v. Cate*,
    No. 2:08-cv-01196, 2014 WL 546338 (E.D. Cal. Feb. 11, 2014) ...........14

*Morris v. Milgard Mfg. Inc.*,
    No. 12-cv-01623, 2012 WL 6217387 (D. Colo. Dec. 13, 2012) .............10

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ........................................................................15, 17

*Parisi v. Goldman, Sachs & Co.*,
    710 F.3d 483 (2d Cir. 2013) .................................................................11

*Patterson v. Raymours Furniture Co., Inc.*,
    No. 15-cv-2820, 2016 WL 4598542 (2d Cir. Sept. 2, 2016) ..................12

*Philadelphia Stock Exch. v. Int'l Sec. Exch., Inc.*,
    No. 05-cv-5390, 2005 WL 2923519 (S.D.N.Y. Nov. 2, 2005) ...............15

*Ranny v. Bauza*,
    No. 10 Civ. 7519(RJS), 2011 WL 4056896 (S.D.N.Y Aug. 3, 2011) .......9

*Specht v. Netscape Commc'ns Corp.*,
   150 F. Supp. 2d 585 (S.D.N.Y. 2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002) .............................10

*Stern v. Espeed, Inc.*,
   No. 06-cv-958, 2006 WL 2741635 (S.D.N.Y. Sept. 22, 2006) ...............................................10

*Sutherland v. Ernst & Young LLP*,
   726 F.3d 290 (2d Cir. 2013)....................................................................................................12

*Tucker v. Gonzales*,
   No. 03-cv-3106, 2005 WL 2385844 (S.D.N.Y. Sept. 27, 2005) ............................................20

*U.S. v. Local 295 of Int'l Bhd. Of Teamsters*,
   No. 90-cv-0970, 1991 WL 35497 (E.D.N.Y Mar. 8, 1991)....................................................14

*U.S. v. Tejada*,
   824 F. Supp. 2d 473 (S.D.N.Y. 2010)......................................................................................9

*Wilson v. Darden Restaurants, Inc.*,
   No. 99-cv-5020, 2000 WL 150872 (E.D. Pa. Feb. 11, 2000) .................................................10

*Yan v. Ziba Mode, Inc.*,
   No. 15-cv-47 (RJS), 2016 WL 1276456 (S.D.N.Y. Mar. 29, 2016)...........................21, 22, 24

### STATUTES

29 U.S.C. § 626(d) ...........................................................................................................................15

42 U.S.C. § 1981 ("§ 1981")..................................................................................................passim

42 U.S.C. § 2000-e...........................................................................................................................1

42 U.S.C. § 2000e-5(e) ..................................................................................................................15

### OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)....................................................................................................................5

Fed. R. Civ. P. 12(f)........................................................................................................................15

Fed. R. Civ. P. 23(a) ......................................................................................................................13

Fed. R. Civ. P. 23(b)(2)......................................................................................................13, 14, 15

FINRA Rule 13204 ...................................................................................................................12, 13

Defendants Morgan Stanley & Co. LLC, Morgan Stanley Smith Barney LLC, and Morgan Stanley (collectively, "Defendants" or "MS") submit this Memorandum of Law in support of their Motion to Compel, Dismiss, and/or Strike claims raised in the Third Amended Class Action Complaint ("Complaint") filed by Plaintiffs Kathy Frazier ("Frazier"), Yared Abraham ("Abraham"), O. Emmanuel Adepoju-Grace ("Adepoju-Grace"), Andrew Clark ("Clark"), Kwesi Coleman ("Coleman"), Jeanna Pryor ("Pryor"), and Aisha Rada ("Rada").

## I.      **INTRODUCTION**

The Complaint alleges four counts:  (1) race discrimination under 42 U.S.C. § 1981 ("§ 1981") on behalf of Plaintiffs and a putative nationwide class of African-American Financial Advisors ("FAs");[1] (2) race discrimination under 42 U.S.C. § 2000-e ("Title VII") on behalf of Frazier, Clark, and a putative nationwide class of African-American FAs; (3) an individual Title VII sex discrimination claim on behalf of Frazier; and (4) individual § 1981 retaliation claims on behalf of Frazier and Coleman.  As set forth below, other than the individual § 1981 race discrimination claims of Frazier, Abraham, Adepoju-Grace and Clark, Plaintiffs' claims should be compelled to arbitration, stayed, dismissed and/or stricken.

First, Coleman, Pryor and Rada are each bound by a valid and enforceable arbitration agreement in which they agreed not to participate in a class action as a class representative or class member and that claims such as those alleged in the Complaint would be resolved through final and binding arbitration on a non-class basis.  Their arbitration agreements and class action waivers should be enforced, they should be excluded from participating in this action as class representatives or class members, and their individual claims should be compelled to arbitration.

---

[1] The seven Plaintiffs consist of two former FAs, one current Financial Advisor Associate (which Plaintiffs refer to as an FA Trainee), and four former Financial Advisor Associates.  *See* Complaint ("Compl.") ¶¶ 43, 52, 61, 68, 70, 73, 82, 92.  All references to the term "FA" will include these positions and those listed in footnote 1 of the Complaint.  Compl. at 1, n. 1.

Second, Plaintiffs' requests for class-wide injunctive relief should be dismissed. The relief they seek is already covered by the extensive programmatic relief approved by Judge Henderson in *Jaffe v. Morgan Stanley*, N.D. Cal., Case No. C 06-03903-TEH ("*Jaffe*"). Plaintiffs cannot obtain injunctive relief here because they, and the class members they seek to represent, are already represented by the court appointed class counsel in *Jaffe*. Moreover, the injunctive relief Plaintiffs seek is duplicative and potentially inconsistent with the court-approved *Jaffe* settlement and therefore their request is moot.

Third, the Title VII disparate impact claims are beyond the scope of Frazier and Clark's individual Charges of Discrimination ("Charges") or are not subject to a timely Charge.

Fourth, Plaintiffs' class-wide intentional discrimination claim should be dismissed as they have not alleged sufficient facts to support their allegations that African-American FAs are systemically denied equal employment opportunities. Plaintiffs have only alleged a few sporadic, isolated instances of alleged discrimination by *their* individual managers in *their* individual branches. Those anecdotal, highly individualized allegations are nothing more than sporadic or isolated occurrences, which, in the aggregate, cannot establish a consistent pattern or practice of discrimination that can be considered MS's standard operating procedure.

Fifth, Clark's individual claim of Title VII race discrimination should be dismissed, because he has failed to state a claim. Clark has not alleged any discriminatory treatment during the period of employment covered by his Charge, and his conclusory allegations that he was harmed because of his race are nothing more than the unadorned allegations that the Supreme Court has explained are insufficient to state a claim.

Sixth, Frazier has failed to state individual claims of retaliation or Title VII sex discrimination, and those claims should be dismissed. Frazier has not alleged any facts showing

that she engaged in protected activity or that any such activity was the but-for cause of any adverse employment action or that any discrimination occurred *because* of her sex.

Accordingly, Defendants respectfully request that the Court:  (1) exclude Coleman, Pryor and Rada from participating in this action as class representatives or class members and compel them to arbitrate their individual claims; and (2) dismiss (a) Plaintiffs' claims for class-wide injunctive relief, (b) Plaintiffs' Title VII disparate impact claims, (c) Plaintiffs' pattern or practice claim; (d) Clark's individual Title VII race discrimination claim; and (e) Frazier's individual Title VII sex discrimination and § 1981 retaliation claims.  This would leave the individual § 1981 race discrimination claims of Frazier, Abraham, Adepoju-Grace and Clark.

## II.    FACTUAL BACKGROUND

### A.    The *Jaffe v. Morgan Stanley* Action and Its Modified Settlement Agreement.

In October 2008, Judge Henderson granted final approval of the race class action settlement agreement (the "*Jaffe* Agreement"), in which Frazier was a class member.[2]  *Jaffe* Dkt. No. 250; Second Amended Complaint ("SAC") (Dkt. No. 28)  ¶ 31.  The *Jaffe* Agreement covers the same individuals Plaintiffs seek to represent here:  MS's current and former African-American FAs.[3]  Compl. ¶ 101.

On September 30, 2015, Judge Henderson approved the *Jaffe* parties' stipulation to extend the *Jaffe* Agreement through September 30, 2017.  *Jaffe* Dkt. No. 301.  The *Jaffe*

---

[2] The *Jaffe* Agreement covers all African-American FAs in the Global Wealth Management Group of Morgan Stanley & Co. Inc. or its predecessor at any time between October 12, 2002 and December 3, 2007.  *Jaffe* Dkt. No. 250 at p. 20.  The *Jaffe* Agreement's extensive programmatic relief applies to all FAs employed at any time through September 2017.  Frazier worked as an FA in MS's Honolulu branch from 2007 until November 2013.  Compl. ¶ 8.

[3] Following the creation of the Morgan Stanley Smith Barney Joint Venture, the *Jaffe* parties modified the *Jaffe* Agreement to, *inter alia*, include former Smith Barney FAs.  *Jaffe* Dkt. No. 281.  Judge Henderson approved the parties' modified agreement.  *Jaffe* Dkt. No. 282.

Agreement, as extended, contains over 20 pages of detailed programmatic relief and extensive commitments and programs that specifically address the same policies and practices challenged by Plaintiffs here, including MS's teaming, account transfers and redistributions (including leads, call-ins, and walk-ins), training, and compensation policies and practices. *Jaffe* Dkt. No. 281-1 at pp. 17-37. The *Jaffe* Agreement appointed two independent Industrial Psychologists to develop programs to enhance opportunities for and the success of African-American FAs with respect to policies challenged by Plaintiffs here. The *Jaffe* Agreement also provides for continuing, comprehensive monitoring by a highly-respected Diversity Monitor, Fred Alvarez, Esq., and detailed oversight by well-respected civil rights attorneys who were approved by Judge Henderson to serve as class counsel.[4] These measures all remain in place today.

Prior to approving the *Jaffe* Agreement, Judge Henderson considered objections from some *Jaffe* settlement class members. Those objectors were represented by the same counsel representing Plaintiffs here – Stowell & Friedman – and raised almost identical arguments to Plaintiffs' claims here. *Jaffe* Dkt. Nos. 95, 161. Those objections included challenges to the: (1) agreed-upon injunctive relief; (2) use of the Power Ranking system for account redistributions; and (3) partnership and teaming policies. *Jaffe* Dkt. No. 161. Following extensive briefing and oral argument, Judge Henderson carefully considered and rejected each of the Objectors' arguments. *Jaffe* Dkt. Nos. 130, 250.

---

[4] With respect to the policies Plaintiffs challenge, the *Jaffe* Agreement provides, *inter alia*: (1) that the Diversity Monitor will analyze African-American FAs' participation in teams, and the Industrial Psychologists will provide recommendations to increase the participation of African-American FAs in teams and partnerships; (2) detailed account transfer and redistribution policies, with the Diversity Monitor overseeing the account redistribution data and exception reports; (3) for bi-annual training of MS's managers with respect to anti-discrimination and retaliation policies, which is monitored by the Diversity Monitor; and (4) that the Industrial Psychologists develop initiatives to enhance African-American FAs' success through training, development and mentoring, and programs to increase African-American FAs' production and earnings. *Jaffe* Dkt. No. 281-1 at pp. 17-37.

**B.**     <u>Frazier's EEOC Charge Alleges Only That Her Branch Managers Discriminated Against Her With Respect To Account Redistributions.</u>

Frazier commenced her employment with MS as an FA in 2007 and voluntarily resigned on November 23, 2013. Compl. ¶¶ 43, 50. On September 15, 2014, Frazier faxed a letter to the EEOC's Honolulu Office claiming that her managers discriminated against her on the basis of her gender and race when they redistributed accounts[5] in MS's Honolulu branch office. *See* Declaration of Blair J. Robinson ("Robinson Decl."), Ex. B.[6]

On December 17, 2014, Frazier signed an EEOC Charge alleging that she was discriminated against because of her race and gender when accounts were unfairly distributed to "Asian and White males in [her] office." *Id.*, Ex. C. Frazier's Charge also contained the unsupported claim that she believed that "others as a class had been subject to discrimination" and that the number of employees at her employer was "15-100." *Id.* She did not, however, identify any policies as discriminatory, plead that any account redistributions occurred within the prior 300 days or the 300 days prior to her first contacting the EEOC, or allege that any employees outside of her Honolulu branch were subject to similar discrimination.

**C.**     <u>Clark's EEOC Charge Contains No Factual Allegations Of Disparate Impact.</u>

Clark commenced employment with MS in 2013 and was an FA when he voluntarily resigned on May 31, 2015. Compl. ¶ 68. On March 15, 2016, Clark filed an EEOC Charge that primarily copied the language in Frazier's SAC, alleging – without providing any individualized

---

[5]Account redistributions occur when FAs retire or leave MS. Compl. ¶ 32.

[6] In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider relevant documents provided to and gathered by the EEOC and take judicial notice of undisputed court records and filings. *See Holmes v. Fresh Direct*, No. 13-cv-4657, 2015 WL 4885216, at *4 (E.D.N.Y. Aug. 5, 2015) ("where exhaustion of administrative remedies is a prerequisite to bringing suit, the court may take judicial notice of the public records and reports of relevant administrative bodies …"); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

details – that MS's teaming, account redistributions, training, and compensation policies

disparately impact Clark or other African-American FAs.  Robinson Decl., Ex. D.  Other than his

constructive discharge claim, Clark did not allege that he suffered any discriminatory treatment

or disparate impact during the 300 days prior to filing his Charge.  *Id.*

### D.   Coleman, Pryor And Rada Entered Into Binding Arbitration Agreements Covering The Claims They Allege And That Include Class Action Waivers.

Coleman, Pryor and Rada each entered into a valid and binding Arbitration Agreement in

which they agreed to arbitrate "any and all claims or disputes … arising out of or which arose out

of [their] employment" on a non-class basis and agreed not to participate in a class action as a

class representative or class member, waiving any right to bring claims on a class basis.  In their

Agreements they agreed that (1) "any and all…statutory discrimination, harassment and

retaliation claims, and claims under…any federal…statute…including…Title VII…and any

other…discrimination or employment law" "will be resolved by final and binding arbitration as

set forth in this Arbitration Agreement," (2) no claims covered by the Arbitration Agreement

"may be initiated, maintained, heard or determined on a class action…basis either in court or in

arbitration," and (3) they "are not entitled to serve or participate as a class…action member or

representative…."  Declaration of Jessica Krentzman ("Krentzman Decl."), Ex. 5.

The Arbitration Agreement was delivered to and received by Coleman, Pryor, and Rada

on September 2, 2015, together with an explanatory notice and links to a CARE Guidebook

describing MS's CARE (Convenient Access to Resolutions for Employees) Arbitration Program

and a CARE Arbitration Program Opt-Out Form.  *Id.* ¶¶ 4-13 & Exs. 2-7.  In addition, the CARE

Guidebook and a sample new arbitration agreement were posted and maintained on me@MS, the

Firm's intranet site that employees utilize to access HR related information and other

information regarding and governing their employment, including information on benefits,

compensation, payroll, HR policies (including those governing CARE), and diversity. *Id*. ¶¶ 3-4.

The CARE Guidebook and sample new arbitration agreement were maintained on me@MS and

readily available to and accessible by MS employees on their computers through the October 2,

2015 deadline for opting out of the CARE Arbitration Program and thereafter. *Id*. ¶ 4.

The notice made clear that, by continuing employment after the Arbitration Agreement's

effective date without opting out by following the instructions contained in the notice and Opt-

Out Form, employees would accept, agree to, and become bound by the agreement:

> By continuing your employment with [MS], you accept and agree to, and will
> be…bound by the terms of the Arbitration Agreement…, unless you elect to opt
> out…by completing, signing and submitting an effective CARE Arbitration
> Program Opt-Out Form by October 2, 2015…. If you remain employed and do
> not timely complete, sign and submit an effective…Opt-Out Form,… you have
> consented and agreed to the terms of the Arbitration Agreement….

*Id*. ¶ 7 & Exs. 2-4. The notice also explained that "[y]our decision to opt out…will not

adversely affect your employment status with the Firm." *Id* ¶ 8.

The scope and mandatory nature of arbitration under the Arbitration Agreement was

readily apparent from this notice, which was titled "Expansion of CARE Arbitration Program"

and explained that the Firm was expanding the CARE Arbitration Program:

> to extend arbitration obligations for all U.S. employees – registered and non-
> registered. Effective October 2, 2015, arbitration…will be mandatory for all
> employees in the U.S., and all covered claims…will be resolved through final and
> binding arbitration on a non-class…basis as more fully described in the
> Arbitration Agreement and CARE Guidebook.

*Id*., Exs. 2-4.[7] Plaintiffs were expressly told that "it is important that you read and understand

the Arbitration Agreement and CARE Guidebook as they describe the terms, features and details

of this program," which they could do by simply clicking on the links in the email. *Id*.

---

[7] The scope and mandatory nature of arbitration under the new agreement was also readily
apparent from the reminder notice posted on me@MS. *Id*. ¶ 15.

The Opt-Out Form is a simple one page document which explained that "[i]f you wish to opt out of the Arbitration Agreement…, you must complete, sign and return this form by email by October 2, 2015" and that the completed Opt-Out Form "must be received and acknowledged by return email to be effective." *Id*. ¶ 14 & Ex. 7.

During the opt-out window, MS posted and maintained on me@MS a reminder notice about the expansion of mandatory arbitration under CARE and the deadline for opting out. *Id*. ¶ 15. Coleman, Pryor and Rada each had the choice of continuing employment with or without binding arbitration, and each chose to continue their employment past the October 2, 2015 opt out deadline without opting out. *Id*. ¶¶ 13-17; Compl. ¶¶ 12-14. As a result, each became bound by the Arbitration Agreement. *Id*.

## III.   <u>ARGUMENT</u>

### A.   <u>The Court Should Compel Arbitration of Coleman, Pryor and Rada's Individual Claims, Exclude Them From Participating in this Action as Class Members or Representatives and Stay Court Litigation of Their Claims.</u>

In determining whether a dispute involving federal statutory claims is arbitrable, a court must decide three questions: (1) whether there exists a valid agreement to arbitrate; (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement; and (3) whether Congress intended the claims to be nonarbitrable. *Boule v. Credit One Bank*, No. 15-cv-8562 (RJS), 2016 WL 3015251, at *2 (S.D.N.Y. May 11, 2016). In deciding these questions, "courts must 'construe arbitration clauses as broadly as possible,' and resolve 'any doubts concerning the scope of an arbitral issues…in favor of arbitration.'" *Buchman v. Weiss*, No. 08-cv-5453 (RJS), 2009 WL 2044615, at *3 (S.D.N.Y. July 15, 2009).

### 1.   Coleman, Pryor and Rada Entered Into Valid Arbitration Agreements by <u>Continuing Their Employment Without Opting Out.</u>

A valid arbitration agreement may be formed by words or by conduct, and an employee

will be deemed to have assented to an arbitration agreement by continuing to work after receiving notice of the agreement.  *See DuBois v. Macy's East Inc*., 338 F. App'x 32, 33 (2d Cir. 2009) (summary order); *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order).[8]  And "an agreement to arbitrate need only be proven by a preponderance of the evidence." *Buchman*, 2009 WL 2044615, at *3 & n.5 (citations omitted).

Coleman, Pryor and Rada each (1) received copies of the Arbitration Agreement on September 2, 2015, together with a notice explaining that it would become effective on October 2, 2015, and that "[b]y continuing [their] employment, [they] accept and agree to, and will be…bound by the…Arbitration Agreement…unless [they] elect to opt out…by… submitting an effective…Opt-Out Form by October 2, 2015"; (2) had 30 days to consider the Arbitration Agreement and opt out if they so desired; and (3) continued their employment after October 2, 2015 without opting out.  Krentzman Decl. ¶¶ 5-9, 13-18 & Exs. 2-4.  In addition, the CARE Guidebook and a sample new arbitration agreement were posted and maintained on me@MS, and a reminder notice regarding the expansion of mandatory arbitration under CARE and the October 2, 2015 deadline for opting out was posted and maintained on me@MS during the opt-out period.  *Id*. ¶¶ 4, 15.  These facts establish that Coleman, Pryor, and Rada each had adequate notice of, and accepted and became bound by, their Arbitration Agreements. *See DuBois*, 338 F. App'x at 33-34 (plaintiff's continued employment after receiving notice of the arbitration agreement and without opting out "constituted acceptance of  … mandatory arbitration"); *Manigault*, 318 F. App'x at 8 (plaintiff "agreed to arbitration by continuing with her

---

[8] This Court should consider the controlling authority of the Second Circuit in these decisions though issued in summary orders.  *U.S. v. Tejada*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) (although summary orders are non-precedential, they "nonetheless constitute valuable appellate guidance"); *Ranny v. Bauza*, No. 10 Civ. 7519(RJS), 2011 WL 4056896, at *3 n. 4 (S.D.N.Y Aug. 3, 2011) (although summary orders are non-precedential, "this 'does not mean that the court considers itself free to rule differently in similar cases.'").

employment" without opting out despite having received notice of the arbitration program and

opt-out option because "continued employment, without more, is sufficient to manifest assent");

*Boule,* 2016 WL 3015251, at *3 (proof of receipt is sufficient for arbitration agreement to be

binding even if employee did not read it) (citations omitted).[9]  Continued employment also

serves as legal consideration for the Arbitration Agreements, as does the parties' mutual

agreement to arbitrate.[10]  *Stern v. Espeed, Inc.*, No. 06-cv-958, 2006 WL 2741635, at *2

(S.D.N.Y. Sept. 22, 2006) ("continuation of employment alone is sufficient consideration to

enforce" arbitration agreement); *Kopple v. Stonebrook Fund Mgmt., LLC*, 18 A.D.3d 329, 329

---

[9] New York law applies and governs the contract formation issue because New York has the greatest interest in and connection to this litigation.  MS maintains its headquarters and principal place of business in New York, the Arbitration Agreement was designed and implemented in MS's headquarters in New York, and the litigation forum is in New York.  *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 590-91 (S.D.N.Y. 2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002).  Thus, as plaintiffs conceded in their motion to transfer venue, New York has a strong local interest in the case.  In addition, regardless what state law applies, the result would be the same because Coleman, Pryor, and Rada each received adequate notice of, and accepted and became bound by, their Arbitration Agreements even under the laws of other states.  *See, e.g.*, *Aquino v. Toyota Motor Sales USA, Inc.*, Case No. 15-cv-05281, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) (under CA law, plaintiff consented to arbitration by continuing to work after the effective date of the arbitration agreement without opting out); *Alexander v. Raymours Furniture Co.*, No. CIV.A. 13-5387, 2014 WL 3952944, at *5 (E.D. Pa. Aug. 13, 2014) (under PA law, "distribution of a mandatory arbitration policy to existing at-will employees … constitutes an offer of continued employment, subject to the terms of the arbitration program, which an employee accepts by continuing his employment after receiving notice of the program"); *Morris v. Milgard Mfg. Inc.*, No. 12-cv-01623, 2012 WL 6217387, at *3 (D. Colo. Dec. 13, 2012) (under CO law, plaintiff assented to arbitration policy by continuing his employment after receiving notice of the policy, and his claimed ignorance of the policy "does not absolve him from being bound" because information about the policy was available to him); *Wilson v. Darden Restaurants, Inc.*, No. 99-cv-5020, 2000 WL 150872 at *3-4 (E.D. Pa. Feb. 11, 2000) (under PA law, plaintiff accepted arbitration policy by continuing his employment after receiving notice of the policy and beyond its effective date).

[10] MS's agreement that all statutory discrimination claims will be decided by arbitration before JAMS is ample consideration for its employees' agreement to do the same.  MS is agreeing to give up, *inter alia*, its right to have dispositive motions decided by a federal court judge, its right to a jury trial, and its right to appeal under the federal rules, rather than the far more limited right of appeal available under the Federal Arbitration Act (the "FAA").

(1st Dep't 2005) ("[t]he parties' mutual promises to arbitrate constituted consideration sufficient to support the arbitration agreement").[11]

2.     Plaintiffs' Claims Are Covered by the Agreements and Are Arbitrable.

The § 1981 and Title VII claims alleged in the Complaint clearly are covered by the Arbitration Agreements, which expressly cover "any and all claims or disputes…arising out of or which arose out of [employee's] employment, compensation, and terms and conditions of employment with [MS]…includ[ing]… statutory discrimination, harassment and retaliation claims, and claims under…any federal… statute…including…Title VII…and any other…discrimination … law…."[12] And it is well established that § 1981 and Title VII claims are arbitrable. *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486-88 (2d Cir. 2013) (Title VII claims are arbitrable); *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231 (2d Cir. 2006) (Section 1981 claims arbitrable).

---

[11] *See also Grady v. DIRECTV Customer Servs. Inc.*, No. 14-cv-03474-CMA-NYW, 2015 WL 3619337, at *4 (D. Colo. June 10, 2015) (under CO law, "Arbitration Agreement was…supported by consideration, [because] both parties agreed to arbitrate"); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603-04 (3d Cir. 2002) (under PA law, "[w]hen both parties have agreed to … arbitration, adequate consideration exists…a contract need not have mutuality of obligation as long as [it] is supported by consideration"); *Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir. 1998) (under MD law, "a mutual promise to arbitrate constitutes sufficient consideration for … arbitration agreement").

[12] The Agreement's exclusion of "any claim filed in court in which you are individually named as a plaintiff…before the date on which this Agreement was sent to you" has no application to this action or Coleman, Pryor or Rada's claims since this action was not filed until 29 days ***after*** the date the Agreement was sent to them and they were not individually named as plaintiffs until several months later. Krentzman Decl. Ex. 5 ¶ 3. And insofar as Coleman, Pryor and Rada's claims are based on alleged acts that predate the effective date of the Agreement, those claims are covered by the Agreement because: (1) it expressly states that it applies to claims based on acts that occurred before it was entered into; and (2) the 2009 CARE Guidebook states that "pending claims will be governed by the Program in effect at the time of filing the Request for Mediation/Arbitration Form with the [CARE] Program Administrator" and Coleman, Pryor and Rada do ***not*** allege that they filed any such request or made any claim in any forum before the effective date of the 2015 CARE Arbitration Program.. *Id.* Ex. 5 ¶¶ 2, 3 & Ex. 1.

3.   Coleman, Pryor and Rada Should be Excluded from Serving or
     <u>Participating in this Action as Class Members or Representatives.</u>

Coleman, Pryor, and Rada waived any right to bring their claims on a class basis and

should be excluded from serving or participating in this action as class members or

representatives because their Arbitration Agreements provide, *inter alia*, that no claims covered

by their Arbitration Agreements "may be initiated, maintained, heard or determined on a class

action…basis either in court or in arbitration," and that they "are not entitled to serve or

participate as a class…action member or representative… ."  *Cohen v. UBS Fin. Servs., Inc.*, 799

F.3d 174, 179-80 (2d Cir. 2015) (citing *American Express Co. v.  Italian Colors Restaurant*, 133

S. Ct. 2304, 2307-12 (2013) and holding that "[b]ecause Cohen waived the right to bring his

claims on a class … basis (and … those waivers are enforceable), only his individual claims

remain" and those claims must be compelled to arbitration).[13]

To the extent that Plaintiffs contend that the class waivers in their Arbitration

Agreements are unenforceable because they violate the National Labor Relations Act, the

Second Circuit has already considered and rejected that argument.  *Patterson v. Raymours*

*Furniture Co., Inc.*, No. 15-cv-2820, 2016 WL 4598542, at *2 (2d Cir. Sept. 2, 2016);

*Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013).

To the extent that Plaintiffs' contend that class action waivers are unenforceable because

they violate FINRA Rule 13204, the Second Circuit considered and rejected that argument in

*Cohen*, where it held that Rule 13204 "does not prohibit the enforcement of pre-dispute waivers

of class…action procedures."  *See Cohen*, 799 F.3d at 178-80 ("enforcement of [class action

---

[13] *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (the FAA requires
enforcement of arbitration agreements with class action waivers "according to their terms"
because "[t]he overarching purpose of the FAA … is to ensure the enforcement of arbitration
agreements according to their terms so as to facilitate streamlined proceedings").

-12-

waiver] would not be 'contrary' to Rule 13204 because the Rule [does not bar] enforcement of pre-dispute waivers of class…action procedures").

Because all of Coleman, Pryor and Rada's claims are subject to and should be compelled to arbitration, the Court should stay these proceedings with respect to their claims. *Katz v. Cellco Partnership*, 794 F.3d 341, 347 (2d Cir. 2015) (holding that Section 3 of the FAA mandates that the Court issue a stay of proceedings when "all of the claims in an action have been referred to arbitration" and a stay is requested).

**B.** **Plaintiffs' Claims for Class-Wide Injunctive Relief Should Be Dismissed or Stricken Because the *Jaffe* Court is Already Overseeing Injunctive Relief Covering the Same Class and the Same Policies Plaintiffs Challenge.**

Through their conclusory and factually unsupported allegations, Plaintiffs claim that several of MS's policies and practices have a disparate impact on African-American FAs, including those governing "the [MS] training program, compensation plans, the formation and treatment teams and pools, and the transfer or distribution of Firm resources and business opportunities, such as client accounts, leads, and referrals." Compl. ¶ 40. Those policies and practices, however, are already the subject of the comprehensive and continuing programmatic relief approved by Judge Henderson in the *Jaffe* class action covering African-American FAs. Plaintiffs therefore cannot obtain the injunctive relief they seek and therefore cannot satisfy the requirements for class certification under Rule 23(b)(2).[14]

When confronted with similar issues, other courts have made clear that where a previous court has already entered – and is overseeing – injunctive relief addressing the allegations raised by a subsequent plaintiff in a new action, the subsequent class-wide injunctive relief is not

---

[14] "A class action may be maintained if Rule 23(a) is satisfied and if…the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

appropriate.  *See, e.g.*, *U.S. v. Local 295 of Int'l Bhd. Of Teamsters*, No. 90-cv-0970, 1991 WL 35497, at *2 (E.D.N.Y Mar. 8, 1991) (granting motion to strike request for injunctive relief that was already barred by a prior Consent Judgment); *Mitchell v. Cate*, No. 2:08-cv-01196, 2014 WL 546338, at *7 (E.D. Cal. Feb. 11, 2014) (granting defendant's motion for summary judgment and dismissing a prisoner's requests for injunctive relief as moot where the prison was already "under a court order prohibiting [it] from imposing race-based lockdowns"); *Garnett v. Mountain States Tel. & Tel. Co.*, No. 76-w-628, 1977 WL 15452, at *1 (D. Colo. Jan. 28, 1977) (dismissing discrimination class action claims for injunctive and declaratory relief because another district court already had class-wide jurisdiction over injunctive relief).  Similarly, courts have denied class certification under Rule 23(b)(2) where a defendant is already subject to overlapping injunctive relief.  *See, e.g., In re Friedman's, Inc.*, 363 B.R. 629, 638-9 (S.D. Ga. 2007) (holding that the previously issued injunctive relief "moots any necessity for further injunctive relief" and granting motion to decertify a Rule 23(b)(2) class because the defendant had agreed in a previous settlement to "take corrective and remedial actions" and the prior court implemented and "retained jurisdiction to enforce the terms of the settlement"); *Butera v. Mountain States Tel. & Tel. Co.*, Nos. 76-F-261, 76-F-896, 1977 WL 15455, at *1 (D. Colo. July 26, 1977) (denying motion for class certification because the injunctive relief plaintiffs sought was already the subject of a consent decree against defendant providing for "extensive injunctive and declaratory relief to correct the sexual imbalance."); *Allen v. Grenada Mun. Separate Sch. Dist.*, 575 F.2d 486, 487 (5th Cir. 1978) (affirming denial of class certification of a race discrimination case where the "court had previously entered an injunction which expressly covered discrimination in employment in a pending school desegregation action").

Plaintiffs' current attack on the programmatic relief that the *Jaffe* Court already approved

is nothing more than Plaintiffs' counsel's attempt to re-litigate the issues they unsuccessfully

raised through their objections to the *Jaffe* settlement.  *Jaffe* Dkt. Nos. 95, 161-162.  Because the

injunctive relief Plaintiffs seek here would be duplicative of the relief approved, implemented

and overseen by the *Jaffe* court, along with experienced employment discrimination class action

counsel, an external monitor, and two industrial psychologists.  Plaintiffs' request should be

dismissed and/or stricken[15] from the Complaint without leave to amend.  Absent a claim for

injunctive relief, there is no basis to certify Plaintiffs' proposed class under Rule 23(b)(2).

      **C.**      **<u>Frazier and Clark's Title VII Disparate Impact Claims Should Be Dismissed</u>**
                   **<u>Because They Are Not Within the Scope of  a Timely Charge.</u>**

The law is clear that before an individual may bring a Title VII suit, "the claims forming

the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state

agency."  *Farren v. Shaw Envtl., Inc.*, 510 F. App'x 44, 45 (2d Cir. 2013); 42 U.S.C. § 2000e-

5(e); 29 U.S.C. § 626(d).  To exhaust these administrative remedies, a plaintiff must file a charge

within 300 days of the last allegedly discriminatory action.  *Nat'l R.R. Passenger Corp. v.

Morgan*, 536 U.S. 101 (2002).  Moreover, any Title VII lawsuit must be limited to the

allegations contained in that charge or be reasonably related thereto.  *Butts v. City of New York

Dep't of Hous. Pres.  & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993), *superseded by statute on other

grounds* (holding that a court may only consider claims which could be "reasonably expected to

grow out of the charge of discrimination").  Where a complaint challenges employment practices

that were not the subject of, or "reasonably related to," a timely charge, or asserts class claims

when the corresponding charge was limited to individual disparate treatment claims, the new

---

[15] The Court can strike from a "pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike may be granted "[w]here a demand for damages is not recoverable as a matter of law."  *Philadelphia Stock Exch. v. Int'l Sec. Exch., Inc.*, No. 05-cv-5390, 2005 WL 2923519, at *1 (S.D.N.Y. Nov. 2, 2005).

claims should be dismissed.  *See, e.g., Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63,

70 (2d Cir. 2015) (holding that plaintiffs failed to exhaust their administrative remedies because

a plaintiff's complaints "of individualized disparate treatment are not reasonably related to a

Title VII disparate impact claim alleging class-wide discrimination"); *Cerni v. J.P. Morgan*

*Securities LLC*, 15-CV-5389 (AJN), 2016 WL 5805300, at *5 (S.D.N.Y. Sept. 20, 2016)

(dismissing claim because "disparate treatment allegations are not 'reasonably related' to

disparate impact claims for purposes of exhaustion").

Frazier's claims in this lawsuit have to be limited to the scope of her EEOC Charge – her

disparate *treatment* claim that *her* managers at MS's Honolulu office "unfairly distributed

accounts to Asian and White males in [*her*] office."  Robinson Decl., Ex. C.  In her Charge, she

did not raise any issues regarding MS's compensation, teaming, partnership, or training policies,

and her Charge is completely devoid of any factual allegations regarding any disparate *impact*

resulting from MS's facially neutral account redistribution policy that was created and

implemented as part of the *Jaffe* programmatic relief.  Frazier's claims in the Complaint,

therefore, must also be limited to alleged disparate treatment against her.  *DeBose v. Fedex*

*Corp.*, No. 08 CIV. 07042 (AKH), 2009 WL 1542572, at *1 (S.D.N.Y. June 2, 2009) (granting

motion to dismiss nationwide class claims where plaintiff's claims were "highly individualized"

and did not sufficiently put the company on notice that "others suffered similar discrimination").

Frazier's disparate impact claim also fails because she did not allege any facts relating to

any alleged discriminatory action that occurred within the 300 day limitations period.  She does

not allege that she was disparately impacted by the application of the account redistribution

policy; rather, she claims that she was discriminated against because her management did not

follow the policy.  Compl. ¶ 46.  Furthermore, she does not allege that any account

redistributions occurred in the 300 days before she first wrote to the EEOC.  Therefore, the

account redistributions cannot form the basis of her claim.  *Morgan*, 536 U.S. at 114 (holding

that a charge for discrimination based on a discrete discriminatory act must be filed within 300

days of such act to be actionable); *Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d

266 (2d Cir. 2015) ("the plain language of the [Ledbetter Act] covers compensation decisions

and not other discrete employment decisions such as hiring, firing, promotions, and

demotions….[W]e find that the Ledbetter Act's reference to 'discrimination in compensation'

was to traditional pay-discrimination claims rather than to a pay reduction that flows from

another adverse employment action,") (citations omitted); *Boyle v. Lynch*, 5 F. Supp. 3d 425, 434

(W.D.N.Y. 2014) (finding that plaintiff's claim he was assigned "troubled accounts" was not

enough to show defendant maintained a discriminatory policy and that any account distributions

that were more than 300 days prior to the charge were untimely).

Similarly, Clark's Charge does not include a single allegation that any disparate impact

occurred between May 20, 2015 (300 days before he filed his Charge) and May 31, 2015 (the

day he resigned).  While Clark challenged MS's teaming and pooling, account redistribution, and

compensation policies on disparate impact grounds, his Charge contains no factual allegations

and was a boilerplate recitation of the non-specific, conclusory allegations asserted in Frazier's

SAC.  Other than his alleged "constructive discharge" on May 31, 2015, there was no allegation

of any other discrimination or any policy or practice creating a disparate impact.

Accordingly, as Frazier and Clark focused only on disparate treatment and did not assert

timely disparate impact claims in their individual charges, Plaintiffs' Title VII disparate impact

claim should be dismissed.  *Cerni*, 2016 WL 5805300, at *5 ("Because [plaintiff's] submissions

to the EEOC focus only on disparate treatment, his disparate impact collective action claim was

not exhausted.")

**D.    Plaintiffs Failed to State a Pattern or Practice Claim of Intentional Discrimination.**

Plaintiffs asserting a class claim for disparate treatment based on a "pattern-or-practice" of discrimination must satisfy the standard mandated by the Supreme Court; namely, that *intentional* discriminatory practices are the employer's "standard operating procedure," and not merely sporadic or isolated occurrences.  *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875-76 (1984) (internal citation omitted); *Mirasol v. Gutierrez*, No. 06 CIV 6369 (DC), 2006 WL 871028, at *5 (S.D.N.Y. April 5, 2006) (to survive a motion to dismiss, a plaintiff must allege "facts to support the conclusion that intentional discrimination was the defendant's standard operating procedure.") (citation and internal quotation marks omitted).

Here, the factual allegations regarding intentional race discrimination relate only to the individual Plaintiffs and their threadbare allegations regarding their purported exclusion from favorable teaming opportunities or denial of lucrative account redistributions.  These highly individualized factual allegations of seven of MS's thousands of FAs cannot support a pattern or practice claim, because they reflect individual decisions made by their individual managers at their individual branches located in Colorado, Delaware, Hawaii, Pennsylvania and Washington D.C., not that intentional discrimination was MS's "standard operating procedure."  To the contrary, the allegations are highly specific to individual managers and individual branch offices:

- "[M]anagement claimed Frazier's ranking among *the FAs in the office* precluded her from receiving account distributions….When Frazier confronted *her manager* with this information, the manager responded that 'what's done is done, we cannot change the past,' or words to that effect." Compl. ¶ 48.

- "Abraham tried to form a team with a young Caucasian male trainee, whom he mentored and provided with client accounts and production. This opportunity was not comparable to the *other teams in the office*….Abraham's managers undermined the relationship…." *Id.* ¶ 55.

-18-

- "Adepoju-Grace was denied basic training and mentoring provided to *his white colleagues*…." *Id.* ¶ 66.

- "[M]any of the non-African American *FA trainees in Clark's office* were teamed with senior FAs and given business opportunities and support to reach their training goals." *Id.* ¶ 70

- "Many non-African American FAs *in the Denver office* have been permitted to and did join lucrative teams and pools." *Id.* ¶ 70.

- "When Pryor complained to *her manager* about the poaching of *her accounts*, her manager refused to support Pryor…." *Id..* ¶ 88.

- "Rada complained about the lack of teaming opportunities and the harassment by the white FA. *Her manager* took no action and refused to help her join a team." *Id.* ¶ 96.

(emphasis added). Such "bare allegations do not present circumstances that give rise to an inference of unlawful discrimination." *Burgis*, 798 F.3d at 69.[16] Whereas a plaintiff may prove an individual discrimination claim under Title VII based on a single instance of disparate treatment, isolated acts of discrimination, such as those raised by these Plaintiffs, are insufficient

---

[16] Plaintiffs' non-specific assertions here are similar to those dismissed by the Second Circuit in the *Burgis* case. There, the plaintiffs alleged that defendants discriminated against Hispanic and African-American sanitation workers with respect to promotions and alleged that pursuant to the defendants' policy of using recommendations as the basis for promotion decisions, plaintiffs had been passed over for "promotions while White individuals, who were allegedly less qualified, were promoted." *Burgis*, 798 F.3d at 66, 68. The plaintiffs in *Burgis*, relying on statistics, provided no details about the qualifications of the white candidates or the positions they sought. As a result, the Second Circuit found the complaint "fail[ed] to provide meaningful specifics of the alleged difference in qualifications, let alone discriminatory intent," because it was also devoid of "any reference to specific statements or individual circumstances that suggest discriminatory treatment." *Id.* at 68. As the Second Circuit noted, "[f]or all that one can tell from the [Second Amended Complaint] (plaintiffs' 'third bite of the apple'), it is equally possible that plaintiffs have not been promoted for valid, non-discriminatory reasons," therefore it held that "plaintiffs' allegations do not support a finding that defendants acted with a discriminatory purpose." *Id.* The same is true here. Plaintiffs fail to provide meaningful specifics; instead, they conclusory allege that they were denied teams, training, and business opportunities without providing any specific details about, for example, the allegedly denied opportunities or the employees that received them.

-19-

to support a claim of company-wide intentional discrimination.  *Cooper*, 467 U.S. at 875-76

(explaining that the "crucial difference" between individual and pattern-or-practice

discrimination is that the inquiry in a pattern-or-practice claim is not on individual employment

decisions, but on a "pattern of discriminatory decision making"); *Krish v. Connecticut Ear, Nose*

*& Throat, Sinus & Allergy Specialists, P.C.*, 607 F. Supp. 2d 324, 332 (D. Conn. 2009)

(dismissing pattern or practice claim that defendant was systematically firing older employees

with higher pay rates where plaintiffs submitted three instances of age discrimination following a

similar pattern, because the allegations of a few confirmatory instances alone do not make out a

pattern or practice claim); *Tucker v. Gonzales*, No. 03-cv-3106, 2005 WL 2385844, at *4-5 n.3

(S.D.N.Y. Sept. 27, 2005) (holding that dismissal of pattern or practice claim was warranted

because the plaintiffs failed to allege facts "that would support a claim of a widespread pattern or

practice of discrimination….Rather, their amended complaint merely brackets extensive

allegations of wrongful conduct by one particular NYFO supervisor with general assertions of

the existence of a pattern or practice of discrimination").

In contrast to the individual Plaintiffs' highly individualized factual allegations, Plaintiffs

attempt to establish that MS "is engaged in a nationwide pattern and practice of intentional race

discrimination" through a series of allegations that lack any factual detail, yet purportedly reflect

the shared experiences of MS's African-American FAs.  Compl. ¶¶ 30, 34-40.  These

generalized allegations cannot establish a pattern or practice claim.  Plaintiffs simply recite,

almost verbatim, the same conclusory allegations that they were "denied resources, support, and

business opportunities and otherwise [were] treated worse than [their] colleagues who were not

African Americans," were "isolated, ignored and excluded from office and business activities,"

and "denied the mentoring, coaching, management and administrative support, financial support

for marketing efforts, and other support that was routinely given to non-African American FAs."
*Compare* Compl. ¶45 *with* ¶¶ 54, 63, 69, 75, 84, and 94.  Such bare, conclusory assertions cannot
"present circumstances that give rise to an inference of unlawful discrimination" and are nothing
more than  the "unadorned" allegations that the Supreme Court has held to be insufficient to state
a pattern or practice claim or survive a motion to dismiss.  *Burgis*, 798 F.3d at 69.  Accordingly,
Plaintiffs' pattern or practice claim should be dismissed.

> **E.    Clark Fails to State an Individual Claim of Title VII Race Discrimination Because His Charge Did Not Contain Any Timely Claims.**

The Court should dismiss Clark's individual Title VII race discrimination claim as he has
failed to state any timely facts supporting his claim.  At the initial pleading stage, Clark must
plausibly support his claim with facts that:  (1) he is a member of a protected class; (2) was
qualified for his position; (3) suffered an adverse employment action; and (4) MS was motivated
by discriminatory intent.  *Yan v. Ziba Mode, Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *3
(S.D.N.Y. Mar. 29, 2016).[17]  Defendants do not dispute that Clark is a member of a protected
class, or that he claims to have been a qualified employee who claims to have suffered alleged
adverse employment actions.  However, he fails to allege any facts that any of the alleged actions
by his managers occurred because of his race or during the eleven day limitations period
preceding his voluntary resignation covered by his Charge.

Clark asserts only the same boilerplate allegations raised by the other Plaintiffs – *e.g.*, he
was "isolated, ignored and excluded from office and business opportunities," "excluded from

---

[17] Plaintiffs alleging discrimination or retaliation under § 1981 or Title VII are not excused from
the pleading requirements, nor can they avoid them simply because they purport to bring their
case as a class action.  *Burgis v. Dep't of Sanitation City of New York,* No. 13-cv-1011, 2014 WL
1303447, at *4-6, 7 (S.D.N.Y. Mar. 31, 2014) (granting defendants' 12(b)(6) motion to dismiss
putative class § 1981 claim for failure to plausibly state a claim).  At a minimum, Plaintiffs must
"assert non-conclusory factual matter sufficient to nudge [their] claims across the line from
conceivable to plausible to proceed."  *Yan*, 2016 WL 1276456, at *3.

teaming opportunities," and "denied lucrative account transfers and distributions."  Compl. ¶¶
69-71.  Yet he fails to provide any details supporting these generalized claims of mistreatment he
purportedly suffered.  He does not identify what opportunities he sought, what opportunities
were denied, or who denied them.  Similarly, he fails to plead any facts regarding his alleged
comparators, including their identities, experience levels, or performance in comparison to Clark.
*Yan*, 2016 WL 1276456, at *5 (holding plaintiff failed to give plausible support to a minimal
inference of discriminatory motivation, because, *inter alia*, his complaint failed to plead any
facts regarding his comparators); *Kronemberg v. Winthrop Univ. Hosp.,* No. 15-cv-3235, 2016
WL 2939153, at *5 (E.D.N.Y. May 19, 2016) (finding that plaintiff's allegation that "defendants
discriminated against [plaintiff] by supervising [her] in a harsher manner than similarly situated
white employees" was insufficient to state a claim because it did not sufficiently allege how the
other employees were similarly situated).  Simply alleging that MS disparately enforced its
policies is inadequate to raise an inference that he was discriminated against because of his race.
*Yan*, 2016 WL 1276456, at *4;  *see also Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988)
(finding that the "naked allegation that [the defendants] 'selectively enforced the College rules ...
against plaintiffs ... because they are black [or] Latin" to be too conclusory to survive a motion to
dismiss).  Because Clark's allegations are completely barren of any factual allegations
supporting his individual Title VII race discrimination claim, that claim should be dismissed in
its entirety.

  **F.**  **<u>Frazier Failed to State an Individual Claim of Title VII Sex Discrimination.</u>**

  Frazier's Title VII sex discrimination claim fails to state a claim – a glaring deficiency in
light of the Court's prior admonition that her claim would probably not survive a motion to
dismiss unless she "add[ed] some real facts."  Robinson Decl., Ex. E at 5.  Rather than adding

any facts demonstrating that any alleged adverse employment action was motivated by her sex, Frazier simply adds an occasional reference to "sex" or "male FAs" in her allegations and even alternates between claiming solely race discrimination and race and gender discrimination with respect to the same allegation.  *See, e.g.* Compl. ¶ 46 ("FAs who *were not African American* were allowed to participate in account distributions and received substantial client accounts.  The largest and most lucrative client accounts were regularly steered to *male FAs who were not African American*.  Management provided false and pretextual reasons for transferring accounts exclusively to *non-African American FAs*.").  As Frazier's claim lacks sufficient factual allegations supporting her individual sex discrimination claim, dismissal is appropriate.

### G.   Frazier Failed to State an Individual § 1981 Retaliation Claim Because She Fails to Allege Sufficient Facts to State a Claim.

This Court should dismiss Frazier's individual retaliation claim alleged in Count IV of the Complaint because she again failed to state any facts to support such a claim.  To state a claim for retaliation, Frazier must allege that: (1) she engaged in protected activity opposing an unlawful employment practice; (2) she suffered an adverse employment action; and (3) there was a causal link between the activity and the adverse employment action.  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (holding that employer's failure to investigate a discrimination complaint did not constitute retaliation for filing the same complaint).  Despite being granted the opportunity to amend her allegations, Frazier's retaliation claim remains conclusory, continues to lack specificity, and still fails to satisfy the pleading requirements set forth in *Fincher*.

Frazier's sole reference to any potential protected activity is that she "complained to management about her exclusion from favorable account distributions."  Compl. ¶ 47.  Notably absent is that she complained that her purported exclusion was due to any discriminatory animus.

Nor does she claim that she had a "good faith, reasonable belief that the underlying challenged actions of [MS] violated the law." *Yan*, 2016 WL 1276456, at *6.

Frazier similarly fails to allege any factual details supporting her claim that she suffered an adverse employment action. She claims that: (1) MS " conducted no investigation and took no corrective action" into her complaint; (2) she was "subjected to increasing hostility by management and *continued* exclusion from any valuable leads, referrals, and account distributions"; (3) "the Firm *continued* to block [her] efforts to team and allowed male, non-African American FAs to poach client accounts from her book"; and (4) she "had no choice but to leave [MS]." Compl. ¶¶ 49-50 (emphasis added). First, a failure to investigate a complaint, even if true, does not constitute an adverse employment action. *Fincher*, 604 F.3d at 721 ("Her situation in the wake of her having made the complaint is the same as it would have been had she not brought the complaint or had the complaint been investigated but denied for good reason or none at all."). Second, "continued discrimination" is not an adverse employment action. *Id.* Third, the same events cannot form the basis of Frazier's discrimination and retaliation claim. *Garrigan v. Ruby Tuesday, Inc.*, No. 13 CIV. 1196 GBD, 2013 WL 3946223, at *3 (S.D.N.Y. July 30, 2013) (granting motion to dismiss retaliation claim where plaintiff alleged that she was discriminated against because of her sex after she broke up with her boyfriend-manager, and then retaliated against after she complained of the discrimination, because "[t]here is complete overlap between Plaintiff's *quid pro quo* discrimination claim and her retaliation claim here. Rejecting [the harasser] cannot serve as the basis for both claims."). Fourth, Frazier has not shown that her working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Fincher*, 604 F.3d at 725. Indeed, despite the alleged "ongoing and escalating discrimination and retaliation," Frazier admits that she "still managed to perform well

and generate significant revenues for [MS]."  Compl. ¶ 50.

Frazier also does not allege any facts to support that her unspecified complaints were the "but for" cause of any adverse acts.  Indeed, her sole allegation regarding any causal link is that "[d]ue to her complaints of discrimination" – again, alleged complaints that are plead nowhere in the Complaint – "[she] suffered retaliation."  Compl. ¶ 49.  These omissions are fatal to Plaintiff's retaliation claim.  *See Callahan v. Consol. Edison Co. New York*, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002) (dismissing § 1981 retaliation claim where plaintiff did not allege a "causal connection between her complaints and any adverse employment action"); *Gomez v. City of New York*, No. 12-CV-6409 RJS, 2014 WL 4058700, at *6 (S.D.N.Y. Aug. 14, 2014) (same).  Because the Complaint lacks *any* factual allegations supporting Frazier's retaliation claim, this Court should dismiss Count IV in its entirety.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that the Court:  (1) exclude Coleman, Pryor and Rada from participating in this action as class members or representatives and compel them to arbitrate their individual claims; and (2) dismiss (a) Plaintiffs' claims for class-wide injunctive relief, (b) Plaintiffs' Title VII disparate impact claims, (c) Plaintiffs' pattern or practice claim of intentional discrimination; (d) Clark's Title VII race discrimination claim; and (e) Frazier's Title VII sex discrimination and § 1981 retaliation claims.

Dated:  October 19, 2016                    Respectfully submitted,

                                            MORGAN, LEWIS & BOCKIUS LLP

                                            By: /s/  *Blair J. Robinson*
                                                    Blair J. Robinson
                                                    Andrew J. Schaffran

                                            101 Park Avenue
                                            New York, NY  10178
                                            Tel: 212.309.6000
                                            blair.robinson@morganlewis.com
                                            andrew.schaffran@morganlewis.com

                                            Mark S. Dichter
                                            *Pro Hac Vice*
                                            1701 Market Street
                                            Philadelphia, PA 19103
                                            Tel: 215.963.5291
                                            mark.dichter@morganlewis.com

                                            *Attorneys for Defendants*

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on October 19, 2016, via the Court's ECF/CM system.

/s/ *Blair J. Robinson*
Blair J. Robinson