**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KATHY FRAZIER, YARED ABRAHAM, O.
EMMANUEL ADEPOJU-GRACE, KWESI
COLEMAN, JEANNA PRYOR, and AISHA
RADA, on behalf of themselves and all others
similarly situated,

                Plaintiffs,

    v.

MORGAN STANLEY & CO. LLC, MORGAN
STANLEY SMITH BARNEY LLC, and
MORGAN STANLEY,

                Defendants.

Case No.  16-cv-00804 (RJS)

Judge Richard J. Sullivan

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR ENTRY OF ORDER AUTHORIZING IMMEDIATE APPEAL
UNDER RULE 54(b) AND/OR 28 U.S.C. § 1292(b)**

Linda D. Friedman
Suzanne E. Bish
Shona B. Glink
George S. Robot
STOWELL & FRIEDMAN, LTD.
303 W. Madison St., Suite 2600
Chicago, IL 60606
(312) 431-0888
LFriedman@sfltd.com
SBish@sfltd.com
GRobot@sfltd.com
SGlink@sfltd.com

January 16, 2020

## Table of Contents

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

    I.     The Court's Initial Dismissal Order..........................................................4

    II.    The Proposed Amended Complaint ..........................................................5

ARGUMENT ........................................................................................................................7

    I.     There Is No Just Reason to Delay an Appeal of the Court's Dismissal of
           the Class-Wide Pattern-or-Practice Claims With Prejudice ..................................9

    II.    There Is No Just Reason to Delay an Appeal of the Court's Ruling that the
            Ledbetter Act Does Not Apply to the Class-Wide Disparate Impact Claims
            Challenging the Teaming and Account Distribution Policies................................15

    III.   An Immediate Appeal Would be Efficient and May Materially Advance
            the Termination of the Litigation...........................................................................20

    IV.   The Second Circuit's Denial of Plaintiffs' Rule 23(f) Petition has no
            Bearing on this Court's Decision Whether to Authorize an Appeal......................24

CONCLUSION....................................................................................................................25

# Table of Authorities
## CASES

*Adkins v. Morgan Stanley*, 307 F.R.D. 119 (S.D.N.Y. 2015) ........................................ 18

*Barrett v. Forest Labs, Inc.,* 39 F. Supp. 3d 407 (S.D.N.Y. 2014) ........................... 11, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 10

*Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014) ............................................ 11

*Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374 (E.D.N.Y. 2012) ..................... 13

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago,* 797 F.3d 426 (7th Cir. 2015) .............................................................................. 17

*Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012) ................................. 22

*Coser v. Moore*, 587 F. Supp. 572 (E.D.N.Y. 1983), *aff'd*, 739 F.2d 746 (2d Cir. 1984) ........................................................................................................ 1, 22, 23

*Creighton v. Metro. Life Ins. Co.*, No. 1:15-cv-8321 (S.D.N.Y. June 27, 2017) ........ 13

*Cremin v. Merrill Lynch,* 328 F. Supp. 2d 865 (N.D. Ill. 2004) ................................. 14

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980) ........................................ 20

*Davis v. Bombardier Transportation Holdings (USA) Inc.*, 794 F.3d 266 (2d Cir. 2015) ..................................................................................................................... 16

*Davis v. Eastman Kodak Co.*, No. 04-cv-6098, 2007 WL 8098431 (W.D.N.Y. July 19, 2007) ......................................................................................................... 23

*DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102 (2d Cir. 2010) .................................. 10

*Fitchett v. City of New York*, No. 18-cv-8144, 2019 WL 3430726 (S.D.N.Y. July 30, 2019) ....................................................................................................... 19

*Frazier v. Morgan Stanley*, No. 19-462 (2d. Cir. June 19, 2019) ......................... 24, 25

*Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085 (2d Cir. 1992) .............. 8, 20, 21, 23

*Groesch v. City of Springfield*, 635 F.3d 1020 (7th Cir. 2011) .................................. 17

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) .......................................... 19

*Hester v. N. Ala. Ctr. for Educ. Excellence*, 353 F. App'x 242 (11th Cir. 2009) ........ 17

*Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004) ................................................. 24

*Hill v. City of New York*, 136 F. Supp. 3d 304 (E.D.N.Y. 2015) .......................... 11, 12

*In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704 (6th Cir. 2013) ......................................................................................................... 17

*In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-mc-2543, 2019 WL 6827277 (S.D.N.Y. Dec. 12, 2019) ................................................................... 21

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) .......................... passim

*Jaffe/Curtis-Bauer v. Morgan Stanley*, No. C 06 3903, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ..................................................................................... 3, 13

*Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) .............................. 15

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) ..................................... 10

*Lohn v. Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812 (S.D. Tex. 2009) .................................. 17

*McReynolds v. Merrill Lynch*, 672 F.3d 482 (7th Cir. 2012)................................................. passim

*McReynolds v. Merrill Lynch*, No. 05-cv-6583 (N.D. Ill. Sept. 19, 2011) .................................... 25

*Mikula v. Allegheny Cty.*, 583 F.3d 181 (3d Cir. 2009)........................................................ 17

*Perez v. Ortiz*, 849 F.2d 793 (2d Cir. 1988) ................................................................. 20

*Robinson v. Brooklyn Coll.*, No. 09-CV-2174, 2010 WL 3924012 (E.D.N.Y. Sept. 29, 2010)................................................................................................. 17

*Rudeen v. Allstate Ins. Co.*, No. 3:16-cv-1827, 2019 WL 5864501 (D. Conn. Nov. 8, 2019)................................................................................................ 8, 20

*Slaughter v. Wells Fargo Advisors LLC*, No. 13-cv-6368, 2017 WL 3128802 (N.D. Ill. May 4, 2017) ..................................................................................... 14

*Sorlucco v. New York City Police Dep't*, 971 F.2d 864 (2d Cir. 1992)........................................ 12

*Sumitomo Copper Litig. V. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134 (2d Cir. 2001)........................................................................................................... 24

*U.S. v. E. River Hous. Corp.*, 90 F. Supp. 3d 118 (S.D.N.Y. 2015) ........................................... 11

*United States v. City of New York*, 713 F. Supp. 2d 300 (S.D.N.Y. 2010)..................................... 12

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)........................................ 11

*Vuong v. New York Life Ins. Co.*, No. 3-cv-1075, 2009 WL 306391 (S.D.N.Y. Feb. 6, 2009) ................................................................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................... 10, 15

*Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147 (E.D.N.Y. 2011)................................................................................................ 16

## STATUTES

28 U.S.C. § 1291 ........................................................................................... 7

28 U.S.C. § 1292 ...................................................................................... passim

42 U.S.C. § 1981 ........................................................................................... 3

42 U.S.C. § 2000e-5(e)(3)(A) .......................................................................... passim

## RULES

Federal Rule of Civil Procedure 23(b)(2) ................................................................. 4

Federal Rule of Civil Procedure 23(b)(3) ................................................................. 4

Federal Rule of Civil Procedure 23(c)(4) ................................................................. 4

Federal Rule of Civil Procedure 54(b)................................................................. passim

Plaintiffs Kathy Frazier, Yared Abraham, O. Emmanuel Adepoju-Grace, Kwesi Coleman, Jeanna Pryor, and Aisha Rada, on behalf of themselves and all others similarly situated, by and through their attorneys, Stowell & Friedman, Ltd., respectfully request that the Court enter orders under Federal Rule of Civil Procedure 54(b) and/or 28 U.S.C. § 1292(b) to authorize immediate appeal of the Court's Order dated February 7, 2019, denying Plaintiffs leave to file the Proposed Amended Complaint.

## INTRODUCTION

During oral argument on Plaintiffs' request to file this motion, the Court expressed concern that the Second Circuit does not like "piecemeal appeals." (Dkt. 142 at 4.) Plaintiffs do not quarrel with the notion that, under typical circumstances, most district court decisions are not strong candidates for interlocutory review. However, some cases do warrant interlocutory review under Rule 54(b) and 28 U.S.C. § 1292(b), otherwise there would be no purpose for these rules. Plaintiffs respectfully submit that the Court's decision to dismiss with prejudice Plaintiffs' class-wide pattern-or-practice and disparate impact claims on the pleadings, while Plaintiffs' individual intentional discrimination claims remain pending, presents precisely the kind of situation where efficiency and fairness justify immediate appellate review.

*Coser v. Moore*, 587 F. Supp. 572, 605 (E.D.N.Y. 1983), *aff'd*, 739 F.2d 746 (2d Cir. 1984), illustrates why interlocutory review is particularly appropriate in a case like this one, where class-wide discrimination claims are conclusively resolved before individual claims. In *Coser*, as here, plaintiffs pursued a pattern-or-practice discrimination class action using the method authorized by the Supreme Court in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977). *Coser*, 587 F. Supp. at 575. After a bench trial, the district court ruled against the plaintiffs on their pattern-or-practice claim, but authorized that decision for immediate appeal under Rule 54(b) rather than putting off an appeal until all the individual claims were resolved.

*Id.* at 605. The court held that, even after the court's adverse ruling on the pattern-or-practice claim, "final determination of these individual claims will be greatly facilitated if the class determination that there is no pattern or practice of unlawful [] discrimination can be reviewed on appeal immediately rather than waiting until final judgment" on the individual claims. *Id.*

The same analysis applies here. A class-wide finding that Morgan Stanley discriminated against African Americans, through a pattern or practice of intentional discrimination or policies with a disparate impact, could streamline litigation of class members' claims by establishing a presumption of discrimination that applies to all class members, *see Teamsters*, 431 U.S. at 360, or resolving the common question of whether Morgan Stanley's policies disproportionately harmed African Americans, *see McReynolds v. Merrill Lynch*, 672 F.3d 482, 489–92 (7th Cir. 2012) (reversing denial of class certification on financial advisors' disparate impact claim). Such findings have been foreclosed for now by this Court's decision to dismiss Plaintiffs' class-wide claims with prejudice, but could be revived if the Second Circuit disagrees with this Court's decision. And, if the Second Circuit does reverse the Court's ruling in any respect, there is serious danger of inefficiency and delay. In particular, if any Plaintiff litigates his or her individual claim of intentional discrimination to judgment and loses, but the Second Circuit finds that Plaintiffs have adequately pleaded a class-wide pattern-or-practice or disparate impact claim, the prior judgment against any losing Plaintiff likely would not stand, and the parties would essentially be at square one. On the other hand, allowing an immediate appeal of the dismissal of the class claims while the individual claims continue through discovery and pretrial proceedings would facilitate adjudication of the individual claims, prevent a waste of judicial resources, and "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

For these reasons, Plaintiffs respectfully request that the Court authorize an immediate

appeal, under Rule 54(b) and/or 28 U.S.C. § 1292(b), of the dismissal with prejudice (Dkt. 115)

of their class-wide pattern-or-practice and disparate impact claims.

## STATEMENT OF FACTS

Plaintiff Kathy Frazier filed this nationwide class action lawsuit against Morgan Stanley

on September 30, 2015, alleging intentional, systemic race discrimination against the Firm's

African American Financial Advisors ("FAs") in violation of 42 U.S.C. § 1981. (Dkt. 1.) Frazier

alleged that Morgan Stanley maintained a racially biased culture rife with harmful stereotypes

about African American FAs and the Firm's clients. (*Id.* ¶ 21.) She also challenged Morgan

Stanley's policies, including those governing the assignment of lucrative client accounts, the

formation and treatment of FA teams, and compensation, as being part of a pattern or practice of

intentional discrimination and having a disparate impact on the compensation and attrition rates

of African American FAs. (*Id.* ¶¶ 19–20, 22–25.)

Frazier, who had worked as a Morgan Stanley FA in Hawaii, filed her putative class

action lawsuit in the Northern District of California as related to a class action settlement in

another race discrimination suit that was being supervised by that court, *Jaffe/Curtis-Bauer v.*

*Morgan Stanley*, No. 06-cv-3903, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008). At the request of

*Curtis-Bauer* class counsel, on October 2, 2015, Frazier amended her complaint to remove a

single sentence. (Dkt. 4.) Frazier amended her complaint again on December 23, 2015, after

exhausting her administrative remedies, solely to add class and individual claims under Title VII

challenging the same policies. (Dkt. 28.) In transferring the case to this Court, the California

court described Frazier's claims (Dkt. 33 at 2, 5):

> Overall, plaintiff claims that Morgan Stanley is engaged in a pattern and practice of racial
> discrimination and knowingly employs policies and practices that have a disparate impact
> on African Americans.…[P]laintiff challenges company-wide policies, and defendants'
> headquarters are located in New York.…The court finds that the gravamen of this suit

arises out of plaintiff's challenges to defendants' policies on behalf of a putative class, not out of her individualized claims.

During a conference on March 16, 2016, this Court set a deadline for plaintiff to amend the complaint, noting this Circuit's liberal standards for allowing amended pleadings. (Dkt. 58 at 13:18–24.) At the same time, the Court stayed discovery pending resolution of any future motion to dismiss. (Dkt. 53.)

## I.      The Court's Initial Dismissal Order

The Third Amended Complaint, filed on May 6, 2016, added six named plaintiffs who worked as FAs at branch offices in five states and the District of Columbia. (Dkt. 60.) Plaintiffs intended to achieve far-reaching consequences by reforming Morgan Stanley's policies and practices that exclude and harm African Americans. (*Id*. ¶ 4.)  Requesting certification under Rule 23(b)(2), 23(b)(3), and 23(c)(4), Plaintiffs sought to resolve the class-wide issue of whether Morgan Stanley's national policies and practices discriminated against African American FAs, either intentionally or unintentionally. (*Id*. ¶¶ 30–42, 101–07.) On November 29, 2018, the Court issued an opinion granting Defendants' motion to compel three Plaintiffs to arbitrate their claims, dismissing without prejudice all of Plaintiffs' class claims, and denying as moot Plaintiffs' claims for class-wide injunctive relief. (Dkt. 104.)

In dismissing the class claims of intentional discrimination, the Court observed that "[f]ew courts have addressed what a complaint must allege in order to state a pattern or practice claim." (*Id.* at 14.) Acknowledging that "statistical evidence need not be pled to survive a motion to dismiss," the Court discussed "how many instances of alleged discrimination are sufficient to allege a pattern or practice of discrimination" if no statistics are alleged. (*Id.*) Without specifying a firm number, the Court suggested that "eleven or twelve instances" would be "sufficient to state a claim." (*Id.*)

4

Focusing only on the teaming policy, the Court discounted Plaintiffs' challenges to the account distribution, compensation, and other policies. (*Id.* at 14.) The complaint challenged Morgan Stanley's corporate decisions and policies to establish and favor teams, but the Court reasoned that "the results of the allegedly discriminatory policy stem from the decisions and actions of individual employees, not an intentionally discriminatory policy or practice of the corporate defendants." (*Id.*) Despite allegations of firm-wide racial bias, the Court concluded, "Plaintiffs do not allege that the teaming and pooling policies at issue were adopted with discriminatory intent." (*Id.* at 15.)

Acknowledging "Plaintiffs make myriad claims," the Court viewed the case as, "at bottom, a disparate impact action based on Defendants' teaming and pooling policies." (*Id.* at 24.) But the Court construed the disparate impact claim as limited to "discrete" acts under Morgan Stanley's teaming policy, which the Court dismissed as untimely and not subject to the Lilly Ledbetter Fair Pay Act. (*Id.* at 17–20.)

## II.     The Proposed Amended Complaint

In responding to Defendants' motion to dismiss, Plaintiffs had requested leave to re-plead if the motion was granted. (Dkt. 81 at 25.) The November 29, 2018 Order dismissed the complaint without prejudice. (Dkt. 104.) Accordingly, and in light of the Court's prior comments about the liberal standards for amending complaints, Plaintiffs sought leave to amend and provide the additional allegations the Court had identified as missing from the complaint.

On December 24, 2018, Plaintiffs requested a pre-motion conference prior to moving for leave to amend, along with a Fourth Amended Complaint (the "Proposed Amended Complaint") and a redline highlighting factual allegations added to the proposed complaint. (Dkts. 109, 110.) The Proposed Amended Complaint includes the statistics sought by the Court, including historical racial disparities in compensation and turnover, which have not improved in nearly a

decade (Dkt. 110-2 ¶¶ 20, 63), and the current statistical impact of the challenged practices, including: (1) the underrepresentation of African Americans as FAs in raw numbers (less than 125 of 16,000 FAs) and by statistically significant margins (more than 18 standard deviations from expected), as well as black underrepresentation in local and executive management; (2) the more than 30% pay gap between white and African American FAs; (3) the membership of white FAs on lucrative teams at roughly twice the rate of African Americans, and (4) the African American attrition rates nearly double those of white FAs. (*Id.* ¶¶ 59–62.)

The Proposed Amended Complaint also set forth, in detail, the practical operation of Morgan Stanley's discriminatory teaming, account distribution, and compensation policies—and how they create a 30% wage gap that negatively affects compensation for African Americans each time they receive a paycheck. (*Id.* ¶¶ 32–56.) Morgan Stanley operates a "progressive" compensation grid, so FAs with more revenue receive a higher percentage commission rate. (*Id.* ¶¶ 40–41 & n.8.) But under Morgan Stanley's teaming policy, a lower "producer" who teams with a higher producer is compensated at the higher producer's commission percentage rate. (*Id.* ¶¶ 47–50.) Thus, an FA benefits directly and financially from being on a team and is paid more than a similarly situated FA who generates the same revenue but is not on a team. (*Id.*) Due to discriminatory practices, African Americans are excluded from Morgan Stanley's segregated teams. Similarly, account distributions affect FAs' compensation every time they are paid, as the distributed accounts continue to generate trailing commissions and other benefits in addition to compensation based on growth and transactions in the account, and may bump an FA to a higher commission rate, increasing an FA's compensation on all accounts, compared to an FA who does not receive the distribution. (*Id.* ¶¶ 40–41.) Accordingly, Morgan Stanley's discriminatory pay policies compounded and decreased the pay of Frazier (who filed a

representative EEOC charge) as compared to her non-African American counterparts, every day, up until the day she was constructively discharged. (*Id.* ¶¶ 50, 69, 70.)

The Proposed Amended Complaint also adds anecdotal evidence of repeated instances of daily discrimination against class members working in over 14 states and the District of Columbia who were denied accounts and teams under the challenged policies (*id.* ¶ 57), as well as additional examples of the Firm's racially biased statements, harmful stereotypes about African American FAs, and the belief that its clients prefer white FAs (*id.* ¶¶ 26–29). The Proposed Amended Complaint addresses the Court's concern about the lack of allegations that Morgan Stanley adopted the challenged teaming and account distribution policies with the intent to discriminate. For example, Plaintiffs allege that:

> Morgan Stanley has intentionally designed and structured its Firm-wide policies and practices regarding client account distributions, teams and pools, and compensation in order to give client accounts and entire books of business to white FAs instead of African American FAs, to retain white FAs, and to ensure that white FAs remain the most highly compensated and longest tenured FAs at the Firm.

(*Id.* ¶ 34; *see also id.* ¶¶ 37–44.)

On February 7, 2019, the Court denied Plaintiffs leave to amend, stating "the proposed changes do not cure the deficiencies found in Plaintiffs' Third Amended Complaint." (Dkt. 115.)

## ARGUMENT

Under Federal Rule of Civil Procedure 54(b), "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . if the court expressly determines that there is no just reason or delay." The Second Circuit has explained that, to "have a final judgment under [Rule 54(b)], (1) multiple *claims* . . . must be present, (2) at least one claim . . . must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that

there is no just reason for delay' and expressly direct the clerk to enter judgment." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992). A case need not be "unusual, exceptional, or otherwise extraordinary to merit Rule 54(b) relief." *Rudeen v. Allstate Ins. Co.*, No. 3:16-cv-1827, 2019 WL 5864501, at *1 (D. Conn. Nov. 8, 2019) (citing *Ginett*, 962 F.2d at 1095). Similarly, 28 U.S.C. § 1292(b) provides a mechanism for seeking review of interlocutory decisions that normally would not be immediately appealable, if the district court certifies that its decision "[1] involves a controlling question of law as to which there is substantial ground for difference of opinion and [2] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The Court's decision to dismiss Plaintiffs' disparate impact and pattern-or-practice claims with prejudice ended Plaintiffs' pursuit of institutional reform. The decision rested on two legal conclusions that Plaintiffs believe warrant certification of this case for interlocutory appeal under Rule 54(b) and/or 28 U.S.C. §1292(b).

First, as the Court acknowledged, "[f]ew courts have addressed what a complaint must allege in order to state a pattern or practice claim." (Dkt. 104 at 14.) The Court went on to conclude that Plaintiffs should have alleged statistical evidence, additional anecdotal evidence beyond the accounts of the seven Plaintiffs, and evidence that Morgan Stanley adopted the challenged policies with the specific intent of discriminating against African Americans. (*Id.* at 14–15.) Plaintiffs' Proposed Amended Complaint addressed the deficiencies identified by the Court by adding statistical evidence, including a 30% racial wage gap; additional anecdotal evidence from African American FAs working in 14 states and the District of Columbia; and additional allegations that Morgan Stanley adopted its policies with the intent to discriminate. (Dkt. 110-2.)

Second, the Court ruled that the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C.

§ 2000e-5(e)(3)(A) ("Ledbetter Act"), did not apply to Plaintiffs' disparate impact claim

challenging the racial compensation disparities resulting from Morgan Stanley's teaming and

account distribution policies. Under the Ledbetter Act, a compensation claim accrues each time a

person is affected by a discriminatory compensation or other practice. Relying on promotion and

demotion cases, the Court held that Plaintiffs' claim was based on "discrete acts" not covered by

the Ledbetter Act and was therefore untimely.

Below, in Section I, Plaintiffs explain why the Court's dismissal of their pattern-or-

practice claims warrants immediate review. In Section II, Plaintiffs set forth why the Court's

dismissal of their disparate impact claim justifies immediate review. In Section III, Plaintiffs

explain why an appeal at this stage is most efficient and may materially advance the termination

of the litigation. And, in Section IV, Plaintiffs discuss why the Second Circuit's denial of their

Rule 23(f) petition should have no bearing on this Court's consideration of this Motion.

## I.    There Is No Just Reason to Delay an Appeal of the Court's Dismissal of the Class-Wide Pattern-or-Practice Claims With Prejudice

In response to guidance from the Court, Plaintiffs submitted a proposed 60-page

complaint that: (1) identified uniform, firm-wide account distribution and teaming policies that

were intentionally designed to help white FAs at the expense of African Americans;

(2) explained the intentionally discriminatory attitudes and racial stereotypes that motivated

Morgan Stanley's senior management team to impose those policies; (3) provided statistical

evidence that the policies severely harmed African Americans; and (4) identified dozens of

anecdotal examples of Morgan Stanley's nationwide practices of race discrimination and how

those policies caused daily harm and adverse actions to African Americans across the country.

(Dkt. 110-2.) Plaintiffs respectfully believe that the Court imposed a heightened pleading

standard inconsistent with other precedent in this Circuit when it rejected the Proposed Amended

Complaint and dismissed Plaintiffs' pattern-or-practice claims with prejudice.

The Supreme Court has approved the pattern-or-practice method of proving

discrimination in an unbroken line of cases spanning four decades. *Teamsters*, 431 U.S. at 360;

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366–67 (2011) (reaffirming *Teamsters* method of

proof but reversing certification of class of 1.5 million employees for lack of commonality).

Under this method, if the plaintiff class proves, with statistical and anecdotal evidence in a

*Teamsters* trial, that "unlawful discrimination has been a regular procedure or policy followed by

an employer," then the court may award prospective injunctive relief, and each member of the

class is entitled to a presumption that he or she was a victim of that discriminatory procedure or

policy in follow-on proceedings. *Teamsters*, 431 U.S. at 360–62.

Plaintiffs respectfully believe that the pleading standard imposed in this case would

effectively make it impossible for victims of intentional discrimination to avail themselves of

this time-tested method of proving their claims on a class-wide basis. This would be inconsistent

with this Circuit's precedent regarding Plaintiffs' pleading burden post-*Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544 (2007). "The discrimination complaint, by definition, occurs in the first

stage of the litigation" and therefore "must be viewed in the light of the plaintiff's minimal

burden to show discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir.

2015); *DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 103 (2d Cir. 2010) ("[T]here is no

heightened pleading requirement for civil rights complaints alleging racial animus…"). Thus, to

"survive a motion to dismiss" a discrimination plaintiff's "complaint must be facially plausible

and allege sufficient facts to give the defendant fair notice of the basis for the claim; it need not,

however, make out a prima facie case." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228 n.10 (2d Cir. 2014); *accord Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015).

Although the Court cited some of these principles in its initial decision dismissing Plaintiffs' complaint without prejudice, it applied a high bar for pleading pattern-or-practice discrimination class actions, requiring Plaintiffs to plead: (1) statistical evidence supporting their claims, before discovery; (2) a large number of anecdotes (11 or 12) supporting a pattern and practice of discrimination; and (3) proof that Morgan Stanley's decision-makers implemented policies with the specific and express intent of discriminating against African Americans. (Dkt. 104 at 14–15.) Accepting the Court's guidance, Plaintiffs' Proposed Amended Complaint exceeded these stringent criteria. (Dkt. 110-2.) Yet the Court decided that the Proposed Amended Complaint was still insufficient. (Dkt. 115.) Plaintiffs respectfully submit that the three pleading requirements imposed by the Court warrant interlocutory review.

First, although statistical evidence is a generally accepted method of *proving* a pattern-or-practice case, Plaintiffs are not required to *plead* statistics to survive a motion to dismiss, because "in most cases, plaintiffs will be unable to provide reliable statistics before they have access to discovery." *Barrett v. Forest Labs, Inc.*, 39 F. Supp. 3d 407, 429–30 (S.D.N.Y. 2014)*; see Hill v. City of New York*, 136 F. Supp. 3d 304, 335 (E.D.N.Y. 2015); *United States v. E. River Housing Corp.*, 90 F. Supp. 3d 118, 159 (S.D.N.Y. 2015). "It would be particularly nonsensical to require statistical evidence before the completion of discovery," *E. River*, 90 F. Supp. 3d at 159, and indeed, doing so would have the perverse effect of allowing companies to immunize themselves from liability for race discrimination by keeping data about their workforce confidential. Nonetheless, Plaintiffs managed to uncover and plead various kinds of statistical evidence in support of their claims. (Dkt. 110-2 ¶¶ 59–63.) Among other things, the

Proposed Amended Complaint alleged that only about 125 out of 16,000 Morgan Stanley FAs are African American, and African Americans are "underrepresented at a rate of more than 18 standard deviations." (*Id.* ¶ 61.) Plaintiffs further alleged that Morgan Stanley pays its "African American FAs over 30% less than similarly situated white FAs" and that "White FAs serve on lucrative teams at a rate of approximately double that of African American FAs." (*Id.* ¶ 62.) It is not clear why these "allegations of statistical disparities" did not "go a long way toward making [a pattern-or-practice] claim plausible." (Dkt. 104 at 14.)

Second, in its initial decision, the Court wrote that the seven African American Plaintiffs represented only "0.044 percent" of Morgan Stanley's entire FA workforce, so Plaintiffs had failed to offer enough anecdotal evidence to plausibly support their pattern-or-practice claim. (*Id.* at 14–15.) But the potentially relevant denominator is the 125 or so African American FAs whom Plaintiffs claim are victimized by Morgan Stanley's policies, not the 16,000 non-African American FAs whom Plaintiffs allege benefit from Morgan Stanley's discriminatory policies. In any event, Plaintiffs are not required to recite a magic number of anecdotal examples of discrimination to plausibly plead a pattern-or-practice case. *See Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871–72 (2d Cir. 1992) (upholding pattern-or-practice jury verdict where just four women were terminated under allegedly discriminatory policy); *Hill*, 136 F. Supp. 3d at 333–34 ("A small number of confirmatory acts may suffice to state a plausible pattern or practice claim"); *E. River*, 90 F. Supp. 3d at 158–60 ("[T]here is no baseline number of grievances that [plaintiff] must allege…."); *United States v. City of New York*, 713 F. Supp. 2d 300, 322–23 (S.D.N.Y. 2010) (complaint alleged incidents involving four women).

Still, in an attempt to address the Court's concerns, Plaintiffs pleaded dozens of discriminatory incidents, recounting the daily experiences of discrimination suffered by African

American FAs from 14 states and the District of Columbia. (Dkt. 110-2 ¶¶ 29, 57.) Although the Court's initial order (Dkt. 104 at 14) suggested that "eleven or twelve" instances of discrimination would likely be enough to support a claim, the Court later concluded that the dozens of incidents recounted in the Proposed Amended Complaint did not "cure the deficiencies." (Dkt. 115.)

Third, in its initial order, the Court wrote that Plaintiffs' complaint provided "no allegations from which discriminatory intent may be inferred." (Dkt. 104 at 15.) In doing so, the Court focused only on the teaming policy and reasoned that it was not intentionally discriminatory for Morgan Stanley to allow white brokers to team with each other, exclude African Americans, and reap extra corporate benefits for themselves. (*Id.* at 14–15.) The Court relied on language from *McReynolds v. Merrill Lynch*, but that case directed certification of a disparate impact class and recognized that "the plaintiffs [were entitled to] augment their disparate-impact claim with proof of intentional discrimination." 672 F.3d at 492. Moreover, the Court ignored that a nearly identical class challenge against Morgan Stanley was previously certified by the Northern District of California and that similar class claims alleging intentional discrimination in FA compensation are routinely upheld by courts across the country. *Curtis-Bauer v. Morgan Stanley & Co.*, No. 06-cv-3903, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008); *see also Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374 (E.D.N.Y. 2012) (denying motion to dismiss class claims challenging pattern and practice of gender discrimination in compensation and account distributions); *Creighton v. Metro. Life Ins. Co.*, No. 1:15-cv-8321 (S.D.N.Y. June 27, 2017), Dkt. 138 (granting class certification in settlement of case alleging pattern and practice of discrimination against black brokers in teaming, compensation, and account distribution); *Slaughter v. Wells Fargo Advisors LLC*, No. 13-cv-6368, 2017 WL

3128802 (N.D. Ill. May 4, 2017) (same); *Cremin v. Merrill Lynch,* 328 F. Supp. 2d 865, 869

(N.D. Ill. 2004) (plaintiffs' proof of pattern or practice of discrimination against female advisors

in *Teamsters* hearing was entitled to collateral estoppel effect).

      Nonetheless, Plaintiffs' Proposed Amended Complaint responded to the Court's guidance

by explaining in detail the discriminatory beliefs that motivated Morgan Stanley's decision-

makers to implement discriminatory policies designed to reward and retain white FAs: Morgan

Stanley's executives assume that wealthy white clients and prospective clients do not wish to

work with African Americans, that African Americans are incompetent and incapable of

succeeding in the financial industry and will inevitably fail, and so they intentionally design

policies that benefit white FAs at African American FAs' expense. (Dkt. 110-2 ¶¶ 26–28.)

Further, Plaintiffs alleged a litany of specific incidents where managers and senior employees

openly articulated their bias and contempt toward African Americans and ignored or retaliated

against those who complained. (*Id.* ¶¶ 29–31, 57.) These allegations were more than sufficient to

support, at the pleading stage and before discovery, a plausible inference of intentional

discrimination. *See Barrett*, 39 F. Supp. 3d at 436 ("Plaintiffs' allegations that a number of

managers made sexist comments, coupled with allegations that the Company repeatedly ignored

complaints of harassment and discrimination, permits at least a plausible inference that the

disparities in base pay occurred as the result of intentional discrimination.").

      Besides imposing heightened pleading standards, the Court's decision makes it

impossible as a practical matter for any African American to challenge Morgan Stanley's

systemic discrimination. Morgan Stanley instituted mandatory arbitration and class action bans

two days after this suit was filed in 2015, and since then all new hires are subject to mandatory

arbitration as a condition of employment. As a result, class members cannot just file their new

cases as class actions or proceed under the pattern or practice theory of liability authorized by *Teamsters* and *WalMart*. This case is the last chance. And although every class member is subject to Morgan Stanley's discriminatory account distribution, teaming, and compensation policies, no single plaintiff will have the resources to engage expensive statistical experts and conduct extensive discovery in an individual arbitration. Nor is any arbitrator likely to allow firm-wide discovery to uncover evidence of a pattern or practice of nationwide discrimination against African Americans.

The Court wrote that "[f]ew courts have addressed what a complaint must allege in order to state a pattern or practice claim." (Dkt. 104 at 14.) Plaintiffs agree, and urge the Court to facilitate interlocutory review of this controlling and important question of law.

## II.     There Is No Just Reason to Delay an Appeal of the Court's Ruling that the Ledbetter Act Does Not Apply to the Class-Wide Disparate Impact Claims Challenging the Teaming and Account Distribution Policies

The Court held that Plaintiffs' class claims challenging the disparate impact of Morgan Stanley's account distribution and teaming policies on African American FAs were untimely and not subject to the Ledbetter Act. Plaintiffs respectfully believe that this holding undermines Congress's purpose in enacting the Ledbetter Act and disregards Plaintiffs' allegations of unequal pay for the same work.

In *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), Ledbetter received years of discriminatory performance evaluations outside the charge filing period, which affected her compensation within the charge filing period. *Id.* at 621–22. The Supreme Court held that Ledbetter's claims were time-barred because the performance evaluations were discrete acts that had to be challenged within the charge filing period. *Id.* at 632. In her dissent, Justice Ginsburg pointed out the unfairness of this result because, like many employers, "Goodyear kept salaries confidential; employees had only limited access to information regarding their colleagues'

earnings" and therefore "may have little reason even to suspect discrimination" in pay. *Id.* at 650 (Ginsburg, J., dissenting).

In enacting the Ledbetter Act, Congress acknowledged the force of Justice Ginsburg's dissent and specified that an "unlawful employment practice occurs … when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." Pub. L. 111-2, 123 Stat. 5, 5-6 (2009). The Proposed Amended Complaint explains that Morgan Stanley not only concealed its discriminatory pay practices from employees (as in *Ledbetter*) but also lied about those practices, in violation of court-ordered consent decrees that settled prior class action discrimination suits. (Dkt. 110-2 ¶¶ 67–68, 73)

The Court also held that Plaintiffs' class claims were not compensation claims under the Ledbetter Act, relying on a series of cases involving promotions and demotions. A demotion or failure to promote may have the effect of creating a wage disparity relative to other employees, but by its nature a demotion or failure to promote means that the employee is not performing the same or similar work as his comparators. *Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 271 (2d Cir. 2015) (cited by Court in Dkt. 104 at 19, holding that Ledbetter Act did not allow plaintiff to resurrect an untimely demotion claim); *Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 168 (E.D.N.Y. 2011) (cited by Court in Dkt. 104 at 19, holding that Ledbetter Act did not apply because Plaintiff had been demoted and was not making a claim for equal pay for equal work).

The Proposed Amended Complaint makes clear that Plaintiffs challenge wage disparities between employees holding the same job title and performing the same work. (Dkt. 110-2 ¶¶ 35–38, 46–50.) For claims like these, challenging unequal pay for the same work in the same job, the

Ledbetter Act expressly provides that each discriminatory paycheck creates a new cause of action "resulting in whole or in part from [a discriminatory] decision or other practice." Pub. L. 111-2, 123 Stat. 5, 5–6 (2009). Courts have consistently recognized that the Ledbetter Act applies to claims like this one, where Plaintiffs allege a compensation practice that illegally discriminates between them and others in the same position.[1]

Indeed, every court to consider allegations of discrimination in account distributions and teaming has expressly found that these policies and practices set FAs' pay. For example, in *Lohn v. Morgan Stanley DW, Inc.*, the court specifically ruled that a challenge to Morgan Stanley's account distribution policies was covered by the Ledbetter Act. 652 F. Supp. 2d 812, 828–29 (S.D. Tex. 2009). Similarly, in certifying a disparate impact class, the Seventh Circuit in *McReynolds* understood the plaintiff class of African American FAs were challenging the disparate impact that teaming and account distribution policies had on their pay. 672 F.3d at 482, 489. Further, courts characterizing the *McReynolds* decision have consistently recognized that allegations regarding account distributions and teaming are discriminatory pay claims.[2]

---

[1] *See, e.g.*, *Groesch v. City of Springfield*, 635 F.3d 1020, 1024–26 (7th Cir. 2011) (seniority pay system); *Mikula v. Allegheny Cty.*, 583 F.3d 181, 185–86 (3d Cir. 2009) (failure to answer request for a raise); *Hester v. N. Ala. Ctr. for Educ. Excellence*, 353 F. App'x 242, 243–44 (11th Cir. 2009) (discriminatory "compensation scheme"); *Vuong v. New York Life Ins. Co.*, No. 3-cv-1075, 2009 WL 306391, at *8–9 (S.D.N.Y. Feb. 6, 2009) (discriminatory allocation of performance-based compensation "clearly govern[ed]" by Ledbetter Act); *Robinson v. Brooklyn Coll.*, No. 09-cv-2174, 2010 WL 3924012, at *5 (E.D.N.Y. Sept. 29, 2010) (failure to grant a pay raise).

[2] *E.g.*, *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago,* 797 F.3d 426, 436 (7th Cir. 2015) ("In *McReynolds*, 700 African-American brokers accused Merrill Lynch of racial discrimination in pay by structuring team work and account distribution policies in such a way that had a disparate negative impact on African-American brokers."); *In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704, 708–09 (6th Cir. 2013) (teaming and account distribution policies challenged in *McReynolds I* "together allegedly worked a disparate

*(Footnote cont'd on next page)*

Finally, the Proposed Amended Complaint addressed the Court's concerns by clarifying that Morgan Stanley's account distribution and teaming policies determine FA pay. The Proposed Amended Complaint explains in great detail how Morgan Stanley's discriminatory teaming, account distribution, and compensation policies result in a 30% wage gap and decreased compensation for African Americans every time they are paid. (Dkt. 110-2 ¶¶ 32–56.) Morgan Stanley operates a "progressive" compensation grid, which means that FAs who generate more revenue also receive a higher commission rate. (*Id.* ¶¶ 40–41 & n.8.) But under Morgan Stanley's teaming policy, a lower producer who teams with a higher producer is compensated at the higher producer's commission rate. (*Id.* ¶¶ 47–50.) Thus, an FA on a team benefits directly and financially, and is paid more than a similarly situated FA who generates the same revenue but is not on a team. (*Id.*) Similarly, account distributions affect FA compensation with every paycheck, as the distributed accounts continue to generate trailing commissions in addition to compensation based on growth and transactions in the account. This may bump an FA to a higher commission rate, increasing the FA's compensation on all accounts, as compared to an FA who does not receive the distribution. (*Id.* ¶¶ 40–41.)

Morgan Stanley ranks African American FAs on a national ranking system against whites who receive these advantages in generating commissions. (*Id.* ¶ 46.) The rankings are used to decrease pay by assigning lower commission rates to those who rank lower in national rankings. (*Id.*) As Plaintiffs allege, the pay disparity happens and the wage gap grows daily not only by the

---

*(Footnote cont'd from previous page.)*

impact on the earnings of African Americans, who were underrepresented on teams as compared to their white counterparts"); *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 145 (S.D.N.Y. 2015) ("Merrill Lynch maintained policies that permitted brokers in the same office to form 'teams' based on whatever criteria they chose and assigned accounts within an office to high performers-thereby permitting them to earn more money and to advance in the company."), *aff'd*, 656 F. App'x 555 (2d Cir. 2016).

discrimination against African Americans but also the favoritism shown to whites. (*Id.* ¶¶ 46–50.) Thus, the impact of racial disparities in account distributions and teaming can affect African American FAs in various ways, over time, infecting each paycheck he or she receives from the firm. (*Id.* ¶¶ 46–53.) These pay practices result in wages that are more than 30% lower for African Americans throughout their employment. (*Id.* ¶ 52.)

The Seventh Circuit in *McReynolds* described the cumulative advantage to white FAs and the cumulative disadvantage to African American FAs that result from teaming and account distribution policies like Morgan Stanley's:

> [W]ith regard to account distributions: if as a result of racial preference at the team level black brokers employed by Merrill Lynch find it hard to join teams, or at least good teams, and as a result don't generate as much revenue or attract and retain as many clients as white brokers do, then they will not do well in the competition for account distributions either; and a kind of vicious cycle will set in. A portion of a team's pre-existing revenues are transferred within a team to a new recruit, who thus starts out with that much "new" revenue credited to him or her—an advantage, over anyone who is not on a team and thus must generate all of his own "new" revenue, that translates into a larger share of account distributions, which in turn helps the broker do well in the next round of such distributions. This spiral effect attributable to company-wide policy and arguably disadvantageous to black brokers presents another question common to the class, along with the question whether, if the team-inflected account distribution system does have this disparate impact, it nevertheless is justified by business necessity.

672 F.3d at 489–90. As in *McReynolds*, Plaintiffs should be allowed to proceed with their disparate impact challenge to Morgan Stanley's teaming and account distribution policies.

In addition, the Court's decision imposed on Plaintiffs the burden to anticipate and defeat an affirmative defense in their pleading. The Second Circuit has held that "dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). "[T]he statute of limitations is an affirmative defense ... that [Plaintiffs'] pleading need not have anticipated." *Id.* at 251; *see also Fitchett v. City of New York*, No. 18-cv-8144, 2019 WL 3430726, at *7 (S.D.N.Y. July 30, 2019) (refusing to dismiss

discrimination claim based on statute of limitations where it "is plausible that defendants' failure to promote [plaintiff] will be shown not to trace to discrete time-bound acts or decisions but a seamless process over time of ignoring him and shunting his candidacy aside based on racial animus").  Yet the Court dismissed Plaintiffs' claim because it believed Plaintiffs' complaint and EEOC charge did not affirmatively defeat a potential statute of limitations defense. (Dkt. 104 at 17–18.)

## III.   An Immediate Appeal Would be Efficient and May Materially Advance the Termination of the Litigation

"[I]f the court expressly determines that there is no just reason for delay," Rule 54(b) of the Federal Rules of Civil Procedure authorizes the court to enter "a final judgment as to one or more, but fewer than all, claims." FED. R. CIV. P. 54(b); *Ginett*, 962 F.2d at 1091. In making this determination, "a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). A case need not be "unusual, exceptional, or otherwise extraordinary to merit Rule 54(b) relief." *Rudeen v. Allstate Ins. Co.*, No. 3:16-cv-1827, 2019 WL 5864501, at *1 (D. Conn. Nov. 8, 2019) (citing *Ginett*, 962 F.2d at 1095). Rather, the Second Circuit has explained that the "guiding star" governing whether to certify an order for immediate appeal is the "interest of sound judicial administration." *Ginett*, 962 F.2d at 1095 (citing *Curtiss-Wright*, 446 U.S. at 8). For example, a Rule 54(b) determination is appropriate where "substantial time … can be saved" by allowing an interlocutory appeal, because otherwise "a dispositive issue" might "have to be relitigated" in several different cases. *Perez v. Ortiz*, 849 F.2d 793, 796–97 (2d Cir. 1988).

Similarly, an immediate appeal under 28 U.S.C. § 1292(b) is warranted if "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). One example of a situation where "an immediate appeal serves the interests of

judicial economy" and warrants § 1292(b) certification is where a "reversal after trial might well require a new trial." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-mc-2543, 2019 WL 6827277, at *13 (S.D.N.Y. Dec. 12, 2019).

Here, there is no just reason to delay an appeal relating to Plaintiffs' disparate impact and pattern-or-practice claims, and an immediate appeal would serve the interests of sound judicial administration. Critically, both the pattern-or-practice and disparate impact claims are "separable" or "extricable" from the individual intentional discrimination claims that remain pending before the Court. *See Ginett*, 962 F.2d at 1096. While discovery and trial of the dismissed claims would have focused on Morgan Stanley's nationwide policies and practices, discovery and trial on the remaining claims are likely to be more tightly focused on the remaining individual plaintiffs and the specific circumstances of race discrimination they faced at their Morgan Stanley branches. Because the dismissed claims are separable from the remaining claims, it makes sense to allow the claims to proceed on parallel tracks—the individual discrimination claims before this Court (and in arbitration), and the disparate impact and pattern-or-practice claims on appeal. This approach ensures that the entire case keeps moving toward resolution, and eliminates the serious risk that, after trial and judgment on the remaining claims, the Court of Appeals ultimately allows one or both of the dismissed claims to proceed.  If this occurs, the parties will be required to start from square one, many years after this case was filed, in taking discovery about Morgan Stanley's nationwide policies and practices. That is exactly the kind of wasteful, inefficient, and dilatory scenario that Rule 54(b) and § 1292(b) are designed to prevent.

In addition, allowing an immediate appeal of the pattern-or-practice claim would offer additional efficiencies. Under the pattern-or-practice method of proving discrimination, if the

plaintiff class proves during the initial *Teamsters* trial with statistical and anecdotal evidence that "unlawful discrimination has been a regular procedure or policy followed by an employer," then each class member is entitled to a presumption that he or she was a victim of that discrimination, and the burden shifts to the employer to rebut it in follow-on proceedings. *Teamsters*, 431 U.S. at 360–62. Although pattern-or-practice evidence remains admissible, that method of proof—and its presumption and burden-shifting—is unavailable in private, non-class litigation in this Circuit. *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012). Accordingly, if Plaintiffs try their individual cases without the benefit of a *Teamsters* presumption and do not prevail, then (even if the trials are error-free) the trials would have to be completely redone if Plaintiffs' class-wide pattern-or-practice claim is reinstated on appeal and Plaintiffs prevail on that claim. In addition, in that scenario, Plaintiffs' individual trials would only take place after class-wide discovery and a trial on whether Morgan Stanley had a procedure or policy of discrimination. In light of the possibility of an extreme delay, and a trial whose result is wiped out by the reversal of an unrelated dismissal order, the Court should allow an immediate appeal.

*Coser* is a very similar case that illustrates why an immediate appeal is particularly appropriate in a pattern-or-practice case. 587 F. Supp. at 605. In *Coser*, the court held a bench trial on the plaintiffs' class-wide claim that their employer, Stony Brook University, had a pattern or practice of sex discrimination. *Id.* at 575. By agreement, the plaintiffs' individual claims "were to be addressed separately after determination of plaintiffs' pattern or practice claim." *Id.* The court reviewed the competing evidence submitted by the parties and ruled that plaintiffs failed to prove at trial a university-wide pattern or practice of unlawful sex discrimination. *Id.* Rather than simply proceeding with trials on the individuals' claims and putting off any appeals until final judgment was entered on all claims, the court concluded that

there was "no just reason for delay" in appealing the class-wide pattern-or-practice decision. *Id.* at 604–05. The court explained that the individual claims involved "separate facts and circumstances" that would have to be "addressed in separate hearings, a problem that would have been greatly simplified, if not eliminated entirely, had plaintiffs succeeded on their pattern and practice class action claim." *Id.* The court held that, even after the court's adverse ruling on the pattern-or-practice claim, "final determination of these individual claims will be greatly facilitated if the class determination that there is no pattern or practice of unlawful sex discrimination can be reviewed on appeal immediately rather than waiting until final judgment" on the individual claims. *Id.* Accordingly, the court allowed an immediate appeal under Rule 54(b). *Id.*;[3] *see also Ginett*, 962 F.2d at 1096–97 (allowing Rule 54(b) appeal of employee's claim relating to severance pay, while other claims remained pending before district court); *Davis v. Eastman Kodak Co.*, No. 04-cv-6098, 2007 WL 8098431, at *5–7 (W.D.N.Y. July 19, 2007) (allowing dismissed individual plaintiffs to appeal adverse judgment in race discrimination case, while other plaintiffs' claims remained pending).

There is no material difference between *Coser* and this case with respect to the issue of whether an immediate appeal is warranted. In *Coser*, the plaintiffs' pattern-or-practice claim was defeated at trial and individual plaintiffs' claims remained pending; here, the situation is identical except that the Court dismissed the pattern-or-practice claim on the pleadings instead of after trial. Here, as in *Coser*, "final determination of the[] individual claims will be greatly facilitated" if the pattern or practice claim can be reviewed immediately, rather than waiting until final judgment is reached on all the individual claims. *Coser*, 587 F. Supp. at 605.

---

[3] The Second Circuit affirmed the district court's ruling on the pattern-or-practice claim but did not disagree with the district court's decision to authorize an immediate appeal under Rule 54(b). *Coser*, 739 F.2d at 749.

In sum, "there is no just reason for delay" of Plaintiffs' appeal of the dismissal of their pattern-or-practice and disparate impact claims. FED. R. CIV. P. 54(b). On the contrary, allowing an immediate appeal "may materially advance the ultimate termination of the litigation" by avoiding the waste and inefficiency that could result from delaying appeal of these claims until Plaintiffs' individual intentional discrimination claims are fully resolved. 28 U.S.C. § 1292(b).

## IV.   The Second Circuit's Denial of Plaintiffs' Rule 23(f) Petition has no Bearing on this Court's Decision Whether to Authorize an Appeal

Plaintiffs anticipate that Morgan Stanley may argue that the Second Circuit's decision to deny Plaintiffs' Rule 23(f) Petition means that the Court should not grant an appeal under Rule 54(b) or 28 U.S.C. § 1292(b).  Plaintiffs submit that any such argument would be misguided. The Court of Appeals has "unfettered discretion" to grant or deny an appeal under Rule 23(f) based on "any consideration that [it] finds persuasive."  *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 76 (2d Cir. 2004).  In denying Plaintiffs' Rule 23(f) Petition in an unreasoned summary order, the Second Circuit did not purport to pass on the merits of Plaintiffs' arguments or the correctness of this Court's order. *See* Order denying Rule 23(f) Petition, *Frazier v. Morgan Stanley*, No. 19-462 (2d. Cir. June 19, 2019), ECF No. 40.  Rather, the Second Circuit simply declined in its discretion to consider the matter at the time. The Second Circuit provided no guidance on the reasons it decided not to allow Plaintiffs' appeal. It may have determined that the issues raised by the Petition, while meritorious, were not "of fundamental importance to the development of the law of class actions," *Sumitomo Copper Litig. V. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 140 (2d Cir. 2001), which is requiremed under Rule 23(f) but not under Rule 54(b) or § 1292(b). Or, the Second Circuit may have credited Morgan Stanley's argument that a Rule 23(f) appeal is unavailable when the order at issue denies leave to amend, rather than denying class certification. Answer in Opposition to Rule 23(f) Petition, *Frazier v. Morgan Stanley*, No. 19-462, (2d. Cir.

June 19, 2019), ECF No. 13, at 6-9. In sum, the Second Circuit's reasons for declining to allow Plaintiffs' Rule 23(f) appeal are unknown, and that decision should not be read to limit this Court's discretion to allow an appeal under Rule 54(b) or § 1292(b).

For example, in *McReynolds*, a Seventh Circuit panel initially denied Rule 23(f) relief in a summary order after the district court denied class certification. Order, *McReynolds v. Merrill Lynch*, No. 11-8008 (7th Cir. Apr. 20, 2011), ECF. No. 13.  Yet, after the district court denied a renewed motion for class certification on similar grounds, but indicated that the issues were important and worth interlocutory consideration, the same appellate panel took another look at the issues, granted the Rule 23(f) petition, and reversed denial of class certification. *See McReynolds*, 672 F.3d at 492; Order, *McReynolds v. Merrill Lynch*, No. 05-cv-6583 (N.D. Ill. Sept. 19, 2011), ECF No. 482. *McReynolds* provides further support for the notion that denial of a Rule 23(f) Petition does not limit this Court's discretion to certify an interlocutory appeal.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court (a) determine there is no just reason for delay and enter final judgment as to the dismissal with prejudice of Plaintiffs' class-wide pattern-or-practice and disparate impact claims, pursuant to Rule 54(b), and/or (b) certify that the dismissal with prejudice involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, pursuant to 28 U.S.C. § 1292(b).

Respectfully submitted on behalf of Plaintiffs and those similarly situated,

By: ___*/s/ Linda D. Friedman*_____

Linda D. Friedman (*pro hac vice*)
Suzanne E. Bish (*pro hac vice*)
Shona B. Glink (# 4051280)
George S. Robot (*pro hac vice*)
STOWELL & FRIEDMAN, LTD.
303 W. Madison, Suite 2600
Chicago, Illinois  60606
Phone: (312) 431-0888

## <u>CERTIFICATION OF SERVICE</u>

The undersigned counsel certifies that a copy of the foregoing **Plaintiffs' Memorandum of Law in Support of Motion for Entry of Order Authorizing Immediate Appeal Under Rule 54(b) and 28 U.S.C. § 1292(b)** was served upon all counsel of record via CM/ECF on January 16, 2020.

<em>/s/ Linda D. Friedman</em>

446092