**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHY FRAZIER, YARED ABRAHAM, O. EMMANUEL ADEPOJU-GRACE, ANDREW CLARK, KWESI COLEMAN, JEANNA PRYOR, and AISHA RADA, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>MORGAN STANLEY & CO., LLC, MORGAN STANLEY SMITH BARNEY LLC, AND MORGAN STANLEY,<br><br>                    Defendants. | Case Action No. 16-cv-00804 (RJS) |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ENTRY OF ORDER AUTHORIZING**
**IMMEDIATE APPEAL UNDER 28 U.SC. § 1292(b) AND/OR RULE 54(b)**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION. ..................................................................................................... 1

II.   RELEVANT PROCEDURAL HISTORY. ............................................................... 2

III.  PLAINTIFFS' APPEAL MOTION LACKS MERIT BECAUSE THEY
      CANNOT SATISFY THE HIGH STANDARD FOR INTERLOCUTORY
      APPEAL UNDER 28 U.S.C. §1292(B) OR FRCP RULE 54(B). ................................... 4

      A.    Plaintiffs Have Not Met Their Heavy Burden Of Demonstrating That This
            Is An Exceptional Case Warranting Interlocutory Review Pursuant To 28
            U.S.C. § 1292(b). ............................................................................................ 5

            1.    There Are No Controlling Questions Of Law To Which There Is A
                  Substantial Ground For Difference Of Opinion To Certify For
                  Appeal. .................................................................................................. 6

                  a.    There Are No Substantial Grounds For Differing Opinions
                        On The Pleading Standard Applied By The Court. ....................... 8

                  b.    There Are No Substantial Grounds For Differing Opinions
                        On The Sufficiency Of The Allegations Made In Plaintiffs'
                        Proposed Forth Amended Complaint.......................................... 10

                  c.    There Are No Substantial Grounds For Differing Opinions
                        On The Application Of The Ledbetter Act To The
                        Allegations In This Case.............................................................. 12

            2.    An Immediate Appeal Will Not Materially Advance The Ultimate
                  Termination Of The Litigation................................................................ 15

      B.    Plaintiffs Have Failed To Carry Their Heavy Burden Of Establishing That
            They Are Entitled To Certification Of A Final Judgment Pursuant To Rule
            54(b). .............................................................................................................. 17

            1.    Plaintiffs' Class Discrimination Claims Are Inextricably
                  Intertwined With Their Individual Discrimination Claims...................... 18

            2.    Simultaneously Litigating Plaintiffs' Individual Section 1981
                  Claims And An Appeal Is Not In The Interest Of Sound Judicial
                  Administration. ...................................................................................... 19

IV.   CONCLUSION............................................................................................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 650 Fifth Ave.*,
No. 1:08-cv-10934-RJH, 2012 WL 363118 (S.D.N.Y. Feb. 2, 2012) ......................................15

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*,
769 F.3d 135 (2d Cir. 2014) ..................................................................................................17

*Adrian v. Town of Yorktown*,
210 F. App'x 131 (2d Cir. 2006) ...........................................................................................20

*Almond v. Unified Sch. Dist. No. 501*,
665 F.3d 1174 (10th Cir. 2011) .............................................................................................14

*In re Ambac Fin. Group, Inc. Secs. Litig.*,
693 F. Supp. 2d 241 (S.D.N.Y. 2010) ...................................................................................13

*Brunswick Corp. v. Sheridan*,
582 F.2d 175 (2d Cir. 1978) ..................................................................................................20

*Burgis v. New York City Dep't of Sanitation*,
798 F.3d 63 (2d Cir. 2015) ...........................................................................................9, 10, 11

*Byrne v. Telesector Res. Grp., Inc.*,
No. 04-cv-0076S, 2007 WL 2403721 (W.D.N.Y. Aug. 20, 2007) .........................................21

*Century Pac., Inc. v. Hilton Hotels Corp.*,
574 F. Supp. 2d 369 (S.D.N.Y. 2008) (Sullivan, J.) ........................................................4, 7, 15

*Chin v. Port Authority of N.Y. and N.J.*,
685 F. 3d 135 (2d Cir. 2012) .................................................................................................19

*In re Consol. RNC Cases*,
No. 127-RJS, 2009 WL 130178 (S.D.N.Y. Jan. 8, 2009) (Sullivan, J.) ...................................5

*Cooper v. Fed. Reserve Bank of Richmond*,
467 U.S. 867 (1984) ...............................................................................................................11

*Cullen v. Margiotta*,
618 F.2d 226 (2d Cir. 1980) .............................................................................................18, 19

*Davis v. Bombardier Transp. Holdings (USA) Inc.*,
794 F.3d 266 (2d Cir. 2015) .............................................................................................12, 13

*In re Facebook, Inc., IPO Secs. & Derivative Litig.*,
　986 F. Supp. 2d 524 (S.D.N.Y. 2014)................................................................16

*Fitchett v. City of New York*,
　No. 18-cv-8144, 2019 WL 3430726 (S.D.N.Y. July 30, 2019)..............................14

*In re Flor*,
　79 F.3d 281 (2d Cir. 1996).................................................................................5, 8

*Gardner v. MCI Telecommunications Corp.*,
　792 F. Supp. 337 (S.D.N.Y. 1992) ......................................................................16

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
　73 F. Supp. 2d 345 (S.D.N.Y. 1999)....................................................................20

*Greer v. St. Bonaventure Univ.*,
　No. 02-cv-409, 2004 WL 1563084 (W.D.N.Y. May 21, 2004)..............................21

*Groesch v. City of Springfield*,
　635 F.3d 1020 (7th Cir. 2011) ............................................................................14

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*,
　No. 02-cv-7955-DLC, 2003 WL 21146667 (S.D.N.Y. May 14, 2003)...................16

*Hengjin Sun v. China 1221, Inc.*,
　No. 12-cv-7135-RJS, 2015 WL 5544257 (S.D.N.Y. Sept. 17, 2015) (Sullivan,
　J.)..............................................................................................................6, 7, 8, 19

*Hogan v. Consol. Rail Corp.*,
　961 F.2d 1021 (2d Cir. 1992)...............................................................................20

*Inc. v. Town of Rochester*,
　235 F.3d 126 (2d Cir. 2000) (per curiam)............................................................17

*Int'l Bhd. of Teamsters v. United States*,
　431 U.S. 324 (1977)..............................................................................................9

*Johnson ex rel. Johnson v. Columbia Univ.*,
　No. 99-cv-3415-GBD, 2005 WL 736662 (S.D.N.Y. Mar. 29, 2005) ......................7

*Koehler v. Bank of Bermuda Ltd.*,
　101 F.3d 863 (2d Cir. 1996).................................................................................4, 5

*Leddy v. Long Island Tr. Co.*,
　No. 83-cv-0870, 1987 WL 15317 (E.D.N.Y. Aug. 3, 1987) .................................16

*In re Lehman Bros. Holdings Inc.*,
No. 13-cv-2211-RJS, 2014 WL 3408574 (S.D.N.Y. June 30, 2014) (Sullivan, J.)....................................................................................................................................8

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015).................................................................................9, 10

*Lohn v. Morgan Stanley DW, Inc.*,
652 F. Supp. 2d 812 (S.D. Tex. Aug. 26, 2009) ......................................................14

*Lopez v. Overtime 1st Ave. Corp.*,
252 F. Supp. 3d 268, 273 (S.D.N.Y. 2017) (Sullivan, J.) .....................................5, 6

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
672 F.3d 482 (7th Cir. 2012) ...................................................................................14

*Mikula v. Allegheny Cty.*,
583 F.3d 181 (3d Cir. 2009)......................................................................................14

*Mills v. Everest Reinsurance Co.*,
771 F. Supp. 2d 270 (S.D.N.Y. 2009)........................................................................15

*In re Morgan Stanley Mortg. Pass-Through Certifications Litig.*,
No. 09-cv-2137-LTS-MHD, 2010 WL 4910229 (S.D.N.Y. Nov. 22, 2010) ...........18

*Negrete v. Citibank, N.A.*,
No. 15-cv-7250-RWS, 2017 WL 2963494 (S.D.N.Y. July 11, 2017)......................21

*Nnebe v. Daus*,
No. 06-cv-4991-RJS, 2017 WL 2842856 (S.D.N.Y. Feb. 7, 2017) (Sullivan, J.)..................................................................................................................6, 19

*Noel v. The Boeing Co.*,
622 F.3d 266 (3d Cir. 2010)......................................................................................14

*Novick v. AXA Network, LLC*,
642 F.3d 304 (2d Cir. 2011).................................................................................17, 18

*Perez-Dickson v. Bridgeport Bd. of Educ.*,
No. 19-364-CV, 2020 WL 429077 (2d Cir. Jan. 28, 2020) .......................................8

*In re Residential Capital, LLC*,
No. 14-CV-9711 RJS, 2015 WL 5729702 (S.D.N.Y. Sept. 30, 2015)
(Sullivan, J.)....................................................................................................4, 5, 6, 8

*Richardson v. City of New York*,
No. 17-cv-9447-JPO, 2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018) .......................9

*Rodriguez v. DeBuono*,
175 F.3d 227 (2d Cir. 1999).................................................................................................21

*Schuler v. PricewaterhouseCoopers, LLP*,
595 F.3d 370 (D.C. Cir. 2010) ..............................................................................................14

*Shaheed v. City of New York*,
No. 14-cv-7424-PAE, 2018 WL 3455406 (S.D.N.Y. July 18, 2018).....................................21

*Ste. Marie v. E. R.R. Ass'n*,
650 F.2d 395 (2d Cir. 1981)..................................................................................................11

*TADCO Constr. Grp. Corp. v. Dormitory Auth. of New York*,
No. 08-cv-73-KAM-JMA, 2012 WL 3011735 (E.D.N.Y. July 23, 2012)..............................22

*U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*,
No. 98-cv-3099-JGK, 2001 WL 585541 (S.D.N.Y. May 31, 2001) ......................................18

*United States v. City of New York*,
717 F.3d 72 (2d Cir. 2013)................................................................................................9, 19

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015)................................................................................................9, 10

*Vuong v. New York Life Ins. Co.*,
No. 3-cv-1075, 2009 WL 306391 (S.D.N.Y. Feb. 6, 2009) ..................................................14

*Weber v. Align Tech., Inc.*,
No. 507-cv-0535-GTS-ATB, 2010 WL 11681386 (N.D.N.Y. Aug. 20, 2010)......................20

*Weber v. United States*,
484 F.3d 154 (2d Cir. 2007)....................................................................................................5

*Wynn v. Union Local 237, I.B.T.*,
No. 19-cv-962, 2019 WL 6799629 (2d Cir. Dec. 13, 2019) (Summary Order) .....................13

*Zambrano-Lamhaouhi v. N.Y.C. Bd. Of Educ.*,
866 F. Supp. 2d 147 (E.D.N.Y. 2011) ..................................................................................13

**Statutes**

28 U.S.C. § 1292(b) .......................................................................................................... *passim*

ADEA ......................................................................................................................................16

FLSA........................................................................................................................................19

Lilly Ledbetter Fair Pay Act ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 54(b) ................................................................................................... *passim*

Defendants Morgan Stanley & Co. LLC, Morgan Stanley Smith Barney LLC, and Morgan Stanley (collectively, "Defendants" or "Morgan Stanley") submit this Memorandum of Law in Opposition to the Motion for Entry of an Order Authorizing Immediate Appeal Under 28 U.S.C. § 1292(b) and/or Rule 54(b) ("Appeal Motion") filed by Plaintiffs Kathy Frazier ("Frazier"), Yared Abraham ("Abraham"), O. Emmanuel Adepoju-Grace ("Adepoju-Grace"), Kwesi Coleman ("Coleman"), Jeanna Pryor ("Pryor"), and Aisha Rada ("Rada") (collectively, "Plaintiffs").[1]

## I.    INTRODUCTION.

Plaintiffs' race discrimination claims are predicated upon isolated employment decisions, made by different individual managers, arising out of different events, at different times, at different branches, and for different reasons.  Dkt. 60.  Throughout this litigation, Plaintiffs have attempted to link together these unrelated, discrete discrimination claims by inserting the phrases "intentionally discriminatory" or "pattern or practice" of discrimination throughout their various Amended Complaints without any supporting allegations.  *See generally, id*.  Plaintiffs' individual claims are not, however, automatically converted to class pattern or practice claims by the mere incantation of the phrase "pattern or practice" of discrimination.  Nor are Plaintiffs' time-barred disparate impact claims revived by the mere invocation of the Lilly Ledbetter Fair Pay Act ("Ledbetter Act").  Recognizing this, the Court dismissed Plaintiffs' class-wide pattern or practice and disparate impact claims in its November 29 Order.  Dkt. 104.  And, when

---

[1] While Plaintiffs Coleman, Pryor, and Rada purport to bring this Appeal Motion, each was compelled "to individually arbitrate their claims and exclude[d] from participating in this case as class representatives," pursuant to this Court's Order dated November 29, 2018 ("November 29 Order").  Dkt. 104 at 24.  Accordingly, the only Plaintiffs and claims currently before this Court are Frazier's, Abraham's, and Adepoju-Grace's individual Section 1981 race discrimination claims.  *Id.*

Plaintiffs attempted to revive those claims based on essentially the same insufficient, facially deficient factual allegations, the Court denied Plaintiffs' request for leave to file a Fourth Amended Class Action Complaint in its February 7, 2019 Order ("February 7 Order").  Dkt. 115.

Dissatisfied with the Court's November 29 and February 7 Orders ("Orders"), Plaintiffs now seek to use 28 U.S.C. § 1292 and Federal Rules of Civil Procedure ("FRCP") Rule 54 as vehicles for interlocutory appellate review of the Court's determinations.  Plaintiffs argue that, pursuant to 28 U.S.C. § 1292(b), the Court's dismissal of their class-wide pattern or practice and disparate impact claims involve controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from the Orders will materially advance the ultimate termination of the litigation.  In the alternative, Plaintiffs argue that, pursuant to Rule 54(b), the Court should determine that there is no reason to delay entering a final judgment with respect to those claims.  Dkt. 153 at 9, 15.  But Plaintiffs wholly fail to explain how or why their claims are ripe for interlocutory appellate review under either the statute or the rule, and do little more than repeat the arguments this Court previously rejected. Plaintiffs likewise fail to demonstrate that an immediate appeal would promote judicial economy, convenience, settlement, or advance this litigation in any material way.

For these reasons, Plaintiffs' Appeal Motion should be denied.

## II.  <u>RELEVANT PROCEDURAL HISTORY.</u>

Frazier filed a Class Action Complaint against Morgan Stanley on September 30, 2015, a First Amended Class Action Complaint two days later on October 2, 2015, and a Second Amended Class Action Complaint two months later on December 23, 2015.  Dkt. 1, 4, 28.  The parties subsequently appeared for a pre-motion conference in anticipation of Morgan Stanley's Motion to Compel, Dismiss, and/or Strike on March 16, 2016.  Dkt. 53.  During the conference, this Court identified several deficiencies in the Second Amended Class Action Complaint.  *See*

March 16, 2016 Transcript pp. 5:20-6:8.  For instance, the Court noted that "[w]ith respect to the discrimination claims…there's not a lot there either.  There are a lot of conclusory assertions.  There are then some very general assertions about firm-wide teaming and pooling policies…but there are not a lot of specifics…"  *Id*.  The Court provided Frazier yet another opportunity to amend her Complaint in an attempt to address these deficiencies.  Dkt. 53, 60.

Frazier's Third Amended Class Action Complaint added six named Plaintiffs and attempted to "beef up" Plaintiffs' alleged discrimination allegations by, *inter alia*, adding anecdotal allegations about incidents and comments that were allegedly made to Plaintiffs.  Dkt. 60.  Through the Third Amended Class Action Complaint, Plaintiffs alleged: (1) a Section 1981 race discrimination claim on behalf of themselves and a putative nationwide class of African-American FAs; (2) a Title VII race discrimination claim on behalf of Frazier, Clark, and a putative nationwide class of African-American FAs; (3) a Title VII individual gender discrimination claim on behalf of Frazier; and (4) a Section 1981 individual retaliation claim on behalf of Frazier and Coleman.  *Id.*

Morgan Stanley filed a Motion to Compel, Dismiss, and/or Strike portions of Plaintiffs' Third Amended Class Action Complaint on October 19, 2016.  Dkt. 77-80.  In its November 29 Order, the Court granted Morgan Stanley's Motion to: (a) compel Coleman, Pryor, and Rada to individually arbitrate their claims and exclude them from participating in the case as class representatives; and (b) dismiss Plaintiffs' pattern or practice discrimination claims, Frazier and Clark's Title VII disparate impact claims, Frazier and Clark's individual Title VII claims, and Frazier's individual Section 1981 retaliation claim.  Dkt. 104.

Plaintiffs filed a pre-motion letter on December 24, 2018 requesting permission to file a Fourth Amended Class Action Complaint in another attempt to address the deficiencies the Court

identified in its November 29 Order.  Dkt. 109.  Morgan Stanley opposed Plaintiffs' request,

arguing that leave should be denied because (i) Plaintiffs already had the opportunity to cure the

deficiencies in their Complaint both before and after Morgan Stanley moved to compel, dismiss,

and/or strike, and (ii) Plaintiffs' proposed amendments were both futile and an improper attempt

to seek reconsideration of the Court's November 29 Order.  Dkt. 113.  This Court denied

Plaintiffs' request for leave to amend the complaint for a fourth time in the February 7 Order,

because the proposed changes did not cure the deficiencies the Court identified in Plaintiffs'

Third Amended Class Action Complaint.  Dkt. 115.

Plaintiffs now seek permission for an interlocutory appellate review of the February 7

Order denying their request for leave to file a Fourth Amended Class Action Complaint.  Dkt.

152-153.  Plaintiffs' request is nothing more than their latest attempt to seek reconsideration of

the Court's November 29 Order, merely because they disagree with the Court's ruling, not

because they meet the circumstances justifying immediate review.

**III.    PLAINTIFFS' APPEAL MOTION LACKS MERIT BECAUSE THEY CANNOT SATISFY THE HIGH STANDARD FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. §1292(B) OR FRCP RULE 54(B).**

"It is a basic tenet of federal law to delay appellate review until a final judgment has been

entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).  As this Court has

previously observed:

> [F]ederal practice strongly disfavors discretionary interlocutory appeals as they prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions.

*In re Residential Capital, LLC*, No. 14-CV-9711 RJS, 2015 WL 5729702, at *4 (S.D.N.Y. Sept.

30, 2015) (Sullivan, J.) (internal alteration marks and citations omitted); *see also Century Pac.,*

*Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (Sullivan, J.)

("[I]nterlocutory appeal is a rare exception where, in the discretion of the district judge, it may avoid protracted litigation." (internal quotations and citations omitted)). Plaintiffs provide no sound basis for why this Court should deviate from the established tenets of federal litigation and ask the Second Circuit to expend unnecessary time and resources to hear this litigation piecemeal.

> ### A. Plaintiffs Have Not Met Their Heavy Burden Of Demonstrating That This Is An Exceptional Case Warranting Interlocutory Review Pursuant To 28 U.S.C. § 1292(b).

In assessing whether to certify an interlocutory appeal, the Second Circuit has cautioned district courts to be mindful that the Congressional purpose in passing Section 1292 was "to ensure that the courts of appeals would be able to rule on ephemeral questions of law that might disappear in the light of a complete and final record." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (internal citations, quotation marks, and alterations omitted). The Second Circuit further has instructed that certification should be a "rare exception," and "strictly limited" to "exceptional circumstances" that justify departure from "the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996); *see also Koehler,* 101 F.3d at 865-66 (observing that certification under 1292(b) is a "rare exception"); *In re Consol. RNC Cases*, No. 127-RJS, 2009 WL 130178, at *12 (S.D.N.Y. Jan. 8, 2009) (Sullivan, J.) (same).

A party seeking an interlocutory appeal under Section 1292(b) bears the heavy "burden of showing 'exceptional circumstances' to overcome the general aversion to piecemeal litigation and [to] 'justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *In re Residential Capital, LLC*, 2015 WL 5729702, at *4 (internal citation omitted); *see also Lopez v. Overtime 1st Ave. Corp.*, 252 F. Supp. 3d 268, 273 (S.D.N.Y. 2017) (Sullivan, J.) (recognizing that certifying appeals pursuant to 28 U.S.C. § 1292 is "strongly

disfavored in federal practice."). Further, Section 1292(b), "is concerned with whether an interlocutory appeal would 'simplify'—not complicate—matters." *In re Residential Capital, LLC*, 2015 WL 5729702, at *6. Plaintiffs must, therefore, show that reversal would have a "significant impact" on the litigation. *Id.*

In order to meet this exceptional burden, Plaintiffs must demonstrate that the order (a) "involves a controlling question of law," (b) to which there is "substantial ground for difference of opinion," *and* (c) that an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The three requirements of § 1292(b) are 'conjunctive, not disjunctive,'" thus, this Court can "only certify an interlocutory appeal where all three [elements] are satisfied." *Hengjin Sun v. China 1221, Inc.*, No. 12-cv-7135-RJS, 2015 WL 5544257, at *3 (S.D.N.Y. Sept. 17, 2015) (Sullivan, J.) (internal citations omitted); *see also Nnebe v. Daus*, No. 06-cv-4991-RJS, 2017 WL 2842856, at *1 (S.D.N.Y. Feb. 7, 2017) (Sullivan, J.) (the party seeking interlocutory appeal has the burden of satisfying all three elements). However, even where all three statutory requirements of § 1292(b) are met, "district courts have unfettered discretion to deny certification if other factors counsel against it." *Nnebe*, 2017 WL 2842856, at *1 (internal citation omitted); *see also Lopez*, 252 F. Supp. 3d at 273 (noting that the "unfettered discretion" can be exercise for "any reason," including docket congestion and "system-wide costs and benefits of allowing the appeal").

Plaintiffs have not demonstrated that the extraordinary use of interlocutory review is warranted in this case.

      1.    <u>There Are No Controlling Questions Of Law To Which There Is A Substantial Ground For Difference Of Opinion To Certify For Appeal.</u>

This case presents no controlling questions of law to which there are substantial grounds for difference of opinions such that certification for appeal under § 1292(b) would be

appropriate.  For purposes of Rule 1292(b), a "question of law" must be purely legal such that the reviewing court can decide the issue "quickly and cleanly without having to study the record." *Century Pac., Inc.*, 574 F. Supp. 2d at 371 (citation omitted).  Further, a "question of law" is only "controlling" for the purposes of §1292(b) if: "(1) 'reversal of the district court's opinion could result in dismissal of the action,' (2) 'reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action,' or (3) 'the certified issue has precedential value for a large number of cases.'" *Hengjin Sun*, 2015 WL 5544257, at *3 (citation omitted).  Plaintiffs cannot meet this standard.

This Court dismissed Plaintiffs' class-wide pattern or practice claims because Plaintiffs had not satisfied their burden of plausibly pleading their claim, and dismissed Plaintiffs' class-wide disparate impact claims because Plaintiffs had not properly exhausted their claims.  Dkt. 104 at 13-19.  This Court then exercised its sound discretion to deny Plaintiffs' request to file the proposed Fourth Amended Class Complaint for the same reasons.  Dkt. 104.  Plaintiffs continue to pursue their individual disparate treatment claims – and the arguments that Plaintiffs put forth in support of this request make clear that Plaintiffs are actually seeking a review of whether the Court improperly applied controlling Second Circuit precedent to their pleadings.  Such questions are not appropriate for certification under Section 1292(b).  *See Johnson ex rel. Johnson v. Columbia Univ.,* No. 99-cv-3415-GBD, 2005 WL 736662, at *1 (S.D.N.Y. Mar. 29, 2005) (plaintiff did not identify any controlling question of law where he attempted "to improperly characterize his interlocutory appeal as an appeal of a denial of class certification, rather than a motion to file a fourth amended complaint.").

Even if the Court's prior orders involved a controlling question of law, Plaintiffs cannot demonstrate that there is substantial grounds for difference of opinions as to those purported

questions.  The only difference of opinion evident here is that Plaintiffs disagree with the Court's

Orders.  But Plaintiffs' disagreement, no matter how strongly held, is not a basis to certify an

appeal under § 1292(b).  *See In re Residential Capital, LLC*, 2015 WL 5729702, at *5 (holding

that a "bare claim" that a ruling is incorrect is not sufficient to satisfy the "substantial

disagreement" standard).  Instead, Plaintiffs must establish that there is "substantial doubt that

the district court's order was correct."  *Hengjin Sun*, 2015 WL 5544257, at *3 (citation omitted).

That a disputed issue may be a question of first impression is not sufficient to demonstrate a

substantial ground for difference of opinion (*In re Flor*, 79 F.3d at 284), nor is the mere

existence of other district court decisions that are contrary to the decision the movant seeks to

appeal.  *In re Lehman Bros. Holdings Inc.*, No. 13-cv-2211-RJS, 2014 WL 3408574, at *2

(S.D.N.Y. June 30, 2014) (Sullivan, J.) ("The existence of a small number of bankruptcy court

opinions to the contrary—especially opinions based on reasoning that the Court has already

determined is unpersuasive—does not create a 'substantial doubt' that the Court's opinion was

correct.").  Here, Plaintiffs cannot demonstrate "substantial doubt" that either the November 27

or February 7 Order was incorrect.

> a.    There Are No Substantial Grounds For Differing Opinions On The Pleading Standard Applied By The Court.

Plaintiffs first contend that the Court imposed on Plaintiffs a "heightened pleading

standard" that is "inconsistent with other precedent" in the Second Circuit.  Dkt. 153 at 10-11.

This is incorrect.  There is no dispute in this Circuit that "plausibility" is the proper standard of

review for both a motion to dismiss and a motion for leave to amend a complaint.  *See, e.g.,*

*Perez-Dickson v. Bridgeport Bd. of Educ.,* No. 19-364-CV, 2020 WL 429077, at *2 (2d Cir. Jan.

28, 2020) (upholding denial of request to amend complaint where proposed complaint did not

allege fact giving "plausible support to a minimal inference of discriminatory motivation" as

required by *Littlejohn v. City of New York*, 795 F.3d 297, 309 (2d Cir. 2015) and *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). That is precisely the standard the Court identified in the November 29 Order when it stated that Plaintiffs' burden at the pleading stage is to allege sufficient facts to give "plausible support to a minimal inference of discriminatory motivation.'" Dkt. 105 at 13.

Moreover, the Court properly observed that where the theory of liability is a pattern or practice of discrimination, a plaintiff's burden is both "heavier in one respect and lighter in another respect than the burden in an individual case." *See United States v. City of New York*, 717 F.3d 72, 84 (2d Cir. 2013). The Second Circuit has explained that the burden is "heavier" because the plaintiff must make "a prima facie showing of a pervasive policy of intentional discrimination," and is "lighter" because the plaintiff is "not initially [required to] show discrimination against any particular present or prospective employee." *Id.* (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). This burden applies even at the pleadings stage. *See, e.g.*, *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (affirming dismissal of § 1981 and Title VII putative class action claims where plaintiffs did not make plausible allegations of pattern or practice of discrimination); *Richardson v. City of New York*, No. 17-cv-9447-JPO, 2018 WL 4682224, at *5 (S.D.N.Y. Sept. 28, 2018) ("[A] plaintiff must plausibly allege that intentional racial discrimination was the defendant's standard operating procedure, the regular rather than the unusual practice, and that the discrimination was directed at a class of victims." (alternations and quotation marks omitted; citing *United States v. City of New York*, 717 F.3d at 82 and *Teamsters*, 431 U.S. at 336)). Applying the correct, plausibility standard, the Court first found that Plaintiffs failed to satisfy their burden through their Third Amended Class Complaint in the November 27 Order (*see* Dkt. 105 at p. 13 (citing

-9-

*Littlejohn*, 795 F.3d at 309 and *Vega*, 801 F.3d at 84)), and then found that the allegations concerning a pattern or practice of discrimination in Plaintiffs' proposed Fourth Amended Class Complaint still did not cure the deficiencies that the Court identified.  Dkt. 115 at p. 1-2.

> b.  <u>There Are No Substantial Grounds For Differing Opinions On The Sufficiency Of The Allegations Made In Plaintiffs' Proposed Forth Amended Complaint.</u>

Plaintiffs next challenge the Court's February 7 Order by arguing that their proposed Fourth Amended Complaint would satisfy the plausibility standard through the addition of two types of allegations – statistical and anecdotal – which Plaintiffs contend show that Morgan Stanley intentionally adopted discriminatory policies or practices.  Dkt. 153 at p. 11-14.  In so arguing, Plaintiffs fail to show there is a substantial grounds for disagreement on a controlling question of law.

With regard to the "statistical evidence," as the Court properly stated in the November 27 Order, it is well-settled that such evidence is not required to be pled in order to make out a pattern or practice claim.  Dkt. 104 at 14.  However, it does not follow that, if pled, statistical evidence immunizes a pattern or practice claim from dismissal.  The Second Circuit has held that, in order to support a pattern or practice claim at the pleading stage, the statistical evidence must not only be "significant in the mathematical sense," but "of a level that makes other plausible non-discriminatory explanations very unlikely."  *Burgis*, 798 F.3d at 69 (affirming dismissal of pattern or practice claim where plaintiffs' purported statistical evidence was only the percentages of White, Black, and Hispanic individuals at each employment level).

Plaintiffs' "statistical evidence" consists of an allegation about the racial makeup of all FAs at Morgan Stanley and generalized percentages (i.e., "over 30% less" and "approximately double") about differences in pay between White and African American FAs.  Dkt. 153 at 16. These "statistics" do not support an inference that Morgan Stanley's teaming, pooling, or

-10-

account distribution policies – or any other polices or practices – are intentionally discriminatory or result in a disparate impact, nor do they plausibly show that non-discriminatory explanations are "very unlikely." *Burgis*, 798 F.3d at 69. Notably, Plaintiffs are not claiming that Morgan Stanley engages in discriminatory hiring practices. Plaintiffs also provide no explanation for how the alleged 30% pay disparities are caused by teaming, pooling, or account distribution.

Plaintiffs similarly misinterpret the Court's prior holdings with regard to their anecdotal allegations. In the November 27 Order, the Court observed that other courts have found "several isolated incidents" of discrimination were insufficient to state a pattern or practice claim. Dkt. 104 at p. 14. Plaintiffs attempt to extrapolate this observation into a larger rule that some number greater than seven must be sufficient. Dkt. 153 at p. 12-13. But, the Second Circuit has held that "the definition of a pattern or practice is not capable of a precise mathematical formulation," *Ste. Marie v. E. R.R. Ass'n*, 650 F.2d 395, 406 (2d Cir. 1981), and Plaintiffs concede there is no "magic number of anecdotal examples" that must be pled in order to state a pattern or practice claim. *See* Dkt. 153 at 12.

More importantly, the newly alleged "anecdotal evidence" does not make Plaintiffs' pattern or practice claim any more plausible than the claim dismissed by the Court on November 27. The new allegations are each isolated incidents which cannot support a finding that Defendants' "standard operating procedure" was discriminatory. *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875-76 (1984). The new allegations – which concern alleged incidents at branches where Plaintiffs did not work and comments made by and to individuals who are not parties to this litigation – are highly individualized. As the Court found with regard

-11-

to Plaintiffs' individualized allegations in the Third Amended Class Complaint, these anecdotes, at best, show only the "decisions and actions of individual employees." *See* Dkt. 104 at 14.[2]

Plaintiffs' arguments amount to nothing more than a disagreement with the Court about the application of the pleading standard to their allegations. Plaintiffs do not show there are substantial grounds for judicial disagreement. Accordingly, Plaintiffs have not satisfied the second criterion for § 1292(b) appeal with regard to their pattern or practice claims.

c.     <u>There Are No Substantial Grounds For Differing Opinions On The Application Of The Ledbetter Act To The Allegations In This Case.</u>

Finally, Plaintiffs argue that they are entitled to interlocutory review of the Court's ruling that the Ledbetter Act does not apply to their "disparate impact claim challenging the racial compensation disparities resulting from Morgan Stanley's teaming and account distribution policies." Dkt. 153 at 9, 15. The Second Circuit has, however, already ruled clearly and unequivocally on this issue.

As this Court noted in its November 29 Order, and as the Second Circuit made clear in *Davis v. Bombardier Transp. Holdings (USA) Inc.*, "[a] [P]laintiff must plead and prove the elements of a pay-discrimination claim to benefit from the Ledbetter Act's accrual provisions." Dkt. 104 at 19; 794 F.3d 266, 269 (2d Cir. 2015). Plaintiffs do not plead any factual allegations that their compensation was set in a discriminatory manner here. Plaintiffs are not challenging "compensation policies" or other employment decisions specifically related to pay, which are the only types of policies to which the Ledbetter Act applies. Rather, Plaintiffs – by their own

---

[2] Plaintiffs further claim, without any basis, that the Court "focused only on the teaming policy" and "ignored" another class action that was certified against Morgan Stanley in the Northern District of California, Dkt. 153 at 13, but fail to mention that the policies they complain of as discriminatory were approved by two district courts and that the class action in N.D. Cal. was certified as part of a settlement in 2007, not a judicial determination that a class was plausibly pled in the complaint.

-12-

admission – "challenge the racial compensation disparities *resulting from"* other discrete adverse employment decisions related to Morgan Stanley's teaming and account distribution policies. Dkt. 153 at 9, 15. The Second Circuit made clear in *Davis* that "[t]he Ledbetter Act's reference to 'discrimination in compensation' was to traditional pay-discrimination claims" and that it is *not* applicable to "a pay reduction *that flows from* another adverse employment action." 794 F.3d 266 (2d Cir. 2015) (citations omitted) (emphasis added). Indeed, "the Ledbetter Act . . . applies only to discriminatory employment decisions *specifically related to pay, and not to other employment decisions, even where such decisions directly affect pay*." *Zambrano-Lamhaouhi v. N.Y.C. Bd. Of Educ.*, 866 F. Supp. 2d 147, 167-168 (E.D.N.Y. 2011)) (emphasis added).

The Second Circuit recently reaffirmed this controlling precedent in *Wynn v. Union Local 237, I.B.T.*, No. 19-cv-962, 2019 WL 6799629, at *3 (2d Cir. Dec. 13, 2019) (Summary Order). In *Wynn*, the plaintiffs sought to hold a labor union liable for its alleged "failure to advocate for higher wages." *Id*. In rejecting plaintiffs' claims, the Second Circuit noted that it had already explained that "the plain language of the Ledbetter Act covers compensation decisions and not other discrete employment decisions." *Id.* at *2. The Court further reaffirmed that "the Ledbetter Act's generous accrual provisions" apply to only "traditional pay-discrimination claims that challenge discriminatory compensation decisions." *Id*. Accordingly, there are no substantial grounds for different opinions as to Plaintiffs' disparate impact claims. *See In re Ambac Fin. Group, Inc. Secs. Litig.*, 693 F. Supp. 2d 241, 283-84 (S.D.N.Y. 2010) (holding that there was no substantial grounds for differing opinions where the Second Circuit had already decided the issue).[3]

---

[3] The Second Circuit has also noted that its interpretation of the Ledbetter Act is consistent with controlling precedent in sister circuits. *See Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 271 (2d Cir. 2015) ("We note that our conclusion is consistent with the decisions

The cases Plaintiffs cite do not support a different conclusion.  As a preliminary matter, many of the cases involve actual compensation decisions and thus are entirely in line with the controlling precedent this Court applied in the instant action.  *See e.g., Groesch v. City of Springfield*, 635 F.3d 1020, 1024–26 (7th Cir. 2011) (application of seniority rules, where compensation was decided based on seniority); *Mikula v. Allegheny Cty.*, 583 F.3d 181, 185–86 (3d Cir. 2009) (request for a raise); *Vuong v. New York Life Ins. Co.*, No. 3-cv-1075, 2009 WL 306391, at *8–9 (S.D.N.Y. Feb. 6, 2009) (allocation of different percentages of performance-related compensation).  Plaintiffs other cases are factually distinguishable and/or do not support Plaintiffs' argument that there is substantial ground for difference of opinion as to whether the Ledbetter Act applies to a pay reduction that flows from another adverse employment action, such as the teaming and pooling policies.  *See e.g., Fitchett v. City of New York*, No. 18-cv-8144, 2019 WL 3430726, at *2, 6 (S.D.N.Y. July 30, 2019) (declining to find on a motion to dismiss that the continuing violation doctrine was unavailable to plaintiff's failure to promote claim, because defendant had "no structured policy or procedure governing the promotion process" and thus plaintiff did not know when, or whether, decisions were made); *Lohn v. Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812 (S.D. Tex. Aug. 26, 2009) (application of the Ledbetter Act to an employment law claim under Texas state law, without any analysis of whether the Ledbetter Act could apply to account distribution claims); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489-90 (7th Cir. 2012) (focusing on the potential impact that Merrill Lynch's teaming policy may have on account distributions and compensation, but not addressing

---

of our sister circuits that have interpreted the Ledbetter Act.") (*citing Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1175, 1180–81 (10th Cir. 2011); *Noel v. The Boeing Co.*, 622 F.3d 266, 274 (3d Cir. 2010); *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 374–75 (D.C. Cir. 2010)).

the Ledbetter Act timeliness issue).  Simply arguing – as the Plaintiffs do here – that the Court made the wrong decision, without more, is not a substantial ground for difference of opinion. *See Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 273 (S.D.N.Y. 2009) ("Substantial ground for a difference of opinion requires more than a claim that the court's ruling was wrong.").

Accordingly, Plaintiffs have not satisfied the second criterion for Section 1292(b) appeal with regard to their disparate impact claims.

2.    An Immediate Appeal Will Not Materially Advance The Ultimate Termination Of The Litigation.

Even if Plaintiffs had demonstrated that the Court's Orders involve a controlling question of law to which there is substantial ground for difference of opinion (which they have not), they still have failed to demonstrated that an appeal will promote judicial economy.  *See Century Pac., Inc.*, 574 F. Supp. 2d at 373 (finding third prong not satisfied where plaintiffs "failed to demonstrate that the immediate appeal of this action would result in the saving of judicial resources or otherwise 'avoid protracted litigation.'" (internal citation omitted)).  It is not enough for Plaintiffs to simply show that an appeal would not delay the action.  *Id.*  In order to satisfy this element, Plaintiffs must show that an appeal would affirmatively advance or shorten the time for trial.  *Id.*; *see also In re 650 Fifth Ave.*, No. 1:08-cv-10934-RJH, 2012 WL 363118, at *7 (S.D.N.Y. Feb. 2, 2012) ("The Court is not unsympathetic to the concern that significant aspects of this case may need to be relitigated if the Courts Order is found to be erroneous on an appeal taken after final judgment is entered.  The more relevant consideration, however, is whether immediate appellate review would speed the District Courts consideration of the merits of the parties claims or defenses.").  Plaintiffs cannot meet their burden.

Plaintiffs' arguments that an appeal will save time and advance the litigation are based upon their faulty assumptions that they will be successful on appeal.  The same could be said, however, about any interlocutory appeal.  Plaintiffs have provided no basis to distinguish this case from every other case where the Circuit Court reverses judgment on a partial motion to dismiss.  Dkt. 142 at 18-19.  *See In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 524, 531 (S.D.N.Y. 2014) ("obtaining reversal of an opinion denying a motion to dismiss will always contain the possibility of a dismissal and is not an 'exceptional circumstance' that 'justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'") (internal citations omitted).

Plaintiffs also put forth no evidence that an appeal would promote settlement or otherwise expedite the time for trial.  *See Leddy v. Long Island Tr. Co.*, No. 83-cv-0870, 1987 WL 15317, at *2 (E.D.N.Y. Aug. 3, 1987) (the denial of plaintiffs' motion to amend their complaint would "not materially advance the ultimate termination of the litigation" notwithstanding the fact that the scope of the trial might be different if the Circuit determined on appeal that the Court's decision that certain claims were time-barred was wrong); *see also Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02-cv-7955-DLC, 2003 WL 21146667, at *3 (S.D.N.Y. May 14, 2003) (interlocutory review of the Court's decision dismissing ADEA claim and denying leave to amend the complaint would not "materially advance the ultimate outcome of the litigation"); *Gardner v. MCI Telecommunications Corp.*, 792 F. Supp. 337, 339 (S.D.N.Y. 1992) (finding that defendant did not demonstrate that an interlocutory review would materially advance the litigation where it sought a ruling as to whether the applicable statute was retroactive to "clarify the parties' rights and liabilities, [and] ensure that the trial proceed before the correct trier of fact.").

Plaintiffs, therefore, have failed to meet their burden and their request for interlocutory relief must be denied.

**B.      Plaintiffs Have Failed To Carry Their Heavy Burden Of Establishing That They Are Entitled To Certification Of A Final Judgment Pursuant To Rule 54(b).**

Rule 54(b) permits certification of a partial final judgment only where (1) there are multiple claims or parties, (2) at least one of the claims or the rights and liabilities of at least one party has been finally determined, and (3) "there is no just reason for delay." FRCP 54(b). The Rule, "in conception, is an application of, not an exception to, the statutory instruction that appeals generally must abide final decision." *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, 769 F.3d 135, 140 (2d Cir. 2014) (internal citation and alterations omitted). The Second Circuit has advised that:

> Respect for the historic federal policy against piecemeal appeals requires that a Rule 54(b) certification not be granted routinely. ***The power should be used only in the infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.***

*Citizens Accord, Inc. v. Town of Rochester*, 235 F.3d 126, 128–29 (2d Cir. 2000) (per curiam) (emphasis added) (internal citations and quotation marks omitted); *see also Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (holding that policy against piecemeal appeals requires that Rule 54(b) authority be "exercised sparingly").

The Second Circuit has further instructed that:

> [D]istrict court[s] generally should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated. It does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case in successive appeals from successive decisions on interrelated issues.

*Novick*, 642 F.3d at 311 (internal citations and quotation marks omitted).  "[I]n light of the policy against piecemeal appeals, it is incumbent upon a party seeking immediate relief in the form of a Rule 54(b) judgment to show not only that the issues are sufficiently separable to avoid judicial inefficiency but also that the equities favor entry of such a judgment."  *Id.* at 314.

          1.      <u>Plaintiffs' Class Discrimination Claims Are Inextricably Intertwined With Their Individual Discrimination Claims.</u>

"Before entering final judgment pursuant to Rule 54(b), the court must ensure that the claim upon which final judgment is being entered is separable and extricable from any remaining claim."  *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98-cv-3099-JGK, 2001 WL 585541, at *2 (S.D.N.Y. May 31, 2001).  Plaintiffs conveniently ignore the overlapping factual and legal issues between their dismissed class-wide pattern or practice and disparate impact claims, and their remaining individual discrimination claims.  All of Plaintiffs' claims arise from a similar factual predicate, namely the alleged discrimination Plaintiffs purportedly suffered during his or her employment with Morgan Stanley at their respective branches.  Plaintiffs nevertheless seek permission to pursue an appeal of their class discrimination claims before the Second Circuit, while simultaneously pursuing their similar individual discrimination claims before the District Court.  The overlapping factual and legal nature of Plaintiffs' claims is a compelling reason not to authorize piecemeal appeals.  *See Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980) ("Judicial economy will be best served by delaying appeal until all issues can be confronted by this court in a unified package."); *In re Morgan Stanley Mortg. Pass-Through Certifications Litig.*, No. 09-cv-2137-LTS-MHD, 2010 WL 4910229, at *1 (S.D.N.Y. Nov. 22, 2010) (denying Rule 54(b) certification of claims dismissed as untimely and for lack of standing, because the plaintiff's dismissed claims and the co-plaintiff's remaining claims arose "from

-18-

many of the same factual allegations" and "judicial economy will be best served if multiple appellate panels do not have to familiarize themselves with th[e] case in piecemeal appeals.").

Moreover, the Second Circuit has repeatedly held, "'[a] pattern or practice case is not a separate and free-standing cause of action, but is really merely another method by which disparate treatment can be shown.'" *United States v. City of New York*, 717 F.3d at 83  (quoting *Chin v. Port Authority of N.Y. and N.J.*, 685 F. 3d 135, 148-49 (2d Cir. 2012)) (original alterations omitted);*see Hengjin Sun*, 2015 WL 5544257, at *2 ("[E]ven though the Court narrowed the [FLSA], [NYLL], and unjust enrichment claims, these claims have not been fully determined since the issues of liability and potential damages remain with respect to the hours worked within the statute of limitations period."); *Nnebe*, 2017 WL 2842856, at *1 ("[I]n light of the fact that Plaintiffs have brought factually related state-law claims, the Court finds that entry of a partial final judgment would be inappropriate and declines to find that there is 'no just reason for delay' of any appeal."). The most judicially efficient way to proceed is, therefore, for Plaintiffs to wait until a final decision is rendered on all of their claims, at which time an appeal of the legal issues can be taken together to the Second Circuit.

2.    Simultaneously Litigating Plaintiffs' Individual Section 1981 Claims And An Appeal Is Not In The Interest Of Sound Judicial Administration.

Rule 54(b) motions "should be granted only if there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'"  *Cullen*, 618 F.2d at 228 (explaining that it is particularly desirable to delay appellate review in cases where "the adjudicated and pending claims are closely related and stem from essentially the same factual allegations" and "[f]urther proceedings on the pending causes of action will illuminate appellate review of the other claims."). Plaintiffs present no evidence of danger or hardship in this case.

Plaintiffs primarily argue that Rule 54(b) certification should be granted to prevent individual trials from needing to be "redone." Dkt. 153 at 22. However, Plaintiffs' argument has been expressly rejected by the Second Circuit. The avoidance of a new trial in the event of appellate reversal is a rationale that the Second Circuit has "explicitly rejected, particularly in cases where the dismissed and surviving claims are closely interrelated." *Adrian v. Town of Yorktown*, 210 F. App'x 131, 133 (2d Cir. 2006); *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1026 (2d Cir. 1992) ("To deem sufficient under Rule 54(b) a finding simply that an immediate appeal might avoid the need for a retrial…could only contravene the federal policy against piecemeal appeals."); *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 185 (2d Cir. 1978) ("The policy against piecemeal appeals of intertwined claims should not be subverted by the specters of additional trials."); *Weber v. Align Tech., Inc.*, No. 507-cv-0535-GTS-ATB, 2010 WL 11681386, at *1 (N.D.N.Y. Aug. 20, 2010) ("it is well established that avoiding multiple trials is an insufficient reason to justify a Rule 54(b) certification.") (collecting cases). Plaintiffs provide no reason to deviate from precedent in this case.

Plaintiffs' argument that Rule 54(b) certification would avoid the need for multiple trials and streamline the litigation is also factually incorrect. Dkt. 153 at 22. Plaintiffs' argument appears to be premised on the false assumption that the Second Circuit will hear Plaintiffs' appeal, find the appeal meritorious, and revive the class-wide pattern or practice and disparate impact claims all before a trial on Plaintiffs' individual claims. Dkt. 153 at 20-21. It, however, is highly unlikely that an appeal of the dismissed claims would be resolved by the Second Circuit in time to be tried with the remaining individual claims.[4] *See Gidatex, S.r.L. v. Campaniello*

---

[4] The parties current Case Management Plan and Scheduling Order anticipates fact discovery closing in five months – on July 27, 2020 – and Plaintiffs have represented that they do not intend to seek a stay of discovery pending the appeal. Dkt. 145; 153 at 2 (noting that the appeal

-20-

*Imports, Ltd.*, 73 F. Supp. 2d 345, 347 (S.D.N.Y. 1999) ("Neither the parties nor the Court are aware of any authority to indicate that the Court of Appeals typically expedites its review of 54(b) certifications. On the contrary, the Second Circuit has noted that a 'seasoned district judge' should be aware of lengthy time-delays between her decision and the date when an appeal is heard."); *Byrne v. Telesector Res. Grp., Inc.*, No. 04-cv-0076S, 2007 WL 2403721, at *3 (W.D.N.Y. Aug. 20, 2007) (noting that an appeal under Rule 54(b) might take "years"); *Greer v. St. Bonaventure Univ.*, No. 02-cv-409, 2004 WL 1563084, at *2 (W.D.N.Y. May 21, 2004) (finding it extremely unlikely that a Rule 54(b) appeal would be resolved in the seven months until trial); *Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999) (explaining that an eight month delay from the date of a district court order to the date of appellate oral argument is "by no means unusual"). Certification of an appeal under Rule 54(b) would, therefore, not prevent the need for individual trials to be "redone" as Plaintiffs suggest. *See Shaheed v. City of New York*, No. 14-cv-7424-PAE, 2018 WL 3455406, at *2 (S.D.N.Y. July 18, 2018) (denying certification under Rule 54(b), because there was "no realistic possibility that the Circuit would act and remand the case for reinstatement of those claims before trial on the surviving claims" making two trials inevitable).

Moreover, as discussed *infra* Pt. III(A)(II), Plaintiffs' argument provides no other basis from which the Court could conclude that Plaintiffs will suffer hardship or injustice if an appeal is not immediately certified. As is true of every other litigant, Plaintiffs can appeal each of the Court's decisions with which they disagree at the conclusion of the litigation. *See Negrete v. Citibank, N.A.*, No. 15-cv-7250-RWS, 2017 WL 2963494, at *2 (S.D.N.Y. July 11, 2017)

---

would occur simultaneously "while the individual claims continue through discovery and pretrial proceedings."). In addition, arbitration hearings have already been scheduled for Plaintiffs Coleman and Pryor on May 12-14, 2020 and Plaintiff Rada on September 10-18, 2020.

("Plaintiffs argue that unnecessary discovery and trial costs would result should the Second Circuit decide to reverse the Court's earlier opinion.  However, such 'hardships are inherent in every denial of Rule 54(b) certification, and hardly rise to the level of hardships that warrant immediate appeal.'") (internal citation omitted); *TADCO Constr. Grp. Corp. v. Dormitory Auth. of New York*, No. 08-cv-73-KAM-JMA, 2012 WL 3011735, at *6 (E.D.N.Y. July 23, 2012) (rejecting Plaintiffs arguments that he would face prejudice in "having to wait until completion of a trial to pursue his other claim" and "tremendous additional legal fees for a potential second trial" as a basis for Rule 54(b) certification).

Accordingly, Plaintiffs have not established a right to appeal under Rule 54(b).

## IV.   CONCLUSION.

Plaintiffs' Appeal Motion lacks merit because they cannot satisfy the high standards for interlocutory appeal under Section 1292(b) or Rule 54(b).  Plaintiffs cannot show that appeal of the Court's Orders will address a controlling question of law for which there is substantial grounds for disagreement, nor can they establish that an appeal would materially advance the termination of this litigation, as required to certify an appeal under Section 1292(b).  Plaintiffs also cannot show that the issues that they seek to appeal are sufficiently separable from the claims they continue to litigate before this Court, or that, without an appeal, they will suffer hardship or injustice, as required to certify an appeal under Rule 54(b).  Accordingly, based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' Appeal Motion, together with any such other and further relief as this Court deems appropriate.

-23-

Dated:  February 18, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ *Blair J. Robinson*
    Blair J. Robinson
    Brendan T. Killeen
    101 Park Avenue
    New York, NY  10178
    Tel: 212.309.6000
    blair.robinson@morganlewis.com
    brendan.killeen@morganlewis.com

    Mark S. Dichter
    *Pro Hac Vice*
    1701 Market Street
    Philadelphia, PA 19103
    Tel: 215.963.5291
    mark.dichter@morganlewis.com

*Attorneys for Defendants*

-24-

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically and

served on all counsel of record on February 18, 2020, via the Court's ECF/CM system.


/s/ *Blair J. Robinson*
Blair J. Robinson