**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KATHY FRAZIER, YARED ABRAHAM,
and O. EMMANUEL ADEPOJU-GRACE,

    Plaintiff,

  v.

MORGAN STANLEY & CO. LLC,
MORGAN STANLEY SMITH BARNEY
LLC, and MORGAN STANLEY,

    Defendants.

Case No. 16-cv-00804 (RJS)

Judge Richard J. Sullivan

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO COMPEL TARGETED EMAILS OF PLAINTIFFS
<u>AND THEIR DECISION-MAKER MANAGERS</u>**

## TABLE OF AUTHORITIES

**Cases** ................................................................................................**Page(s)**

*Ahanotu v. Mass. Tpk. Auth.*,
   466 F. Supp. 2d 378 (D. Mass. 2006) ................................................. 18
*Chan v. N.Y. Univ. Downtown Hosp.*,
   No. 03-cv-3003, 2004 WL 1886009 (S.D.N.Y. Aug. 23, 2004) ............................................. 13
*Chen-Oster v. Goldman, Sachs & Co.*,
   293 F.R.D. 557 (S.D.N.Y. 2013)................................................................. 12
*Chertkova v. Conn. Gen. Life Ins. Co.*,
   92 F.3d 81 (2d Cir. 1996) ................................................................. 17
*Chin v. Port Auth. of N.Y. & N.J.*,
   685 F.3d 135 (2d Cir. 2012)................................................................. 14
*Davidson Pipe Co. v. Laventhol & Horwath*,
   120 F.R.D. 455 (S.D.N.Y. 1988)................................................................. 16
*EEOC v. Upstate Niagara Coop*,
   No. 16-cv-0842, 2019 WL 4543123 (W.D.N.Y. Sept. 19, 2019) ............................................. 15
*Green v. Brennan*,
   578 U.S. 547 (2016) ................................................................. 16, 17
*Huon v. Johnson & Bell, Ltd.*,
   No. 09-cv-7877, 2012 WL 1932120 (N.D. Ill. May 23, 2012) ............................................. 18
*Jute v. Hamilton Sundstrand Corp.*,
   420 F.3d 166 (2d Cir. 2005)................................................................. 14
*Mack v. Port Auth. of N.Y. & N.J.*,
   225 F. Supp. 2d 376 (S.D.N.Y. 2002)................................................................. 17
*Mitchell v. Nat'l R.R. Passenger Corp.*,
   208 F.R.D. 455 (D.D.C. 2002) ................................................................. 13
*Nakis v. Potter*,
   422 F. Supp. 2d 398 (S.D.N.Y. 2006)................................................................. 14
*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ................................................................. 14, 16, 17
*Penn. State Police v. Suders*,
   542 U.S. 129 (2004) ................................................................. 16
*Petrosino v. Bell Atl.*,
   385 F.3d 210 (2d Cir. 2004)................................................................. 17
*Reeves v. Sanderson Plumbing Prod., Inc.*,
   530 U.S. 133 (2000) ................................................................. 15
*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) ................................................................. 15
*Wards Cove Packing Co. v. Atonio*,
   490 U.S. 642 (1989) ................................................................. 12
*Wedow v. City of Kansas City, Mo.*,
   442 F.3d 661 (8th Cir. 2006)................................................................. 14

**Statutes**

42 U.S.C. § 1981 ........................................................................................................................ 10

**Rules**

Fed. R. Civ. P. 26(b)(1).............................................................................................................. 12
Fᴇᴅ. R. Cɪᴠ. P. 401 .................................................................................................................... 16

**Other Authorities**

Fed. Prac. & Proc. Civ. § 2015 (3d ed.)..................................................................................... 16

**INTRODUCTION**

Plaintiffs Kathy Frazier ("Frazier") and Yared Abraham ("Abraham") respectfully submit this Motion and Memorandum in Support of their Motion to Compel Targeted Emails of Plaintiffs and Their Decision-Maker Managers.

From 2007 to approximately 2013, Plaintiffs Frazier and Abraham were financial advisors ("FAs") in the Honolulu office of Defendant Morgan Stanley, where they were the only African American FAs in an office of more than 70 FAs. In this § 1981 disparate treatment discrimination claim, Plaintiffs allege that throughout their tenure and because of their race, Morgan Stanley subjected them to a hostile work environment and discriminated against them by denying them tens of millions in lucrative client accounts it instead assigned to non-Black FAs and by taking and targeting Plaintiffs' client accounts and books of business, among other things.

There is solid evidence that these events transpired as Frazier and Abraham characterize them: contemporaneous, written complaints and inquiries, dating back to almost the start of their employment, between Plaintiffs and their managers about the discriminatory account distributions, hostility and targeting of their accounts. Yet Morgan Stanley refuses to produce these emails or even to conduct a narrow, targeted ESI search for them. Indeed, Morgan Stanley refuses to produce any emails before September 2011 that may support its differential treatment and harassment of Plaintiffs and false statements by the decision-makers in this case, despite clear, Supreme Court authority that this evidence is relevant, even if the prior discrimination may not itself be actionable. Without these documents, Frazier and Abraham will be missing important evidence to prove the discrimination they experienced at the hands of Morgan Stanley, support the veracity of their own testimony, call into question the credibility of the decision-makers who too will testify, and otherwise rebut the defenses offered by Morgan Stanley.

Since July 2021 when the Court declined to order production of Plaintiffs' entire email boxes, two things have changed. First, Frazier and Abraham have proposed to Morgan Stanley targeted ESI searches designed to cull documents relating to these complaints and the distribution of resources from Plaintiffs' and their managers' email boxes, and Morgan Stanley has refused to produce these documents. Second, Fred Alvarez, one of the diversity monitors overseeing Morgan Stanley's race discrimination consent decree and tasked with investigating discrimination complaints, produced documents relating to his investigation into the complaints of Plaintiffs Frazier and Abraham about race discrimination they confronted throughout their careers at Morgan Stanley. These documents confirm that Frazier and Abraham complained of their treatment and account distributions in the Honolulu complex dating back to 2008 and that the diversity monitors found disparities. However, Plaintiffs lack Morgan Stanley's contemporaneous records and communications about Plaintiffs, their complaints, and their managers' responses and conduct at issue. Because Plaintiffs now have corroborating proof that these immensely relevant documents exist and will likely show differential treatment, Plaintiffs move to compel Morgan Stanley to perform targeted searches of Frazier's, Abraham's, and relevant managers' e-mail inboxes for contemporaneous complaints and other documents related to the underlying account distributions for the 2008-September 2011 period.

## BACKGROUND

### I.   Relevant Facts Showing Need for Discovery

In 2007, Kathy Frazier was a top performing FA at Merrill Lynch with over a decade of prior experience at Goldman Sachs and an MBA from the University of Pennsylvania's Wharton School of Business, when Morgan Stanley recruited her to join the Firm's Honolulu complex. To induce her to uproot her business and move over to the Firm, Morgan Stanley assured Frazier that she would enjoy significant support and resources so that she could continue to be a top

performer and grow her business, including two of the most common mechanisms to grow one's business as an FA in the industry: participating in teams with other FAs and receiving lucrative account distributions from departing FAs. Frazier, who Morgan Stanley designated as a "Rising Star," started her employment with the Firm in November 2007 and brought most of her book of business with her, unusual in the industry.

Morgan Stanley made similar promises to induce Plaintiff Yared Abraham to also join the Firm. Like Frazier, Abraham was well qualified to succeed at Morgan Stanley. When Morgan Stanley recruited him from Merrill Lynch, Abraham had over a decade of financial services industry experience and already held management-level FINRA industry licenses. Abraham, too, came to Morgan Stanley expecting to continue to build his business in part by taking advantage of Morgan Stanley's lucrative account distributions, and other business opportunities, including teaming, partnership and advancement opportunities. Morgan Stanley instead subjected Abraham to racial harassment and racial slurs and denied him the business opportunities and resources given to non-Black FAs.

Despite their talent and outstanding performance, Frazier and Abraham were subjected to a hostile work environment and treated worse than their non-African American counterparts, particularly in the distribution of lucrative client accounts and teaming opportunities. Morgan Stanley entirely excluded Frazier and Abraham from the billions of valuable client accounts it distributed between 2008 and 2011, took their accounts, and allowed other FAs to solicit and target their books of business in contravention of Morgan Stanley policies.

Morgan Stanley's pattern of racial discrimination against Plaintiffs began as early as October 2008, when mega-producer FA Carl Choy and his team left Morgan Stanley's Honolulu complex . Morgan Stanley gave out over $2 billion in client account assets to FAs in Honolulu.

3

Because Frazier was highly ranked in the account distribution power rankings, she was in line to receive substantial, valuable client accounts from the Choy redistribution. Yet Frazier received *nothing*, nor did Abraham.

Given the importance of these potentially career-changing distributions, Frazier contemporaneously complained about her exclusion from the Choy distribution in 2008. Morgan Stanley's managers gave her shifting, pretextual explanations. First, her managers told Frazier that firm policy prohibited account distributions to FAs employed for less than one year. (Ex. A at P000428.) Yet Frazier learned that Morgan Stanley gave a team of non-African America FAs who were hired *after* her significant distributions from Choy's book of business. (*Id.*) Frazier complained again to management about being excluded from this lucrative distribution and was given a new explanation: the white FAs had experience working with "institutional" accounts, but Frazier did not. (*Id.*)  This, too, was false, as Frazier had decades of experience covering institutional accounts throughout Wall Street at Goldman Sachs and at Merrill Lynch, as Morgan Stanley knew well. This became a pattern for the next several years: Morgan Stanley directed hundreds of millions, even billions, of lucrative clients to non-Black FAs in Plaintiffs' complex. Morgan Stanley continued to harass Plaintiffs, deny Plaintiffs' client account distributions, and target their clients and books of business, ultimately forcing Plaintiffs from the Firm in 2013.

After they left Morgan Stanley in 2014, Frazier and Abraham reported their differential treatment and hostile work environment to Cathy Pepe and Fred Alvarez, the diversity monitors appointed to enforce discrimination class action consent decrees against Morgan Stanley. Frazier alerted Pepe of her belief that the Honolulu complex "has regularly done Account Distributions without regard to policy." (Ex. B at FA000193.) Based on her work to date, Pepe was concerned that "we may find ourselves in a … situation where there were serious issues affecting more than

just the complainant that must be addressed." (*Id.* at FA000192.) In particular, Pepe requested

the records from the 2008 Choy distribution to ensure that "this investigation went back far

enough to include the redistributions following Mr. Choy's departure," as Plaintiffs do here. (Ex.

C at FA000004.)

Documents produced since this Court's July 21, 2021 Order confirm that the monitors'

investigation revealed that Morgan Stanley and its Honolulu managers did not follow its policy

for nearly half of the $2 billion Choy distribution; the firm made "exceptions" to give nearly

$900 million of the $2 billion in the Choy distribution to non-Black FAs. (Ex. D.) The limited

documents produced show a similar pattern of exclusion and favoritism to non-Black FAs

continued: between 2010 and 2013, 20 FAs departed from the Honolulu branch, and Frazier and

Abraham received at least $9 million less in account distributions than what Morgan Stanley's

own internal analysis expected they would receive through the formal account redistribution

process. (Ex. E.) In addition to the excessive "exceptions" relating to the Choy redistribution, the

diversity monitors noted other irregularities in the distribution process utilized by the

management team in Plaintiffs' offices. For example, in the 2010 Michael Chang distribution,

the diversity monitor found that "[a] number of redistributions [totaling over $900,000] were

taken from Kathy Frazier and given to Greg Sumida." (Ex. F at FA000034.)

Documents produced in response to Plaintiffs' subpoena to Monitor Alvarez also reveal

that Morgan Stanley's senior in-house legal counsel sought to limit the scope of the investigation

into Plaintiffs' complaints and dissuade the Monitors from too closely examining the 2008 Choy

distribution, among others, because of "the litigation backdrop." (Ex. G, Apr. 16, 2015 Email

from M. Greenfield to Monitors.) Greenfield told the Monitors (incorrectly at that time) that

Frazier and Abraham had retained Linda Friedman as counsel, "which means this is heading to

litigation." (*Id.*) Morgan Stanley's conduct during the diversity monitors' investigation raises questions about what information it was attempting to conceal, and did conceal, regarding the Choy and other challenged account distributions, discovery that is directly relevant to Plaintiffs' claims and Morgan Stanley's defenses in this matter.

Frazier also complained to management between 2008 and September 2011 and to the diversity monitors in 2014 about management taking accounts away from her to give to non-Black FAs and allowing other FAs to solicit her clients in contravention of Morgan Stanley's policy. For instance, Complex Risk Manager Jeff Altenhof, a white male, reassigned one of Frazier's accounts to Brett Wiggins, a white male FA in the Honolulu office. (Ex. A at P000425.) Frazier had worked with this client successfully for more than a year. When Frazier confronted Altenhof about the reassignment, Altenhof told her that "many clients do not want to be covered by Black advisors." (*Id.*) Morgan Stanley has not produced documents regarding the reassignment of this account.

To aid in the diversity monitors' investigation, Frazier compiled a list of all the managers in the Honolulu complex and region to whom she "complained about distributions" beginning in 2008, including Gwen Pacarro (Branch/Complex Manager), Karen McConnelee (Branch Administrator), Brett Longfield (Assistant Branch Manager), Jeff Altenhoff (Complex Risk Manager, and one of the decisionmakers for account distributions), Clyde Matasusaka (Branch Manager), Cira Nickerson (Complex Manager), and Cynthia Hickman (Regional Manager).[1] (Ex. A at P000424.) Morgan Stanley has produced none of Frazier's inquiries or complaints, nor any of its internal correspondence regarding these complaints. The limited discovery produced for

---

[1] Frazier similarly identified these managers as having knowledge about her complaints in her Supplemental Response to Defendants' Interrogatory No. 2.

the period September 2011 through November 2013 reveals that even when Frazier complained

orally, the manager often followed up with an email to Frazier or someone else. Considering the

number of times and the number of Morgan Stanley managers to whom Frazier complained there

are undoubtedly highly relevant documents relating to Frazier's contemporaneous complaints

about distributions, client poaching, and treatment she challenged.

## II.    Procedural Background

Plaintiffs filed this putative class action in 2015. In 2018, the Court dismissed Plaintiffs'

and six other African American Morgan Stanley FAs class claims, sending three Plaintiffs to

arbitration, and limited this case to four individual disparate treatment claims under 42 U.S.C.

§ 1981, including Frazier and Abraham. (Doc. 104.)

To prove their claims, as is standard in discrimination cases, Plaintiffs sought discovery

of their own email boxes and emails from decision-makers regarding relevant events throughout

their employment. Morgan Stanley objected and refused to produce *any* e-mails on any topic

including Plaintiffs' own emails before September 2011 (four years before filing the Complaint).

The parties submitted a joint pre-motion letter on this and other discovery issues on January 25,

2021.[2] (Doc. 170.)

On February 18, 2021, the Court heard oral argument on the pre-motion letter and invited

Morgan Stanley to send a letter describing the burden and cost of all requested ESI discovery.

On February 26, Morgan Stanley claimed it would be costly and burdensome to produce the

Plaintiffs' entire e-mail inboxes for the duration of their employment because they would have to

---

[2] The premotion letter advised the Court that "Morgan Stanley has limited virtually all discovery, even discovery related to Plaintiffs' own employment, to September 2011–November 23, 2013 . . . ." (*Id.* at 2.) Accordingly, Plaintiffs sought production of certain discovery, including of Plaintiffs' own e-mails, back to 2008. (*Id.* at 2–3.)

review the entire box for privileged information having refused Plaintiffs' offer of a clawback and no waiver of privilege.[3] (Doc. 179.) In response, on March 5, 2021, Plaintiffs then proposed, in concept, a narrower alternative "requir[ing] Defendants to search Plaintiffs' email boxes and the email boxes of the individuals with whom Plaintiffs[] communicated about important events and challenged practices (Pacarro, McConnelee, Newman, Longfield, Buracker and Altenhof) during the 2008–2011 time period using targeted search terms based on discovery to date." (Doc. 183 at 3.)

On July 1, 2021, the Court denied Plaintiffs' letter requests for Plaintiffs' email boxes and pre-2011 emails as overly burdensome and not proportional. (Dkt. 190 at 4.) However, the Court expressly declined to consider Plaintiffs' "targeted search terms" because Plaintiffs had not proposed them before the pre-motion letter. (*Id.* at 3 n.2.) No information about any alleged burden of Plaintiffs' narrower request was presented to the Court for consideration.

Thereafter, the parties continued to confer about discovery, and Plaintiffs made a revised proposal regarding pre-2011 email discovery, which Defendants rejected. On the eve of motion practice, the parties agreed to forego burdening the Court with discovery motions and to instead to seek a stay of the case to attend private mediation. The parties' attempts at resolution were unsuccessful. After the stay was lifted on March 31, 2022, Plaintiffs presented Defendants with an even more narrow and targeted ESI proposal for the pre-September 2011 period that aimed to capture critical discovery, including "Ms. Frazier's complaints about account distributions, poaching of clients and accounts and other similar events in the Honolulu complex, MS management's responses to those complaints and any related materials." (Ex. H, Glink Apr. 27,

---

[3] Plaintiffs vigorously disputed Defendants' claim of burden and costs, and provided evidence from their own ESI vendor of minimal costs of $650 as compared to $84,000 claimed by Morgan Stanley. Dkt. 183.

2022 Email to Killeen.)  Plaintiffs' new proposal, Addendum 1 to this Memorandum *infra*, seeks emails only from Plaintiffs and the decision-maker managers to whom Plaintiffs complained and who were involved in the pre-2011 account redistributions investigated by the diversity monitors. Plaintiffs' proposal narrowly targets limited ESI relating directly to Plaintiffs and the specific account distributions and is further limited to a narrow temporal period—30 days before and 60 days after those account distributions. (*See* Addendum 1, Plaintiffs' proposed ESI search terms).  On Thursday, May 5, 2022, Defendants again rejected Plaintiffs' proposal and refused to search for or produce *any* additional ESI prior to September 2011, labelling the targeted pre-2011 ESI discovery a fishing expedition that would be too costly and burdensome. Morgan Stanley has made no attempt to quantify any alleged burden or costs of Plaintiffs' proposal.

This important discovery issue was raised in the parties' January 2021 pre-motion letter, and this motion is ripe for this Court's consideration under Rule 2G. Plaintiffs have followed this Court's directive and discussed a specific, narrowly targeted proposal for search terms and custodians in good faith with Morgan Stanley, which has flatly denied Plaintiffs' proposal.

## LEGAL STANDARD

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "[C]ourts typically apply more 'liberal civil discovery rules' in employment discrimination cases, giving plaintiffs 'broad access to employers' records in an effort to document their claims.'" *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 562 (S.D.N.Y. 2013) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989)). "As Title VII cases are particularly hard to prove in the absence of a proverbial smoking gun, such as a

discriminatory comment made by a hiring official, discovery in these cases is necessarily broad."

*Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 459 (D.D.C. 2002); *see also Chan v.*

*N.Y. Univ. Downtown Hosp.*, No. 03-cv-3003, 2004 WL 1886009, at *4 (S.D.N.Y. Aug. 23,

2004) ("[T]he imposition of unnecessary discovery limitations [in employment discrimination

cases] is to be avoided." (internal quotation marks omitted)).

## ARGUMENT

Frazier and Abraham seek narrow and plainly relevant discovery: (1) *their own* e-mails

with managers they allege discriminated against them about *their own* complaints of disparate

treatment at Morgan Stanley, and (2) communications by Plaintiffs' decision-maker managers

about those complaints and the challenged account redistributions, and about them, from 2008 to

September 2011. The immense and unquestionable relevance of these emails and the minimal

burden of conducting targeted searches to collect them make this request proportional to

Plaintiffs' needs in the case.

This narrow request seeks to plug a critical gap in Morgan Stanley's production. This

case revolves in large part around discriminatory account distributions, client poaching, and the

conduct of Plaintiffs' managers. Plaintiffs believe there is critical evidence of discriminatory

account distributions and poaching in the Plaintiffs' own e-mail boxes and in the email boxes of

the managers to whom they complained. Frazier's handwritten notes demonstrate that she

complained to a litany of managers (identified by name) since 2008 about these very issues. (Ex.

A at P000424.) The limited production from the diversity monitors who investigated these same

complaints and obtained information from Morgan Stanley supports Plaintiffs' allegations and

reveal that Morgan Stanley sought to interfere with the Monitors' investigation. (Ex. G, at

FA000172.) Yet Morgan Stanley has unilaterally refused to produce any discovery regarding

these critical account distributions or any ESI discovery earlier than what it describes as the

"statutory period," beginning in September 2011. Thus, Plaintiffs have been deprived access to

documentation of discriminatory events and complaints that Plaintiffs know—and recent third-

party discovery confirms—occurred between 2008 and 2011.

Morgan Stanley's rationale for withholding evidence of these complaints—that pre-2011

complaints are irrelevant because the "statutory period" starts in 2011—is not persuasive. "It is

well established . . . that so long as at least 'one alleged adverse employment action . . . occurred

within the applicable filing period[,] . . . evidence of an earlier alleged retaliatory act may

constitute relevant background evidence in support of [that] timely claim." *Chin v. Port Auth. of*

*N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420

F.3d 166, 176 (2d Cir. 2005)) (quotation marks omitted). Pre-statute of limitations evidence is

relevant to show patterns that help elucidate the decisionmakers' intent. *Nakis v. Potter*, 422 F.

Supp. 2d 398, 410 (S.D.N.Y. 2006) ("[T]ime-barred conduct may still be offered as evidence

of discriminatory intent to support timely claims."); *Wedow v. City of Kansas City, Mo.*, 442

F.3d 661, 671 (8th Cir. 2006) (in Title VII disparate treatment action, holding "district court

correctly permitted acts occurring outside the 300–day window to be admitted as relevant to

discriminatory intent"). At a minimum, the sought discovery into Plaintiffs' treatment and

communications regarding discriminatory account distributions is "background evidence" to

support Plaintiffs' claims that Morgan Stanley mistreated them in a similar, discriminatory, way

during what Morgan Stanley asserts is the actionable period. *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 113 (2002); *see also Jute*, 420 F.3d at 176–77 (2d Cir. 2005) (reversing

summary judgment where court erroneously refused to consider "background evidence" prior to

limitations period); *EEOC v. Upstate Niagara Coop*, No. 16-cv-0842, 2019 WL 4543123, at *4 (W.D.N.Y. Sept. 19, 2019) (allowing discovery both before and after the liability period).

The discovery Plaintiffs seek is plainly relevant to many aspects of their claims and the defenses raised by Morgan Stanley. Evidence of prior discriminatory account distributions, and Plaintiffs' complaints about those discriminatory distributions (orchestrated by the same decisionmakers who discriminated against the Plaintiffs after 2011) is critical to Plaintiffs' claims. Indeed, the Supreme Court has held that an employee may use "prior acts as background evidence in support of a timely claim." Plaintiffs' complaints about and inquiries into the 2008 Choy distribution, in particular, is immensely probative of the issues in this case. The same decisionmakers whose post-2011 conduct Plaintiffs challenge made exceptions to about $900 million worth of accounts, completely denying account distributions to any African American FAs, and provided shifting and pretextual reasons to support those exceptions when challenged by Plaintiffs.  In *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502 (1993), the Court held that "[t]he factfinder's disbelief of the reasons put forward by the defendant" may be sufficient to prove intentional discrimination. Indeed, "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination" and "upon such rejection, no additional proof of discrimination is *required*." *Id.* at 511 (internal citations and quotations omitted) (emphasis original)." *Accord Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) ("[T]he trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.

In addition, Plaintiffs will testify that they complained about the pre-2011 discriminatory account distributions, and documentary evidence supporting their testimony is relevant to their credibility. Similarly, Plaintiffs' managers likely will testify about their reasons for excluding

Plaintiffs from account distributions; therefore, documents demonstrating their contemporaneous awareness of and responses to Plaintiffs' complaints are clearly relevant to the managers' credibility. Facts relevant to credibility are always discoverable. *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 461–62 (S.D.N.Y. 1988); 8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2015 (3d ed.) ("Information showing that a person having knowledge of discoverable facts may not be worthy of belief is always relevant to the subject matter of the action."); *see generally*, FED. R. CIV. P. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable . . . .").

Further, the limited discovery Plaintiffs seek is highly relevant and an essential part of Plaintiffs' constructive discharge claims. Frazier and Abraham allege they were constructively discharged, making all discriminatory acts, including those that would otherwise be time-barred, relevant and admissible evidence ripe for discovery. Constructive discharge is based on a fact intensive review of many factors and whether based on the totality of the circumstances, a plaintiff has shown her work environment to be "so intolerable that her resignation qualified as a fitting response." *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004). A claim for constructive discharge accrues when the employee resigns, not at the time of the underlying discriminatory conduct, because a "constructive discharge is a claim distinct from the underlying discriminatory act." *Green v. Brennan*, 578 U.S. 547, 555, 559 (2016).[4] Therefore, otherwise

---

[4] The Court in *Green* cited *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), concluding that "even if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim, so long as one other act that was part of that same hostile-work-environment claim occurred within the limitations period." *Green*, 578 U.S. at 562 n. 7.  "It does not matter," the Court held in *Morgan*, "that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Morgan*, 536 U.S. at 117.

time-barred acts of discrimination that are "part of the same, single claim" of constructive discharge, are essential elements of a constructive discharge claim, and not merely background evidence of a timely claim. *Id.* at 556–57. Accordingly, Morgan Stanley's conduct toward Plaintiffs throughout their entire tenure must be considered by the fact-finder and is properly part of their timely claims for constructive discharge. *See, e.g.*, *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996) (reversing summary judgment on plaintiff's constructive discharge claim finding the district court erred in considering the adverse conditions individually and not cumulatively, reasoning because "a reasonable person encounters life's circumstances cumulatively and not individually, it was error to treat the various conditions as separate and distinct rather than additive").

Finally, this discovery is plainly relevant to Plaintiffs' claims of hostile work environment. "[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105 (2002); *Mack v. Port Auth. of N.Y. & N.J.*, 225 F. Supp. 2d 376, 388 (S.D.N.Y. 2002) (applying *Morgan* to § 1981 hostile work environment claims). The discriminatory account distributions from 2008–2011 form part of the same course of conduct that Plaintiffs claim constituted a hostile work environment, and Plaintiff's contemporaneous complaints are plainly relevant. Hostile work environment claims entail more than just harassment—exclusion from opportunities based on race can form part of a hostile work environment claim. *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004) ("Such conduct, even if does not involve an employment action that could fairly be deemed a promotion, may nevertheless constitute further evidence of a gender-hostile work environment. Thus, our

ruling on [plaintiff's] promotion claim does not preclude her from offering proof (if otherwise

admissible) of her unsuccessful efforts to secure managerial positions throughout her

employment at [defendant] in support of her hostile work environment claim."); *Ahanotu v.*

*Mass. Tpk. Auth.*, 466 F. Supp. 2d 378, 394 (D. Mass. 2006) (holding plaintiff sufficiently

alleged a hostile work environment claim where plaintiff was "repeatedly denied opportunities

made available to his white counterparts, repeatedly threatened with the loss of his job and

ultimately fired"); *Huon v. Johnson & Bell, Ltd.*, No. 09-cv-7877, 2012 WL 1932120, at *4

(N.D. Ill. May 23, 2012) ("Allegations that an employee was denied opportunities to advance

that were extended to persons outside his protected class are relevant to a hostile work

environment claim").

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully move the Court to order Defendants

to immediately implement and produce responsive documents to Plaintiffs' proposed protocol

for pre-2011 emails, Addendum 1, *infra*, so that Plaintiffs can have access to this critical

discovery to prove their claims and properly prepare for depositions in this matter.


Respectfully Submitted,

 */s/ Shona B. Glink*
Shona B. Glink

Linda D. Friedman (*pro hac vice*)
Suzanne E. Bish (*pro hac vice*)
Shona B. Glink
Stowell & Friedman, Ltd.
303 W. Madison, Suite 2600
Chicago, Illinois 60606
Telephone: 312-431-0888
Facsimile: 312-431-0228
Email: LFriedman@sfltd.com
*Attorneys for Plaintiffs*

<u>**ADDENDUM 1 - PLAINTIFF'S PROPOSED TARGETED ESI SEARCH**</u>

A. <u>Search Terms for Email Boxes of Plaintiffs Frazier and Abraham from 1/1/08-9/10/11</u>

1. (Choy OR Kinney OR Wo OR Backus OR Kubo OR Schneck OR Nakamura OR Chang OR Mui OR Lopresti OR Elinich OR Son OR Chisick OR Helwagen OR Ehrman OR Manaut OR Balan OR Venegupoal OR Darst)
   o For emails, apply search terms <u>only</u> to: From, Subject, or Body fields

2. (Brett or Longfield or Gwen or Pacarro or Jeff or Altenhof or McConnelee or Karen or Matsusaka) w/25 (transf* OR *assign* OR *distribut* OR unfair OR account* OR steal OR stole* OR book* OR institution* OR exception* OR poach* OR solicit* OR household)

B. <u>Search Terms and Limited Time Periods for Email Boxes of Plaintiffs' Managers Altenhof, Longfield, McConnelee, Pacarro</u>

1. (Kathy OR Frazier OR Yared OR Abraham)
   o Time Period: Jan. 1, 2008 – Sept. 10, 2011
   o For emails: apply terms only to From Line, Subject Line, or Body fields

2. Choy Or Kinney OR Wo w/20 (transf* OR *assign* OR *distribut* OR unfair OR account* OR client* OR book* OR institution* OR except* OR household)
   o Time Period:  September 14, 2008 – December 14, 2008

3. Schneck w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)
   o Time Period:  November 15, 2009 – February 15, 2010

4. Nakamura w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)
   o Time Period: December 22, 2009 – March 22, 2010

5. Chang w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)
   o Time Period: April 27, 2010 – July 27, 2010

6. Mui w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)
   o Time Period: July 10 – October 10, 2010

7. Lopresti w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)
   o Time Period: January 7, 2011 – April 7, 2011

8. Elinich w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)
   o Time Period: March 6, 2011 – June 6, 2011

9. Son w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)

o Time Period: March 7, 2011 – June 7, 2011

10. Chisick w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)
- o Time Period: May 13, 2011 – August 13, 2011

11. Helwagen w/20 (Transf* OR *assign* OR *distribut* OR Unfair OR account* OR client* OR book* OR institution* OR except* OR household)
- o Time Period: May 29, 2011 – August 29, 2011

## **CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on May 10, 2022 via the Court's ECF/CM system.


/s/     *Shona B. Glink*
Shona B. Glink